Richard G. Sanders, Esq. (SBN: 209617)
rick@aaronsanderslaw.com
**AARON & SANDERS, PLLC**
605 Berry Road, Suite A
Nashville, TN 37204-2801
(615) 734-1188 | Fax: (615) 250-9807

— *and* —

Sa'id Vakili, Esq. (SBN: 176322)
vakili@vakili.com
John A. Schlaff, Esq. (SBN: 135748)
john.schlaff@gmail.com
David N. Schultz, Esq. (SBN: 123094)
Schu1984@yahoo.com
Stephen P. Hoffman, Esq. (SBN: 287075)
hoffman@vakili.com
**VAKILI & LEUS, LLP**
3701 Wilshire Blvd., Suite 1135
Los Angeles, CA 90010-2822

(213) 380-6010 | Fax: (213) 380-6051

*Attorneys for Plaintiff Software Freedom Conservancy, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTWARE FREEDOM CONSERVANCY, INC., a New York non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>VIZIO, INC., a California corporation; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 8:21-cv-01943-JLS-KES<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      May 27, 2022<br>Time:      10:30 a.m.<br>Place:     Courtroom 10A<br>Judge:    Hon. Josephine L. Staton |

1

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, May 27, 2022, at 10:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 10A of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California, 92701, the Honorable Josephine L. Staton presiding, Plaintiff Software Freedom Conservancy, Inc. ("Conservancy") will and hereby does move this Court for an Order remanding this action to the Superior Court of the State of California for the County of Orange.

This Motion to Remand (the "Motion") is made on the ground that this Court lacks subject matter jurisdiction over this action. The Complaint brought by Conservancy against Defendant Vizio, Inc. ("Vizio") alleges only two causes of action under state law, for breach of contract and declaratory relief. Nevertheless, Vizio has removed this action based on federal question jurisdiction, mistakenly asserting that Conservancy's claims are completely preempted by the federal Copyright Act.[1]

---

[1] Following its filing of a Notice of Removal on November 29, 2021, Vizio filed a Motion to Dismiss Conservancy's Complaint on December 6, 2021, on the ground that the causes of action alleged in the Complaint were preempted by the federal Copyright Act and Conservancy lacked standing to assert exclusive rights under the Copyright Act. The hearing on Vizio's Motion to Dismiss is set for May 13, 2022, while the hearing on this Motion to Remand is set for May 27, 2022. Nevertheless, for reasons of judicial economy, this Court should first rule upon Conservancy's Motion to Remand and only proceed to rule upon Vizio's Motion to Dismiss if it first determines that it has subject matter jurisdiction over this action. As one court has explained, in taking just such an approach, "[i]f the court indeed lacks subject matter jurisdiction over this matter, it lacks authority to determine Defendants' motion to dismiss …." *Estrada v. Kaiser Found. Hosps.,* 2014 U.S. LEXIS 151252 (N.D. Cal. Oct. 23, 2014). The *Estrada* court noted that "requiring the parties to brief the motion to dismiss would waste the court's and counsel's resources." *Id.*

NOTICE OF MOTION AND MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT; MPA IN SUPPORT THEREOF

Controlling Ninth Circuit case law is clear that where, as here, the state law claims alleged by Conservancy include an "extra element" that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claims are not preempted by the Copyright Act. As the Ninth Circuit has noted, courts applying the "extra element" test generally have held that the Copyright Act does not preempt the enforcement of contractual rights. Accordingly, this Court should apply such authorities, rule that this Court lacks subject matter jurisdiction over Conservancy's Complaint, and remand this action to state court.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the [Proposed] Order submitted herewith, all pleadings, papers, and records on file in this action, all matters upon which the Court may take judicial notice, and any further briefing and argument as may be presented at or before the time of the hearing on this Motion, including in any reply papers filed by Conservancy.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on December 3, 2021. The parties were not able to resolve the issues that would avoid the need for this Motion.

DATED: December 27, 2021          **AARON & SANDERS, PLLC**
                                  **VAKILI & LEUS, LLP**


                                  By: /s/ Sa'id Vakili
                                      Sa'id Vakili, Esq.
                                      David N. Schultz, Esq.
                                      Richard G. Sanders, Esq.
                                      *Attorneys for Plaintiff Software Freedom*
                                      *Conservancy, Inc.*

3

NOTICE OF MOTION AND MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY,
INC. TO REMAND ACTION TO STATE COURT; MPA IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

II.   RELEVANT FACTUAL BACKGROUND ........................................................3

    *A.   The GPL Agreements.* ............................................................................... *3*

    *B.   Vizio's Use of Software Covered by the GPL Agreements.* ............................ *5*

    *C.   Conservancy's Lawsuit Against Vizio.* ...................................................... *6*

III.  RELEVANT PROCEDURAL BACKGROUND ...................................................6

IV.  THE LEGAL STANDARD APPLICABLE TO NOTICES OF REMOVAL AND MOTIONS TO REMAND ...............................................................................7

V.   THIS COURT SHOULD GRANT THE MOTION AND REMAND THIS ACTION TO STATE COURT BECAUSE THE OBLIGATION TO PRODUCE SOURCE CODE UNDER THE GPL AGREEMENTS IS AN "EXTRA ELEMENT" THAT MAKES CONSERVANCY'S BREACH OF CONTRACT CLAIM QUALITATIVELY DIFFERENT FROM A COPYRIGHT CLAIM. .....9

    *A.   The Legal Standard Applicable to Copyright Preemption.* ............................ *9*

    *B.   The Copyright Act Does Not Preempt Conservancy's State Law Claims Because the Obligation to Produce Source Code is Purely Contractual and is Not Equivalent to Any of the Exclusive Rights Under the Copyright Act.* ..... *11*

    *C.   Two Separate Courts Have Held That Claims Based on the Obligation to Produce Source Code Under the Source Code Provision Are Not Preempted by the Copyright Act.* ..................................................................................... *13*

    *D.   Congressional Intent and Public Policy Both Favor Allowing Private Parties to Freely Contract Without Fear of Having their Agreements Undone by Copyright Preemption.* ................................................................................ *15*

    *E.   Jacobsen II is Distinguishable and Does Not Support Vizio's Attempt to Remove this Action.* .................................................................................. *18*

    *F.   The Distinction Between Conditions and Covenants is a Red Herring.* ........ *19*

VI.  CONCLUSION ................................................................................................ 21

NOTICE OF MOTION AND MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT; MPA IN SUPPORT THEREOF

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Acorn Structures, Inc. v. Swantz*
 846 F.2d 923, 926 (4th Cir. 1988)........................................................................ 11

*Altera Corp. v. Clear Logic, Inc.*
 424 F.3d 1079, 1089 (9th Cir. 2005)……………………………………..2, 10, 11

*Artifex Software v. Hancom, Inc.*
 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017) ...............................*passim*

*Balcorta v. Twentieth Century-Fox Film Corp.*
 208 F.3d 1102, 1106 (9th Cir. 2000)..............................................................7, 8

*Bowers v. Baystate Techs Inc.*
 320 F.3d 1317, 1323-24 (Fed. Cir. 2003) ............................................................ 11

*Caterpillar, Inc. v. Williams*
 482 U.S. 386, 398-99 (1987)..................................................................................8

*CDK Glob. Ltd. Liab. Co. v. Brnovich*
 ___ F.4th ___, 2021 U.S. App. LEXIS 31930 (9th Cir. Oct. 25, 2021) ................ 13

*Cf. Int'l Brotherhood of Teamsters, Local 396 v. NASA Servs.*
 957 F.3d 1038, 1047 n.5 (9th Cir. 2020)................................................................. 17

*Cf. Wrench LLC v. Taco Bell Corp.*
 256 F.3d 446, 457 (6th Cir. 2001)........................................................................ 13

*Chesler/Perlmutter Prods. v. Fireworks Entm't, Inc.*
 177 F.Supp.2d 1050, 1055 (C.D. Cal. 2001) ................................................ 8, 10, 11

*Fleet v. CBS*
 50 Cal.App.4th at 1924 ..................................................................................... 10, 13

*Gaus v. Miles, Inc.*
 980 F.2d 564, 566 (9th Cir. 1992)...........................................................................7

NOTICE OF MOTION AND MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT; MPA IN SUPPORT THEREOF

*Hall v. North American Van Lines, Inc.*
   476 F.3d 683, 687 (9th Cir. 2007)...........................................................8, 9

*Holman v. Laulo-Rowe Agency*
   994 F.2d 666, 668 (9th Cir. 1993)............................................................9

*Hunter v. Philip Morris USA*
   582 F.3d 1039, 1042 (9th Cir. 2009).........................................................7

*Idema v. Dreamworks, Inc.*
   162 F.Supp.2d 1129, 1192 (C.D. Cal. 2001) ...........................................11

*In re Marriage of McDonnal*
   652 P.2d 1247, 1251 (Or. 1982)...............................................................16

*In re NOS Commc'ns, MDL No. 1357*
   495 F.3d 1052, 1057 (9th Cir. 2007).........................................................7

*Jacobsen v. Katzer*
   535 F.3d 1373 (Fed. Cir. 2008)..........................................................….18

*Jacobsen v. Katzer*
   609 F.Supp.2d 925, 933 (N.D. Cal. 2009) ..........................................18, 19

*JZK, Inc. v. Weaver*
   2006 U.S. Dist. LEXIS 75523 (W.D. Wash. Oct. 17, 2006) ...................12

*Laws v. Sony Music Entm't, Inc.*
   448 F.3d 1134, 1137 (9th Cir. 2007).......................................................10

*Luther v. Countrywide Home Loans Servicing, LP*
   533 F.3d 1031, 1034 (9th Cir. 2008).........................................................7

*MDY Indus., LLC v. Blizzard Entm't, Inc.*
   629 F.3d 928, 957 (9th Cir. 2010)...................................…..11, 19, 20

*Meridian Project Sys. v. Hardin Constr. Co.*
   426 F.Supp.2d 1101 (E.D. Cal. 2006)....................................................12

6

*Montz v. Pilgrim Films & Television, Inc.*
   649 F.3d 975, 980 (9th Cir. 2011).......................................................................... 10

*Nat'l Car Rental Sys., Inc. v. Comput. Assoc. Int'l, Inc.*
   991 F.2d 426, 433 (8th Cir. 1993)........................................................................... 11

*Northwest Home Designing, Inc. v. Sound Built Homes, Inc.*
   776 F.Supp.2d 1210, 1216 (W.D. Wash. 2011)....................................................... 11

*ProCD, Inc. v. Zeidenberg*
   86 F.3d 1447, 1454 (7th Cir. 1996).......................................................... 11, 16, 17

*Rumble, Inc. v. Daily Mail*
   459 F.Supp.3d 1294, 1299 (C.D. Cal. 2020) ......................................................... 12

*Ryan v. Editions Ltd. W.*
   786 F.3d 754, 760 (9th Cir. 2015)........................................................................... 10

*Taquino v. Teledyne Monarch Rubber*
   893 F.2d 1488, 1501 (5th Cir. 1990)....................................................................... 11

*Versata Software, Inc. v. Ameriprise Fin., Inc.*
   2014 U.S. Dist. LEXIS 30934 (W.D. Tex. Mar. 11, 2014) ...................4, 13, 14, 15

*VL Sys., Inc. v. Unisen, Inc.*
   152 Cal.App.4th 708 (2007) .................................................................................... 16

*Whitman v. Raley's Inc.*
   886 F.2d 1177, 1181 (9th Cir. 1987)....................................................................... 16

*Worldwide Church of God v. Philadelphia Church of God, Inc.*
   227 F.3d 1110, 1114 (9th Cir. 2000) ....................................................................... 20

**<u>Statutes</u>**

17 U.S.C.

   § 102.......................................................................................................................... 10

   § 103.......................................................................................................................... 10

   § 106..............................................................................................................2, 10, 15

7

§ 301(a) ……………………………………………………………9, 11

28 U.S.C. § 1441(a) ...........................................................................................7

**<u>Treatises</u>**

1 Melville & David Nimmer, Nimmer on Copyright

§ 1.14[A] (2021), Section 301(a) ...........................................................9

§ 1.15.................................................................................................... 16

3 Nimmer on Copyright

§ 10.15[A] ........................................................................................... 20

8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Vizio, Inc. ("Vizio") is attempting to use removal jurisdiction to avoid its clear contractual obligations under state law by claiming that the obligations are preempted by federal copyright law. This preemption claim, however, is not supported by federal copyright law, or any federal or state law, and any effort by Vizio to remove this action to federal court should be rejected.

By way of brief background, on October 19, 2021, Plaintiff Software Freedom Conservancy, Inc. ("Conservancy") filed a straightforward Complaint against Vizio in the Superior Court of the State of California for the County of Orange, alleging two causes of action under state law for breach of contract and declaratory relief. The essence of Conservancy's lawsuit is that Vizio has breached two software license agreements, known as the GPL Agreements, by using software governed by the GPL Agreements in the operating systems of the "smart TVs" that it manufactures, without complying with its obligation under these agreements to disclose the source code of its operating system to recipients of the software. Conservancy brought the lawsuit as part of its mission to promote and improve projects that use free and open source software and vindicate the rights of those who receive and use such software.

Vizio has now filed a Notice of Removal of Conservancy's lawsuit based solely on federal question jurisdiction, asserting that Conservancy's claims are completely preempted by the federal Copyright Act. Vizio simply is wrong. Rather, for the following reasons, Vizio fails to satisfy its burden of establishing that removal is proper because it fails to show, and cannot show, that the rights asserted by Conservancy under its state law claims are equivalent to the rights set forth in Section 106 of the Copyright Act:

First, the Copyright Act is very precise about the scope of the exclusive rights under "Section 106" of the Act that could support preemption, and enumerates only five

1

such rights here: the right to reproduce a work, to make derivative works based on the work, to distribute copies (i.e. physical embodiments) of the work, to publicly perform the work, and to publicly display the work. See 17 U.S.C. § 106. Thus, the Copyright Act does not preempt Conservatory's state law claims because the obligation to produce source code is purely contractual and is not equivalent to any of these five exclusive rights. More specifically, the Ninth Circuit has made it clear that "[m]ost courts have held that the Copyright Act does not preempt the enforcement of contractual rights," *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (emphasis in original), because it is the sort of state law claim that "includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act." *Id.*

Here, as an example, it is clear that the rights asserted by Conservancy in its breach of contract claim are qualitatively different from those protected under the Copyright Act. Courts routinely hold that the mutual exchange of contractual promises, such as Vizio's promise to make its source code freely available in exchange for being able to use the software covered by the GPL Agreements, constitutes an "extra element" sufficient to avoid preemption of a breach of contract claim by the Copyright Act. Furthermore, Vizio's obligation to provide source code under the GPL Agreements does not implicate the exclusive rights of reproduction and distribution under the Copyright Act because Conservancy does not seek to stop Vizio from making copies of its source code or distributing those copies. Rather, Conservancy simply wants to compel Vizio to make the source code that Vizio used in the operating systems of its smart TVs available to recipients of the smart TVs, as required under the GPL Agreements [see Section V.B, below].

Moreover, two separate district courts have held that state law claims to enforce the obligation to make source code covered by the GPL Agreements freely available— the very provision at issue in this action—are not preempted by the Copyright Act. This

2

Court should apply the language and logic of these two decisions and grant Conservancy's Motion to Remand [see Section V.C, below].

Furthermore, the conclusion that the Copyright Act does not preempt Conservancy's breach of contract claim is supported by the legislative history of the Copyright Act, the leading treatise on copyright law, and the differing policies underlying copyright and contract law. As one court has explained, a copyright is an exclusive right against the world while a contract generally affects only the parties thereto, and does not create exclusive rights. For these reasons as well, this Court should remand this action to state court [see Section V.D, below].

Finally, Vizio's theories for removal are inapposite. The case law upon which Vizio seeks to rely is easily distinguishable. In addition, Vizio's purported distinction between conditions and covenants has no relevance to the question at issue here—whether this action should be remanded to state court [see Sections V.E and V.F, below].

It is well established under Ninth Circuit law that a plaintiff is the master of its complaint and thus may avoid federal jurisdiction by relying exclusively on state law. Here, Conservancy has chosen to file a Complaint that relies exclusively on state law and has alleged only claims that are not preempted by the Copyright Act. Accordingly, this Court should reject Vizio's mistaken assertions regarding preemption and grant Conservancy's Motion to Remand.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The GPL Agreements.

The contracts at issue in this action are two of the most vital and ubiquitous software license agreements in existence: the GNU General Public License version 2 ("GPLv2") and its close cousin, the GNU Lesser General Public License version 2.1 ("LGPLv2.1"). (Complaint, Doc. No. 1-2 ("Cmplt.") ¶ 1.) These two contracts, referred to collectively herein as the "GPL Agreements," are attached to the Complaint as

Exhibits A and B, respectively. (*See* Notice of Errata, Doc. No. 1-6 ("Errata"), Exhibits A & B.)

The GPL Agreements play a central role in the development of "free" and open source software ("FOSS"). (Cmplt. ¶ 17.) In this context, "free" has the sense of "freedom," not "gratis." (*Id.* ¶ 6.) Many of the most popular software programs are FOSS, including those at issue in this case. (*Id.* ¶¶ 37-38.) For example, the Linux kernel, one of the most popular computer operating systems, is FOSS. (*Id.* ¶¶ 41-43.) FOSS projects are successful because many software developers may work on them, adding new features, tweaking old features, fixing bugs, and these new versions are always available to other developers to learn from, tweak and improve. (*Id.* ¶¶ 1, 3, 20, 22, 44-45.)

The GPL Agreements make FOSS possible by requiring that those who distribute software in an executable form—i.e., in a form that may be read (and executed) by computers—also make the software available as "source code," i.e., in a form that may be read and understood by those who are familiar with the relevant programming language, thus allowing them to further develop the software. (*Id.* ¶¶ 20-23.) As one court has described it, "[T]he GPL allows for free use and redistribution of [the software], including in other software (i.e., the creation of a derivative work), on the condition the original licensor continues the open source trend and makes the source code freely available." *Versata Software, Inc. v. Ameriprise Fin., Inc*., 2014 U.S. Dist. LEXIS 30934, at *4 (W.D. Tex. Mar. 11, 2014); *see also Artifex Software v. Hancom, Inc*., 2017 U.S. Dist. LEXIS 62815, at *4 (N.D. Cal. Apr. 25, 2017) ("[T]he GNU GPL required Defendant to distribute its software with the accompanying source code.").

In order to make FOSS possible, the GPLv2 provides, in pertinent part:

You may copy and distribute the Program (or a work based on it…) in object code or executable form under the terms [above] provided that you also do one of the following:

4

(a)  Accompany it with the complete corresponding machine-readable source code…; or,

(b)  Accompany it with a written offer … to give any third party … a complete machine-readable copy of the corresponding source code….

(*See* Errata, Exhibit A, § 3; *see also* Cmplt. ¶ 28.) The LGPLv2.1 has equivalent language. This provision, found in Section 3 of the GLPv2 and Section 4 of the LGPLv2.1, is referred to both here and in the Complaint as the "Source Code Provision."[2]

### B.   *Vizio's Use of Software Covered by the GPL Agreements.*

Vizio manufactures and sells "smart TVs," i.e*.,* televisions with computers built in. (Cmplt. ¶ 32.) Smart TVs, like any computer, require an operating system, supporting applications and user-facing applications to carry out their consumer-friendly features, such as playing content from YouTube or Netflix. (*Id.* ¶¶ 33-35.) Conservancy alleges in its Complaint that at least twenty-five programs, including the Linux kernel, found on three smart TVs manufactured by Vizio, are covered by one of the GPL Agreements. (*Id.* ¶¶ 37-38.) Vizio thus distributes programs covered by the GPL Agreements in an executable form. (*Id.* ¶¶ 48-49.) As the Complaint further alleges, however, Vizio does not make the corresponding source code for these programs available to purchasers of its smart TVs. (*Id.* ¶¶ 50-51.)

Vizio's conduct breaches the Source Code Provision of the GPL Agreements, which entitles purchasers of these Vizio devices to the source code. (Id. ¶¶ 28-29, 50-51.) As the GPL Agreements emphasize in their Preambles: "Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free

---

[2] As explained in Section V.C below, the district courts in *Versata* and *Artifex* both squarely addressed whether a claim for breach of this Source Code Provision is preempted by the Copyright Act. Both held that it is not.

software…, that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs…" (Errata, Exhibits A & B.) In return, "if you distribute copies of such a program … you must give the recipients all the rights you have. You must make sure they, too, receive or can get the source code." (*Id*.)

### C.   *Conservancy's Lawsuit Against Vizio.*

Conservancy is a not-for-profit corporation whose mission includes promoting and improving projects that use FOSS and vindicating the rights of those who receive and use such software. Conservancy is also a purchaser of Vizio smart TVs. Conservancy is suing Vizio not as a copyright holder, but as a third-party beneficiary of the GPL Agreements.[3] (*Id*. ¶¶ 8, 120.) Conservancy seeks to enforce its right to have access to the source code corresponding to the executable code resident on Vizio's devices covered by the GPL Agreements. (*Id*. ¶ 121.)

Conservancy does not seek money damages in this action. (*See* Cmplt., Prayer for Relief, at 24-26.) Instead, the only relief Conservancy seeks as part of its breach of contract claim is that Vizio specifically perform under the GPL Agreements by delivering up the complete source code corresponding to the executable code identified in the Complaint. (*See id*.) Moreover, Conservancy's declaratory relief claim seeks only an equivalent declaration of the parties' rights with respect to such source code. (*See id*.)

## III.   RELEVANT PROCEDURAL BACKGROUND

Conservancy filed its Complaint in this action on October 19, 2021, in the Superior Court of the State of California for the County of Orange. (Cmplt., p. 1.) Thereafter, on November 29, 2021, Vizio filed its Notice of Removal, alleging that the Complaint "is removable on the basis of federal question jurisdiction" because

---

[3] The question of whether Conservancy is a third-party beneficiary of the GPL Agreements is a matter of state law which has no relevance either to this Motion or whether Vizio has a right to remove this action to federal court.

Conservancy's "claims are completely preempted by the laws of the United States, specifically the federal Copyright Act." (Doc. No. 1 (Notice of Removal), ¶¶ 5, 7.)[4] In response, Conservancy has filed this Motion to remand this action to state court. As explained below, this Court should grant the Motion because Vizio fails to satisfy its burden of establishing that removal is proper here.

## IV.   THE LEGAL STANDARD APPLICABLE TO NOTICES OF REMOVAL AND MOTIONS TO REMAND

"A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court." *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007), *citing* 28 U.S.C. § 1441(a). There is a "strong presumption" against removal jurisdiction, and the defendant seeking to remove an action to federal court bears the burden of proving the jurisdictional facts and "always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992). "[R]emoval statutes are strictly construed against removal." *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus,* 980 F.2d at 566.

"[T]he plaintiff is 'the master of his complaint' and may 'avoid federal jurisdiction by relying exclusively on state law.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (*quoting Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102, 1106 (9th Cir. 2000)). "Federal question jurisdiction is governed by the

---

[4]   Thereafter, on December 6, 2021, Vizio filed a Motion to Dismiss Conservancy's Complaint, which is set for hearing on May 13, 2022. (Doc. No. 12.) As explained in greater detail in footnote 1 to Conservancy's Notice of Motion, this Court should first rule upon this Motion before it rules upon Vizio's Motion to Dismiss for reasons of judicial economy, because if this Court determines that this Motion is well taken and it lacks subject matter jurisdiction over Conservancy's Complaint, this Court has no authority to rule on Vizio's Motion to Dismiss.

'well-pleaded complaint rule,'" which provides that "subject matter jurisdiction is proper only when a federal question appears on the face of a proper complaint." *Chesler/Perlmutter Prods. v. Fireworks Entm't, Inc.*, 177 F.Supp.2d 1050, 1055 (C.D. Cal. 2001). Therefore, for a defendant to remove a state court action based on federal question jurisdiction, "the federal question must appear on the face of the complaint, as alleged and controlled by the plaintiff." *Id.* That a plaintiff could have elected to bring a claim under federal law, but chose not to do so, does not create removal jurisdiction. As the Supreme Court has explained:

> [T]he presence of a federal question … in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. … [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) (emphasis in original).

The rare exception to the plaintiff's mastery of the complaint is the "complete preemption doctrine." *Balcorta,* 208 F.3d at 1107 (9th Cir. 2000). "[T]he preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Id*. In such cases, the state law claims are treated as though they are federal claims and may be removed to federal court. *See id*. The doctrine of complete preemption arises only in "a handful of 'extraordinary' situations .…" *Hall v. North American Van Lines,*

8

*Inc.,* 476 F.3d 683, 687 (9th Cir. 2007), *quoting Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993).

Here, Vizio premises its removal on the general assertion that, because the GPL Agreements involve the licensing of copyrighted works, the Copyright Act completely preempts Conservancy's state law claims. (*See, e.g.,* Notice of Removal, ¶¶ 13, 14.) Vizio is incorrect. As demonstrated below, Vizio has failed to satisfy, and cannot satisfy, its burden of establishing that the state law contract rights asserted by Conservancy are equivalent to any of the exclusive rights set forth in Section 106 of the Copyright Act. Therefore, Conservancy's state law claims are not completely preempted by the Copyright Act, and this Court should remand this action to state court.

**V.   THIS COURT SHOULD GRANT THE MOTION AND REMAND THIS ACTION TO STATE COURT BECAUSE THE OBLIGATION TO PRODUCE SOURCE CODE UNDER THE GPL AGREEMENTS IS AN "EXTRA ELEMENT" THAT MAKES CONSERVANCY'S BREACH OF CONTRACT CLAIM QUALITATIVELY DIFFERENT FROM A COPYRIGHT CLAIM.**

### A.   The Legal Standard Applicable to Copyright Preemption.

Copyright preemption is governed by Section 301(a) of the Copyright Act. 1 Melville & David Nimmer, *Nimmer on Copyright* § 1.14[A] (2021). Section 301(a) provides, in pertinent part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in the works of authorship … and come within the subject matter of copyright as specified by sections 102 and 103 … are governed exclusively by this title.

17 U.S.C. § 301(a). The Copyright Act is very precise about the scope of the exclusive rights under "section 106" of the Act. Section 106 enumerates only five such rights for this type of work: the right to reproduce a work, to make derivative works based on the

9

work, to distribute copies (i.e., physical embodiments) of the work, to publicly perform the work, and to publicly display the work (hereinafter, referred to collectively as the "Exclusive Rights"). *See* 17 U.S.C. § 106.

The Ninth Circuit has established a two-part test, in accordance with Section 301 of the Copyright Act, "to determine whether a state law claim is preempted by the Act." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2007). First, a court must decide "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id*. Second, assuming it does, the court must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id*. at 1138.

Thus, to establish copyright preemption, Vizio must show, among other things, that the state law claim "grants rights equivalent to any of the exclusive rights within the scope of copyright." *Ryan v. Editions Ltd. W*., 786 F.3d 754, 760 (9th Cir. 2015). A state law right is equivalent to an Exclusive Right only if it is violated "by the mere act of reproducing, performing, distributing or displaying the work at issue." *Fleet v. CBS*, 50 Cal.App.4th 1911, 1924 (1996). "A state cause of action is 'qualitatively different' when it contains an additional element not required for a copyright claim." *Ryan*, 786 F.3d at 760; *see also Montz v. Pilgrim Films & Television, Inc.,* 649 F.3d 975, 980 (9th Cir. 2011); *Altera Corp.,* 424 F.3d at 1089. "[S]tate law claims are not preempted simply because they fall within the general subject matter of copyright." *Chesler/Perlmutter*, 177 F. Supp. 2d at 1057. "The Copyright Act only has complete preemptive force if the rights asserted in the state law claims are rights that could have been asserted under the Copyright Act." *Id.*

Here, as explained below, Conservancy's state law claims based on Vizio's violation of the Source Code Provision contain an "extra element" not required for a copyright claim—the obligation to provide source code. Accordingly, Conservancy's

10

state law claims are not preempted by the Copyright Act, and Vizio's attempt to remove this action lacks merit.

> **B.    The Copyright Act Does Not Preempt Conservancy's State Law Claims Because the Obligation to Produce Source Code is Purely Contractual and is Not Equivalent to Any of the Exclusive Rights Under the Copyright Act.**

As the Ninth Circuit has observed, breach of contract claims are almost never preempted by the Copyright Act. *See Altera Corp. v. Clear Logic, Inc*., 424 F.3d 1079, 1089 (9th Cir. 2005); *see also MDY Indus., LLC v. Blizzard Entm't, Inc*., 629 F.3d 928, 957 (9th Cir. 2010). Other circuits have reached the same conclusion. *See Bowers v. Baystate Techs Inc.,* 320 F.3d 1317, 1323-24 (Fed. Cir. 2003) (applying the law of the First Circuit); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996); *Nat'l Car Rental Sys., Inc. v. Comput. Assoc. Int'l, Inc.*, 991 F.2d 426, 433 (8th Cir. 1993); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988). As one court has pointed out, "A majority of courts have found that breach of contract claims are not preempted because the rights asserted in those claims were not equivalent to rights that could have been asserted in copyright." *Chesler/Perlmutter*, 177 F.Supp. 2d at 1058. Courts have found that the Copyright Act does not preempt breach of contract claims because

> A claim for breach of contract has the "extra element" of an alleged exchange of promises/representations between the parties. The claim depends on more than the mere act of copying or distribution regulated by the federal Copyright Act, and is on that basis not preempted by Section 301(a).

*Northwest Home Designing, Inc. v. Sound Built Homes, Inc.*, 776 F. Supp. 2d 1210, 1216 (W.D. Wash. 2011) (citing *Idema v. Dreamworks, Inc.,* 162 F. Supp. 2d 1129, 1192 (C.D. Cal. 2001)).

The only exception to this rule is for terms that are nothing more than a promise not to infringe copyright. *See, e.g., Rumble, Inc. v. Daily Mail*, 459 F.Supp.3d 1294, 1299 (C.D. Cal. 2020). For this exception to apply, however, the contractual term must truly be an equivalent of an Exclusive Right. Even contractual terms that build upon or modify Exclusive Rights are not preempted. *Id.* at 1299-1300 (promise to "make reasonable efforts to avoid violating the United States Copyright Act" not preempted because "reasonable efforts" are an "extra element"); *JZK, Inc. v. Weaver,* 2006 U.S. Dist. LEXIS 75523 (W.D. Wash. Oct. 17, 2006) (condition that copyrighted work was "for personal use only" was not preempted even though it required reproduction and public performance of the work to breach); *Meridian Project Sys. v. Hardin Constr. Co.*, 426 F. Supp. 2d 1101 (E.D. Cal. 2006) (promise not to reverse engineer copyrighted work was not preempted even though it required reproduction of the work to breach).

Here, the Source Code Provision provides the extra element necessary for Conservancy's state law claims to avoid copyright preemption. Under the Source Code Provision, Vizio has the obligation to provide, and Conservancy has the right to receive, source code for software on its smart TVs that is covered by the GPL Agreements. (Cmplt. ¶¶ 8, 28-29.) The GPL Agreements explicitly require Vizio to accompany any executable computer program licensed under the GPL Agreements with either the source code for the program or a written offer for the source code. (*Id*. ¶¶ 28-29.) As the Complaint alleges, Vizio did neither. (*Id*. ¶¶ 50-51.) The right to such source code implicates no Exclusive Rights. The Source Code Provision does not give Conservancy the right to demand that Vizio cease copying software covered by the GPL Agreements onto its smart TVs or cease distributing those smart TVs.

Any assertion by Vizio that the obligation to provide source code is the equivalent of the Exclusive Rights of reproduction and distribution, because Vizio is required to make a copy of the source code and distribute it, misses the point. Because the rights granted to authors under Section 106 are rights to *exclude*, there is no Exclusive Right

12

that does require or could require another to take action. *See CDK Glob. Ltd. Liab. Co. v. Brnovich*, ___ F.4th ___, 2021 U.S. App. LEXIS 31930, at *14 (9th Cir. Oct. 25, 2021). Vizio violates the Source Code Provision by *failing* to make a copy of the source code and then *failing* to make it available to purchasers of its smart TVs. These failures implicate no Exclusive Rights. *See Fleet*, 50 Cal.App.4th at 1924.

Consistent with the nature of its rights under the GPL Agreements, Conservancy does not seek an injunction to stop Vizio from carrying out any activity, the type of exclusionary relief specifically afforded a copyright holder. Instead, Conservancy seeks the following relief: (a) Vizio's specific performance of its contractual obligation to provide source code, and (b) a declaration of the parties' respective contractual rights and obligations. *Cf. Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) ("This qualitative difference is further reflected by the remedy afforded by the state law claim"; finding contract claim not preempted by copyright).

In short, the right to obtain a copy of the source code is available solely as a contractual right under the GPL Agreements and is not an Exclusive Right. For this reason alone, the Copyright Act does not preempt Conservancy's state law claims, and Vizio's attempt to remove this action based on federal question jurisdiction fails.

### C. Two Separate Courts Have Held That Claims Based on the Obligation to Produce Source Code Under the Source Code Provision Are Not Preempted by the Copyright Act.

In addition to the fact that the vast majority of courts have held that contract claims are not preempted by the Copyright Act, two courts, including one in the Ninth Circuit, have already addressed whether the Source Code Provision (called the "open source obligation" or "requirement" in the opinions) is subject to copyright preemption. *See Artifex Software v. Hancom, Inc.*, 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017); *Versata Software, Inc. v. Ameriprise Fin., Inc.*, 2014 U.S. Dist. LEXIS 30934, at *5 (W.D. Tex. Mar. 11, 2014). ***Both courts held that it is not.***

13

In *Versata*, plaintiff Versata's software incorporated a program governed by the GPL into its own larger software program. 2014 U.S. Dist. LEXIS 30934, at *3-4. When plaintiff sued its licensee, Ameriprise, for breach of a broader master license agreement, the licensee counterclaimed for breach of the GPL's Source Code Provision (even though the licensee was not, strictly speaking, a party to that agreement). *Id*. at *4. Plaintiff moved for summary judgment, arguing that the licensee's counterclaim was preempted by copyright law because the Source Code Provision in the GPL "amounts to nothing more than a promise to not commit copyright infringement." *Id*. at *13. Plaintiff reasoned—and the court acknowledged—that once it failed to provide the source code, the GPL's copyright license terminated and plaintiff "is potentially liable for copyright infringement for distributing or copying the software without permission." *Id*. Indeed, plaintiff was already the subject of lawsuits brought by the copyright holder for infringement. *Id*. Nevertheless, the court determined that plaintiff's reasoning was irrelevant and concluded that the obligation to provide source code was an extra element that defeated copyright preemption: "Ameriprise's claim therefore requires an 'extra element' in addition to reproduction or distribution: a failure to disclose the source code of the derivative software." *Id*. at *5.

*Versata* was followed by the Northern District of California in *Artifex,* 2017 U.S. Dist. LEXIS 62815, at *9. *Artifex* also involved the obligation of a defendant "to distribute its software with the accompanying source code." *Id*. at *4. Defendant Hancom had not done so, and plaintiff Artifex, which was also the copyright holder, sued for both breach of the GPL Agreement and for copyright infringement. *Id*. at *5. Hancom argued, as Vizio does here, that the contract claim was preempted because any allegation that it violated the open source requirement of the GPL involved the exact same exclusive federal rights to reproduce, distribute and make derivative copies protected by Section 106 of the Copyright Act. *Id*. at *9-10. The court soundly rejected Hancom's argument, choosing instead to follow *Versata* for the proposition that "a

14

failure to disclose the source code of the derivative software" constitutes the required "'extra element' in addition to reproduction or distribution." *Id*. at *9, *quoting Versata*, 2014 U.S. Dist. LEXIS 30934, at *5.

Here, as in *Versata* and *Artifex*, Conservancy seeks to enforce the obligation under the GPL Agreements to make source code available. As both *Versata* and *Artifex* point out, there is no right to obtain source code among the Exclusive Rights protected by the Copyright Act. To the contrary, the Exclusive Rights are all rights to prevent another from taking a certain action. Here, by contrast, Conservancy seeks to have Vizio affirmatively make and distribute source code. *See* 17 U.S.C. § 106. The mere fact that Conservancy's contractual rights are related to Vizio's licensing rights does not magically convert Conservancy's state law contract claim into an action under the Copyright Act. The mere fact that Vizio's violation of Conservancy's contractual rights may also violate copyrights does not mean Conservancy somehow stands in the same, or even similar, place as one of the copyright holders. Indeed, Vizio can be sued by both copyright holders and parties to the GPL Agreements, just as in *Versata* and *Artifex*. Accordingly, this Court should apply the holdings of *Versata* and *Artifex,* rule that the Source Code Provision is not preempted by the Copyright Act, and grant Conservancy's Motion to Remand.

> **D.    Congressional Intent and Public Policy Both Favor Allowing Private Parties to Freely Contract Without Fear of Having their Agreements Undone by Copyright Preemption.**

The legislative history of the Copyright Act and the public policy underlying enforcement of contracts further support the conclusion that Conservancy's breach of contract claim is not preempted by the Copyright Act. They both underscore the importance of construing the preemption of contract claims very narrowly and allowing contract claims to generally avoid preemption.

15

In crafting the scope of copyright preemption, Congress was careful not to let copyright law intrude into contract law: "Nothing in the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract." H. Rep. No. 94-1476, at 132 (1976). Congress thus indicated its respect for the freedom of contract and its reluctance to interfere in private bargains. "It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts … shall be enforced by courts of justice." *In re Marriage of McDonnal*, 652 P.2d 1247, 1251 (Or. 1982). Therefore, one "should not blithely apply public policy reasons to void contract provisions." *VL Sys., Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708, 713, 61 Cal. Rptr. 3d 818, 822 (2007). Moreover, as the Ninth Circuit has explained, "The jurisdictional question concerning 'complete preemption' centers on whether it was the intent of Congress to make the cause of action a federal cause of action and removable despite the fact that the plaintiff's complaint identifies only state claims." *Whitman v. Raley's Inc.,* 886 F.2d 1177, 1181 (9th Cir. 1987).

The leading treatise on copyright law explains why copyright law should not normally preempt contract claims:

> The essence of an enforceable contract, under American law, is consideration. Without a promise, there is no contract. Conversely, a promise on the part of one who engages in unlicensed reproduction is not a prerequisite to his being a copyright infringer. Consequently, preemption should be found absent to the extent that a breach-of-contract cause of action alleges more than simply reproduction (or adaptation, distribution, etc.) of a copyrighted work.

*1 Nimmer on Copyright*, § 1.15.

In *ProCD,* a case involving the question of whether a breach of contract claim arising out of a license agreement was preempted by the Copyright Act, the Seventh

16

Circuit similarly explained the policy reasons underlying why copyright law should not normally preempt contract claims. *ProCD,* 86 F.3d at 1454. As Judge Easterbrook explained for the *ProCD* court,

> Rights 'equivalent to any of the exclusive rights within the general scope of copyright' are rights established by law—rights that restrict the options of persons who are strangers to the author. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'

*Id.*

If, as Judge Easterbrook asked rhetorically, a customer rented a copy of *Night of the Lepus* from a video store on the condition that the customer return the tape within two days, "[m]ay the customer keep the tape, on the ground that § 301(a) makes the promise unenforceable?" *Id.* The answer, obviously, is no. Yet Vizio asks this Court to hold that Congress precisely intended this intrusion into the basic right to contract. Vizio would like to keep its source code to itself, despite a contractual obligation to the contrary, and hopes that copyright will rescue it from its choice to be bound by all the requirements of the GPL Agreements. Both the congressional intent underlying copyright law and the public policy undergirding the freedom of contract discussed above demonstrate that Vizio's hopes are misplaced. Vizio entered freely into the GPL Agreements and must now do what it promised. *Cf. Int'l Brotherhood of Teamsters, Local 396 v. NASA Servs.*, 957 F.3d 1038, 1047 n.5 (9th Cir. 2020) ("Freedom of contract prevails …, and in the absence of countervailing public policy concerns there is no reason to relieve [the parties] of the consequences of their bargain.").

### E.   Jacobsen II is Distinguishable and Does Not Support Vizio's Attempt to Remove this Action.

In its Notice of Removal, Vizio cites only one decision that applies the "extra element" test *and* holds that a contract claim is preempted by the Copyright Act. *See* Notice of Removal (Doc. No. 1), ¶ 16, *citing Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009) ("*Jacobsen II*").[5] The remaining cases cited by Vizio address the distinction between conditions and covenants, an issue that is inapposite to preemption and removal for the reasons set forth in Section V.F, below.

*Jacobsen II* sheds no light on the matter, however. First, *Jacobsen II* was about an entirely different FOSS agreement called the "Artistic License" and did not involve the Source Code Provision. *Id*. at 932. The *Jacobsen II* court merely held, in describing plaintiff's claim for breach of contract, that plaintiff had failed to allege in his complaint the required "extra element." *Id*. at 933. Moreover, the *Jacobsen II* court does not even describe plaintiff's attempt to do so. This is a pleading defect, not a general statement that copyright law preempts breach of contract claims arising from license agreements. Indeed, the *Jacobsen II* court invited plaintiff to amend the complaint in a way that "demonstrat[ed] that there are rights or remedies available under the contract claims that are not otherwise available under the copyright claim." *Id*. at 934.

More important, *Jacobsen II* did not address the "extra element" at issue here: the Source Code Provision.[6] *Artifex*, discussed in Section V.C, above, *did* address this extra element, and found that it was sufficient to prevent copyright preemption. *See Artifex,*

---

[5] The district court's opinion in *Jacobsen* was rendered after the Federal Circuit remanded the case in *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ("*Jacobsen I*"). For that reason, it is commonly referred to as *Jacobson II*.

[6] The Artistic License terms allegedly breached were that the accused software did not include (1) the author's names; (2) JMRI copyright notices; (3) references to the COPYING file; (4) an identification of SourceForge or JMRI as the original source of the definition files; and (5) a description of how the files or computer code had been changed from the original source code. *Jacobsen I*, 535 F.3d at 1376.

18

2017 U.S. Dist. LEXIS 62815, at *9-10. In doing so, the *Artifex* court explicitly distinguished *Jacobsen II,* explaining that the defendant "does not explain why the GNU GPL's open source requirement [i.e*.,* the Source Code Provision] is not the required extra element and the argument was apparently not made in *Jacobsen II*." *Id*. at *10.

Indeed, nowhere in its Notice of Removal does Vizio even consider that the Source Code Provision might be an "extra element" sufficient to avoid copyright preemption. Instead, Vizio essentially argues that the Source Code Provision cannot be breached because it is a condition of the GPL Agreements' license, and any violation of such a condition alchemically changes an action for breach of the Source Code Provision into an action for copyright infringement. (*See* Notice of Removal ¶¶ 13-15, 17.) As explained in Section V.F, immediately below, this argument misunderstands the relevant legal authority and amounts to nothing more than a red herring.

### F.    The Distinction Between Conditions and Covenants is a Red Herring.

Rather than simply apply the requisite "extra element" test for copyright preemption established by the Ninth Circuit, Vizio bases its purported right to remove on a principle of copyright law that is entirely inapplicable here. Where a copyright licensee violates a condition to the license, the copyright holder may hold the licensee liable for copyright infringement, so long as there is a "nexus" between the condition and one of the Exclusive Rights. *MDY Indus.,* 629 F.3d at 939-41. In contrast, a mere covenant may be enforced only through contract law. *Id*. at 939. Vizio reads this principle in its own incorrect way. To Vizio, this principle is an either-or proposition: if Vizio is liable for copyright infringement because it violated a condition of the GPL Agreements, then it cannot be liable for breach of the GPL Agreements. (*See* Notice of Removal ¶¶ 13-15, 17.)

Vizio's misguided view of this principle is wholly unsupported by legal authority. None of the extensive Ninth Circuit case law developing this principle, including the

19

cases cited by Vizio, concern the issue of copyright preemption. Not one case involves a defendant seeking to use the distinction between conditions and covenants to preempt a state law claim. To the contrary, these cases involve a copyright holder seeking to hold a licensee liable for copyright infringement, and the only question presented is whether the copyright holder could do so, sometimes in addition to a claim for breach of contract. The reverse is never true. Vizio has not cited, and Conservancy has not located, any case in which a defendant successfully used copyright preemption to avoid a claim for breach of contract because it would prefer to be sued for copyright infringement, as Vizio does here.

In any event, this principle is wholly inapplicable here precisely because Conservancy has not asserted a copyright claim. A copyright license is an affirmative defense to a claim for copyright infringement. *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000). Thus, when a copyright holder grants a license, the copyright holder generally has waived the right to sue for copyright infringement, and the holder must content itself with claims for breach of the license agreement. *MDY Indus.*, 629 F.3d at 939. However, where the wrongdoing is the failure to meet a condition of the license, the licensee is acting outside the scope of the license grant and thus will have subjected itself to a claim for copyright infringement. *Id*. As the leading commentator explains, this is because "the rights dependent on satisfaction of that condition have not been effectively granted, rendering any use by the [licensee] without authority from the [copyright holder]." 3 *Nimmer on Copyright* § 10.15[A]. In other words, the licensee is, for those acts, simply an infringer without the right to interpose the license as a defense.

Here, however, Conservancy has not alleged any claim for copyright infringement. Without such a claim, Vizio has no need to interpose the GPL Agreements' incorporated licenses as a defense. Conservancy is seeking to vindicate its contractual right to the source code. As remedies, it prays for specific performance of the

20

Source Code Provision and a declaration of contractual rights. Because this action does not involve a copyright claim, there is no need to interpose a license defense. As a result, it does not matter whether or not the Source Code Provision is a condition that limits the scope of the license. From Conservancy's point of view, the only questions are whether Vizio has breached the Source Code Provision and, if so, what is the appropriate remedy. As demonstrated above, that remedy—requiring Vizio to specifically perform under the GPL Agreements and make its source code available—is not one that the Copyright Act provides; it is only a contract remedy.

## VI.    CONCLUSION

For all the foregoing reasons, the Court should find that Conservancy's state law claims, which are solely to enforce the Source Code Provision, are not preempted by the Copyright Act because the obligation to provide source code is an "extra element" unrelated to any Exclusive Right. Therefore, there is no federal question alleged in the Complaint originally filed by Conservancy in the Superior Court of the State of California for the County of Orange. Accordingly, this Court should find that it lacks subject-matter jurisdiction over this action, grant Conservancy's Motion, and remand this action to state court.

DATED: December 27, 2021          **AARON & SANDERS, PLLC**
                                  **VAKILI & LEUS, LLP**


                                  By:  /s/ Sa'id Vakili
                                       Sa'id Vakili, Esq.
                                       David N. Schultz, Esq.
                                       Richard Sanders, Esq.
                                       *Attorneys for Plaintiff Software Freedom*
                                       *Conservancy, Inc.*

## CERTIFICATE OF SERVICE

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*
*U.S.D.C. C.D. Cal. Case No.: 8:21-cv-01943-JLS-KES*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On December 27, 2021, I served the foregoing document described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all interested parties in this action at the addresses listed below, as follows:

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Michael E. Williams, Esq.
*michaelwilliams@quinnemanuel.com*
Daniel C. Posner, Esq.
*danposner@quinnemanuel.com*
John Z. Ying
*johnyin@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

**213/443-3000** | Fax: 213/443-3100

*Counsel for Defendant Vizio, Inc.*

I hereby certify that on the 27th day of Decmber 2021, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action.  The NEF will constitute service of the document.  Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

/s/ Jason C. Ming
Jason C. Ming