1   QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
2     Michael E. Williams (Bar No. 181299)
      (michaelwilliams@quinnemanuel.com)
3     Daniel C. Posner (Bar No. 232009)
      (danposner@quinnemanuel.com)
4     John Z. Yin (Bar No. 325589)
      (johnyin@quinnemanuel.com)
5   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017
6   Telephone:   (213) 443-3000
    Facsimile:    (213) 443-3100
7
    *Attorneys for Defendant*
8   *VIZIO, Inc.*

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11  SOFTWARE FREEDOM                  CASE NO. 8:21-cv-01943-JLS-KES
    CONSERVANCY, INC.,
12                                    **DEFENDANT VIZIO, INC.'S**
                 Plaintiff,           **OPPOSITION TO PLAINTIFF**
13                                    **SOFTWARE FREEDOM**
                                      **CONSERVANCY, INC.'S MOTION**
14         vs.                        **TO REMAND ACTION TO STATE**
                                      **COURT**
15
                                      Date:  May 13, 2022
16  VIZIO, INC.,                      Time: 10:30 a.m.
                                      Courtroom: 10A
17               Defendant.           Judge: Hon. Josephine L. Staton
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

ARGUMENT ....................................................................................................... 9

I.     COMPLETE PREEMPTION GIVES RISE TO REMOVAL
JURISDICTION .......................................................................................... 9

II.    THE COPYRIGHT ACT COMPLETELY PREEMPTS SFC'S
STATE-LAW CLAIMS ............................................................................ 10

     A.    SFC Does Not Dispute That The Subject Matter Of Its State-Law
Claims Fall Within The Subject Matter of Copyright ......................... 11

     B.    The Rights Asserted By SFC Are Qualitatively Equivalent To
The Exclusive Rights Under The Copyright Act .................................. 11

         1.    SFC Has Admitted That Claims Seeking To Enforce The
GPLs Arise Under The Copyright Act ......................................... 11

         2.    The GPLs Protect Exclusive Rights Under The Copyright
Act, Making A Claim To Enforce The GPLs Qualitatively
Equivalent To A Copyright Claim ................................................ 13

         3.    The Source Code Provision Is Not An "Extra Element"
That Transforms The Nature Of This Action ............................... 15

     C.    The Source Code Provision Is A "Condition" To The GPLs, The
Violation Of Which Gives Rise To A Claim For Copyright
Infringement, Not Breach Of Contract ................................................ 19

         1.    The Plain Language of the GPLs Confirms the Source
Code Provision is a Condition ...................................................... 20

         2.    SFC's Criticism Of The Condition-vs-Covenant Analysis
Is Inconsistent With Its Prior Judicial Admissions .................... 21

         3.    SFC's Argument That Breach Of Contract Claims Are
"Almost Never Preempted" Is Misplaced .................................... 23

     D.    Congressional Intent And Public Policy Regarding Freedom of
Contract Are Irrelevant Because Contract Law Does Not Apply ......... 24

CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Abrego Abrego v. Dow Chemical Co.*,
　443 F.3d 676 (9th Cir. 2006) ................................................................. 9

*Altera Corp. v. Clear Logic, Inc.*,
　424 F.3d 1079 (9th Cir. 2005) ................................................. 23, 24, 25

*Artifex Software v. Hancom, Inc.*,
　2017 WL 1477373 (N.D. Cal. 2017) ................................... 17, 18 , 19

*Atkinson v. Meta Platforms et al.*,
　2021 WL 5447022 (9th Cir. 2021) ...................................................... 15

*Bokenfohr v. Gladen*,
　828 F. App'x 485 (9th Cir. 2020) ........................................................ 10

*Botsford v. Blue Cross & Blue Shield of Montana, Inc.*,
　314 F.3d 390 (9th Cir. 2002) ................................................................. 9

*Briarpath, Ltd. v. Phoenix Pictures, Inc.*,
　373 F.3d 296 (2d Cir. 2004) ................................................................. 10

*Chesler/Perlmutter Prods. v. Fireworks Entm't, Inc.*,
　177 F.Supp.2d 1050 (C.D. Cal. 2001) .................................. 11, 12, 23

*Dielsi v. Falk*,
　916 F. Supp. 985 (C.D. Cal. 1996) ........................................................ 9

*Fleet v. CBS, Inc.*,
　50 Cal. App. 4th 1911-24 (1996) ........................................................ 11

*Grumpy Cat Ltd. v. Grenade Beverage LLC*,
　2018 WL 2448126 (C.D. Cal. 2018) .............................................. 19, 20

*Integral Dev. Corp. v. Tolat*,
　2016 WL 8929073 (N.D. Cal. 2016) ................................................... 21

*Jacobsen v. Katzer*,
　535 F.3d 1373 (Fed. Cir. 2008) .................................................... passim

*Jacobsen v. Katzer*,
　609 F. Supp. 2d 925 (N.D. Cal. 2009) .......................................... 16, 17

*Laws v. Sony Music Entertainment, Inc.*,
　448 F.3d 1134 (9th Cir. 2006) .............................................. 10, 15, 18

*Maloney v. T3Media, Inc.*,
　853 F.3d 1004 (9th Cir. 2017) .............................................. 10, 11

*Marshall & Swift/Boeckh, LLC v. URS Corp.*,
   2009 WL 10668449 (C.D. Cal. Aug. 26, 2009) ..............................................14

*MDY Industries, LLC. V. Blizzard Entertainment, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...................................................................passim

*Meribear Prods., Inc. v. Vail*,
   2014 WL 12597609 (C.D. Cal. 2014) ................................................10, 15

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*,
   426 F. Supp. 2d 1101 (E.D. Cal. 2006) ..............................................24

*Nw. Home Designing Inc. v. Sound Built Homes Inc.*,
   776 F. Supp. 2d 1210 (W.D. Wash. 2011) ...................................23, 24

*Oglesby v. RCA Corp.*,
   752 F.2d 272 (7th Cir. 1985) ...............................................................9

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014) ...........................................................11

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ...............................................................9

*ProCD, Inc. v. Zeidenberg*
   86 F.3d 1447 (7th Cir 1996) ...............................................................24

*Ritchie v. Williams*,
   395 F.3d 283 (6th Cir. 2005) ..............................................................10

*Rosciszewski v. Arete Assoc., Inc.*,
   1 F.3d 225 (4th Cir. 1993) ..................................................................10

*Rueda Vidal v. Bolton*,
   822 F.App'x 643 (9th Cir. 2020) ..........................................................9

*Rumble, Inc. v. Daily Mail*,
   459 F. Supp. 3d 1294 (C.D. Cal. 2020) ...............................................24

*Ryoo Dental, Inc. v. Han*,
   No. SACV 15-308-JLS (RNBx),
   2015 WL 4208580 (C.D. Cal. July 9, 2015) ........................................11

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989 .............................................................18

*Software Freedom Conservancy, Inc. v. Best Buy Co.*,
   Case No. 1:09-cv-10155-SAS (S.D.N.Y. 2009) .....................................8

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   188 F.3d 1115 (9th Cir. 1999) ............................................................19

*Versata Software, Inc. v. Ameriprise Fin. Inc.*,
   2014 WL 950065 (W.D. Tex. 2014) ...............................................17, 19

*Worth v. Universal Pictures, Inc.,*
    5 F. Supp. 2d 816 (C.D. Cal. 1997).................................................................10

### **<u>Statutes</u>**

17 U.S.C. § 106(1)-(3)....................................................................................1, 4

17 U.S.C. § 301...............................................................................................24

17 U.S.C. § 301(a)...........................................................................................10

## **<u>INTRODUCTION</u>**

Plaintiff Software Freedom Conservancy, Inc.'s ("SFC") Motion for Remand should be denied because this Court has subject matter jurisdiction based on the complete preemption doctrine under the Copyright Act.  SFC's claims seek to enforce two copyright licenses—the GNU General Public License version 2 ("GPLv2") and the GNU Lesser General Public License version 2.1 ("LGPLv2.1") (collectively "GPLs").  The GPLs require disclosure of certain source code (or a written offer to do so) as a condition to copying and distributing software covered by the GPLs (hereafter, the "Source Code Provision").  SFC has attempted to avoid federal jurisdiction by framing its claims under state law for breach of contract and declaratory relief and stridently arguing in its remand motion that its claims do not implicate the Copyright Act.  SFC's arguments are contrary to law, ignore the express language of the GPLs, and are disingenuous given that SFC has consistently taken the position before bringing this lawsuit that violation of this same Source Code Provision of the GPLs constitutes copyright infringement.

As a matter of law, the Copyright Act completely preempts state-law claims that seek to enforce rights equivalent to the exclusive rights the Copyright Act protects.  Put differently, if a state-law claim could be asserted under the Copyright Act, it is preempted and subject to removal.  Thus, the relevant inquiry for this motion is whether SFC's state-law claims seek to enforce rights that the Copyright Act protects.  They clearly do.

*First*, the GPLs are expressly limited in scope to cover only exclusive rights protected by the Copyright Act; namely, the copyright holder's exclusive right to control the copying, distribution, and modification of the copyrighted work.   17 U.S.C. § 106(1)-(3).  Indeed, the GPLs explicitly state that "[a]ctivities other than copying, distribution and modification are not covered by this License; they are outside its scope."  Dkt. 1-6 (Compl. Errata) at Ex. A. (GPLv2); Ex. B (LGPLv2.1).

*Second*, the Source Code Provision of the GPLs is contained within a section

that discusses the conditions under which a licensee may copy and distribute the copyrighted work, both of which are exclusive rights under the Copyright Act.

*Third*, the creator of the GPLs, the Free Software Foundation ("FSF"), has publicly confirmed that only the copyright holders of the software have the power to enforce the GPLs.  Declaration of Michael E. Williams ("Williams Decl."), Ex. 1 (FSF FAQ) at 27-28 ("Since the GPL is a copyright license, the copyright holders of the software are the ones who have the power to enforce the GPL.").  Thus, by definition, the right to enforce the Source Code Provision of the GPLs is equivalent, indeed identical, to the exclusive rights of the copyright holder to control the copying and distribution of the software.  Because the copyright holder has the right to enforce the GPLs, including its Source Code Provision, under the Copyright Act, the Copyright Act preempts SFC's state-law claims that seek to do the same.

Controlling Ninth Circuit authority further confirms that SFC's state-law claims arise under the Copyright Act and are preempted.  The Ninth Circuit has explained that whether breach of a license agreement constitutes a copyright claim or a contract claim depends on whether the provision at issue is a "copyright-enforceable condition" of the license, or a "contract-enforceable covenant."  *MDY Industries, LLC. V. Blizzard Entertainment, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).  If the provision allegedly breached is a condition of the license, the scope of the license is exceeded and the violation of that condition constitutes copyright infringement.  Based on Ninth Circuit authority and the express language of the GPLs, it is clear—and SFC does not dispute—that the Source Code Provision is a condition of the GPLs.  As such, the violation of this condition would constitute copyright infringement, and is not actionable under contract law.  Although SFC now asserts this "condition vs. covenant" distinction is a "red-herring," SFC has previously adopted this same distinction and asserted in prior litigation that the Source Code Provision is a condition of the GPLs and that failure to comply with it gives rise to a claim for copyright infringement.  Because the violation of the Source

Code Provision gives rise to a claim for copyright infringement by the copyright holder, SFC's state-law claims based on these alleged violations are preempted.

SFC is well-aware that an action to enforce the Source Code Provision of the GPLs is an action arising under the Copyright Act. Before suing defendant VIZIO, Inc. ("VIZIO"), SFC repeatedly accused VIZIO of copyright infringement based on its alleged failure to comply with the Source Code Provision of the GPLs—the same allegations on which its state-court claims are now based. Indeed, SFC, along with the copyright holder of a different software covered by the GPL, previously sued other companies for copyright infringement based on similar allegations that these companies were selling televisions that incorporated software in violation of the Source Code Provision. SFC's prior assertions confirm that its claims here that seek to enforce the Source Code Provision of the GPLs arise under the Copyright Act, and that its arguments to the contrary are disingenuous and meritless.

Because SFC's state-law claims seeking to enforce the Source Code Provision of the GPLs are equivalent to claims that could be asserted under the Copyright Act, they are preempted. This Court therefore has subject matter jurisdiction based on the complete preemption doctrine. SFC's motion should be denied.

## STATEMENT OF FACTS

In October 2021, SFC sued VIZIO in Orange County Superior Court seeking "to enforce two vital and ubiquitous software license agreements, the GNU General Public License version 2, also known as 'GPLv2,' and its close cousin, the GNU Lesser General Public License version 2.1, also known as 'LGPLv2.1' . . . ." Dkt. 1-2 (Compl.) at ¶ 1. SFC alleged that VIZIO violated the GPLs by failing to accompany the smart TVs it sold in the U.S. with either the "Source Code" or a "written offer to provide such Source Code." *Id.* at ¶¶ 99-100. SFC, however, is not seeking to enforce these license agreements as the copyright holder, or even a party to these licenses. Instead, SFC sued for breach of contract and declaratory relief as a purported third-party beneficiary of the GPLs. Dkt. 14 (Remand Mot.) at 6.

VIZIO removed the lawsuit to this Court based on the doctrine of copyright preemption, which provides a basis for removal jurisdiction.  *See* Dkt. 1 (Removal Ntc).  VIZIO contends that SFC's breach of contract and declaratory relief claims based on the GPLs are within the subject matter of copyright and seek to enforce rights equivalent to the exclusive rights under the Copyright Act.  *See id.*  SFC moved to remand this case, claiming that its "straightforward" state-law claims are "purely contractual and [] not equivalent to any of [the] five exclusive rights" enumerated under the Copyright Act.  Dkt. 14 (Remand Mot.) at 1-2.

### ***The GPLs Are Copyright Licenses***

The Copyright Act vests the copyright holder with the exclusive right to control, among other things, the copying, distribution, and modification of the copyrighted work.  17 U.S.C. § 106(1)-(3).  The express language of the GPLs makes clear that it protects these exclusive rights under the Copyright Act.  For example, GPLv2 states that "[w]e protect your rights with two steps: (1) copyright the software, and (2) offer you this license which gives you legal permission to copy, distribute and/or modify the software."  Dkt. 1-6 (Compl. Errata) at Ex. A.  Importantly, "***[a]ctivities other than copying, distribution and modification are not covered by this License***; they are outside its scope."  *Id.* (all emphasis added in this brief unless otherwise noted).  Nearly identical language is also found in LGPLv2.1.  *See id.* at Ex. B.  The Source Code Provision is contained within a section of the GPLs that discusses the conditions under which software covered by the GPLs can be copied and distributed.  *See id.* at Ex. A, §3(a)-(b); Ex. B, §4.  Thus, the Source Code Provision of the GPLs relates to the exclusive rights of the copyright holder to control the copying and distribution under the Copyright Act.

The FSF, the creator of the GPLs, has also confirmed that the GPLs are copyright licenses which vest the power to enforce them with the copyright holders of the software that is governed by the GPLs.  The FSF is a non-profit organization that supports the "GNU project," including maintaining and updating the "GNU

General Public Licenses", *i.e.*, GPLs.   *See* Williams Decl., Ex. 1 (FSF FAQ) at 6. The following Q&A is found in its "Frequently Asked Questions about the GNU Licenses" page:

> Who has the power to enforce the GPL?
>
> ***Since the GPL is a copyright license, the copyright holders of the software are the ones who have the power to enforce the GPL***.   If you see a violation of the GPL, you should inform the developers of the GPL-covered software involved.   They either are the copyright holders, or are connected with the copyright holders.

*Id.* at 27-28.

### *In Its Pre-Suit Communications With VIZIO, SFC Consistently Characterized Its Claims As "Copyright Infringement"*

SFC asserts it "sent a letter to Vizio" in August 2018, notifying VIZIO of the allegations underlying its case. Dkt. 1-2 (Compl.) at ¶ 56.   But SFC omits to mention that its letter was titled "Copyright Infringement by D24f-F1 Television and XR6P Tablet," not breach of contract.   Williams Decl., Ex. 2 (SFC Letter) at 1. The letter proceeds to identify certain VIZIO products as allegedly "Infringing Products," and accuses VIZIO of infringing "copyrights" for allegedly failing to comply with § 3 of GPLv2—the same Source Code Provision that SFC now relies on for its breach of contract claim.   *See id.*   Nowhere in this letter did SFC raise a breach of contract claim, or even use the word "contract." *Id.* at 1-2.

In subsequent correspondence to VIZIO, SFC continued to characterize "this copyright infringement matter" as an attempt to make sure VIZIO does not "release additional copyright-infringing products."   Williams Decl., Ex. 3 (2018 SFC Letter) at 1-2.   In February 2019, SFC alleged that "every single [VIZIO] device manufactured is a copyright infringement."   Williams Decl., Ex. 4 (2019 SFC Letter) at 3.   There was no reference to a breach of contract claim.   *See id.* Throughout the parties' pre-suit exchanges, SFC consistently asserted that VIZIO's

alleged failure to comply with the Source Code Provision of the GPLs constituted copyright infringement. Before filing this lawsuit, SFC never asserted that VIZIO breached a contract to which SFC was an intended third-party beneficiary.

### *SFC's Complaint And Its Motion To Remand Contain Numerous Misrepresentations About VIZIO's Compliance With The GPLs*

SFC's complaint and its factual allegations in support of its remand motion contain numerous misrepresentations, which suggest that SFC failed to conduct a proper investigation before filing this lawsuit. The parties communicated for more than a year before SFC filed this lawsuit, during which time VIZIO went above and beyond the requirements of the GPLs to meet SFC's demands. For example, SFC alleges that "none of the smart TVs that Vizio has introduced to the U.S. market" included "a written offer to provide [the] Source Code on demand." Dkt. 1-2 (Compl.) at ¶ 99. To the contrary, VIZIO shipped its smart TVs with an express written offer embedded in their user interface:

> Your VIZIO SmartCast™ device may contain executable codes and libraries that are subject to the terms of the **GNU General Public License (GPL), GNU Lesser General Public License (LGPL),** AFLv2.1, BSD License, RabbitMQ/Mozilla Public License v1.1 and other open source licenses. **VIZIO offers to provide applicable source code upon request** for a processing fee covering the cost of fulfilling the distribution, such as the cost of the medium used and shipping and handling. **To make a request, please contact VIZIO at support.vizio.com.**

Williams Decl., Ex. 5 (License List).

SFC also alleges that VIZIO "does not make the corresponding source code for these programs available to purchasers of its smart TVs." Dkt. 14 (Remand Mot.) at 5. But VIZIO supplied at least *six different source code versions* (called "Complete Corresponding Source (CCS) candidates") to SFC during their pre-suit

exchange, along with detailed instructions on how to compile CCS candidates into executable form using a "make" file.  VIZIO also diligently responded to dozens of email inquiries from SFC regarding the CCS candidates and worked in good faith to respond to SFC's demands.  *See, e.g.*, Williams Decl., Ex. 6 (2019-11-07 VIZIO Letter) at 1 (providing 5th CCS candidate and noting "if there are any further questions or technical issues, we will work with you to promptly address them").  This continued for more than 15 months.

On November 13, 2019, after receiving and rejecting five CCS candidates, SFC confirmed that it finally understood how to run the "make" file provided by VIZIO on the 6th CCS candidate, and did so without error.  Williams Decl., Ex. 7 (2019-11-26 VIZIO Letter) at 3.  However, SFC was no longer content with having just a copy of the source code as required by the GPLs, but instead demanded further instructions to import it onto a commercially released TV.  *See id.*  Not only was this far beyond what the GPLv2 required (*i.e.*, that the source code be provided on "a medium customarily used for software exchange," not on a specific device), it was also "something that VIZIO or its chip supplier [was] unable to provide without posing a serious security risk across VIZIO's entire product line," which would "compromise the security of VIZIO's devices and the consumers using them," as VIZIO explained to SFC in an email.  *Id.* at 1.  In its response email, SFC referenced a prior copyright infringement lawsuit it had filed against another TV manufacturer, and suggested a meeting between counsel.  *See id.*

The parties were unable to resolve their dispute.  Thus, despite the six CCS candidates VIZIO had provided and the significant resources VIZIO had invested in ensuring compliance with the GPLs, SFC sued VIZIO.  Recognizing, however, that it was not the copyright holder and therefore lacked standing to sue for copyright infringement, SFC sued in state court on the purported basis that this was a "purely contractual" matter, not copyright infringement.  Through artful pleading, SFC tried to frame the dispute as a third-party beneficiary breach-of-contract claim, but SFC

recognized the novelty of its approach, as it referred to this action in its publicity materials as "unique" and "the first case" of its kind.  Williams Decl., Ex. 8 (SFC Press Kit) at 3.

### *SFC Previously Asserted That The Alleged Violation Of The Same Source Code Provision Of The Same GPLs Was Copyright Infringement*

The prior copyright infringement lawsuit that SFC had referenced in one of its last pre-litigation emails to VIZIO was *Software Freedom Conservancy, Inc. v. Best Buy Co.*, Case No. 1:09-cv-10155-SAS (S.D.N.Y. 2009) (the "*BusyBox* litigation"). *See* Williams Decl., Ex. 7 ("You may already be aware that we have litigated over the issue of GPL in the past.  In a large lawsuit we had 10 years ago, Samsung was included in the defendants specifically regarding a television.").  There, SFC and Erik Andersen sued more than a dozen companies, including Best Buy and Samsung, under the Copyright Act.  *See* Williams Decl., Ex. 9 ("*BusyBox* Compl." at ¶ 17).  Mr. Andersen was "the author and developer of the "BusyBox" computer program, and the owner of copyrights in that computer program." *Id.* at ¶ 20.  SFC alleged it "act[ed] as copyright enforcement agent" for Mr. Anderson.  *See id.* at ¶¶ 20-21, 31.

In the *BusyBox* litigation, SFC and Mr. Anderson alleged that BusyBox was distributed "under a ***copyright license*** entitled the 'GNU General Public License, Version 2,'" which is the same GPLv2 license at issue here.  *See id.* at ¶ 22.  The *BusyBox* Complaint asserted copyright infringement based on alleged violations of GPLv2, § 3, which is the same Source Code Provision on which SFC relies now. Notably, SFC alleged that failure to comply with the Source Code Provision violated the "[copyright holder and SFC]'s ***exclusive rights under the Copyright Act***."  Williams Decl., Ex. 9 (*BusyBox* Compl.) at ¶ 29.  Yet, in this action, SFC asserts the exact opposite of what it had argued previously: that violations of the Source Code Provision "***implicate no Exclusive Rights***."  Dkt. 14 (Remand Mot.) at 13.

# **ARGUMENT**

## **I.   COMPLETE PREEMPTION GIVES RISE TO REMOVAL JURISDICTION**

This Court has subject matter jurisdiction over this case because SFC's state-law claims are preempted by the Copyright Act.  Where "federal copyright law completely preempts Plaintiff's [] Causes of Action, [the] case [is] properly removed to federal court."  *Dielsi v. Falk*, 916 F. Supp. 985, 994 (C.D. Cal. 1996).  SFC admits as much, noting that the "complete preemption doctrine" is an "exception to the plaintiff's mastery of the complaint."  Dkt. 14 (Remand Mot.) at 8.  Complete preemption cannot be overcome by artful pleading.  *Botsford v. Blue Cross & Blue Shield of Montana, Inc.*, 314 F.3d 390, 393 (9th Cir. 2002).

Although, as a general rule, a district court deciding whether to exercise removal jurisdiction must consider only allegations in the complaint, "the general rule is overridden by the artful pleading doctrine in complete preemption cases."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), *superseded by statute on other grounds.*[1]  "Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims."  *Id*; *see also Oglesby v. RCA Corp.*, 752 F.2d 272, 277 (7th Cir. 1985) (same).

Courts have repeatedly found that complete preemption applies to claims

---

[1]   *See Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (noting that "The final CAFA amendment … overrides the judge-created requirement that each defendant consent to removal," citing *Parrino*'s ruling that "All defendants must join a notice of removal," which is not at issue here).  Indeed, the Ninth Circuit quoted *Parrino* favorably in *Rueda Vidal v. Bolton*, 822 F.App'x 643, 644-45 (9th Cir. 2020) on the issue of when the court may consider "documents crucial to the plaintiff's claims but not explicitly incorporated in his complaint."  *Id.* at 645, *quoting Parrino*, 146 F.3d at 706.

arising under the Copyright Act.  *See, e.g.*, *Meribear Prods., Inc. v. Vail*, 2014 WL 12597609, at *5 (C.D. Cal. 2014) (finding it persuasive that the "complete preemption doctrine applies to the Copyright Act"); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 821 (C.D. Cal. 1997) ("Complete preemption has been found for claims brought under the Copyright Act."); *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) (finding right-of-publicity claim preempted by the Copyright Act). *See also*, *Ritchie v. Williams*, 395 F.3d 283, 286-87 (6th Cir. 2005); *Briarpath, Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 303-09 (2d Cir. 2004); *Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225, 231-33 (4th Cir. 1993).

SFC does not dispute that the complete preemption doctrine applies to the Copyright Act or that removal is proper where complete preemption is found, but argues only that VIZIO has not met its burden to establish preemption of its state-law claims.  Dkt. 14 (Remand Mot.) at 8-9.  As such, should the Court find complete preemption here, removal is proper and SFC's motion should be denied.

## II.     THE COPYRIGHT ACT COMPLETELY PREEMPTS SFC'S STATE-LAW CLAIMS

Section 301 of the Copyright Act expressly preempts "all legal and equitable rights that are **equivalent to** any of the exclusive rights within the general scope of copyright . . ."  17 U.S.C. § 301(a).  "Under the Act, the owner of copyright . . . has the exclusive rights to do and to authorize others to display, perform, reproduce or distribute copies of the work, and to prepare derivative works."  *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  "The copyright is the right to control the work, including the decision to make the work available to or withhold it from the public."  *Id.*

"Copyright preemption is both explicit and broad[.]"  *Bokenfohr v. Gladen*, 828 F. App'x 485, 486 (9th Cir. 2020).  The Copyright Act preempts a state-law claim when: (1) "the 'subject matter' of the state law claim falls within the subject matter of copyright" and (2) "the rights asserted under state law are equivalent to"

the rights granted by the Copyright Act.  *Ryoo Dental, Inc. v. Han*, No. SACV 15-308-JLS (RNBx), 2015 WL 4208580, at *2 (C.D. Cal. July 9, 2015); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017).  Both prongs are met here.

### A.   SFC Does Not Dispute That The Subject Matter Of Its State-Law Claims Fall Within The Subject Matter of Copyright

*First*, it is undisputed that the subject matter of SFC's state-law claims—computer programs and source code—falls squarely within "the subject matter of copyright."  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1381 (Fed. Cir. 2014) ("It is undisputed that computer programs … can be subject to copyright protection as 'literary works.'").  This prong supports a finding of preemption.  *See* Dkt. 14 (Remand Mot.) at 10.

### B.   The Rights Asserted By SFC Are Qualitatively Equivalent To The Exclusive Rights Under The Copyright Act

*Second*, the rights asserted by SFC's state-law claims—which seek to enforce the terms of the GPL copyright licenses—are ***qualitatively equivalent*** to the exclusive rights granted by the Copyright Act.  "A right is equivalent to rights within the exclusive province of copyright when it is infringed by the mere act of reproducing, performing, distributing, or displaying the work at issue."  *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918-24 (1996).  As SFC concedes in its motion, the Copyright Act "has complete preemptive force if the rights asserted in the state-law claims ***are rights that could have been asserted under the Copyright Act***."  Dkt. 14 at 10, *citing Chesler/Perlmutter Prods. v. Fireworks Entm't, Inc.*, 177 F.Supp.2d 1050, 1057 (C.D. Cal. 2001).  In other words, if the copyright holder could assert the same rights under the Copyright Act that SFC seeks to assert under state law, SFC's claims are preempted.

#### 1.   SFC Has Admitted That Claims Seeking To Enforce The GPLs Arise Under The Copyright Act

Before filing this lawsuit, SFC consistently took the position that VIZIO's

alleged failure to comply with the Source Code Provision of the GPLs gives rise to claims for copyright infringement.[2]   By doing so, SFC conceded the alleged violations are "rights that could have been asserted under the Copyright Act," for which the Copyright Act "has complete preemptive force." *Chesler/Perlmutter*, 177 F.Supp.2d at 1057.

For example, in its pre-suit exchange with VIZIO, SFC repeatedly claimed that VIZIO's alleged failure to comply with the Source Code Provision constituted copyright infringement.  *See* pp. 5-6, *supra*; *see also*, Williams Decl., Ex. 2 (SFC letter alleging "Copyright Infringement"), Williams Decl., Ex. 3 at 2 (SFC letter referring to "this copyright infringement matter"), Williams Decl., Ex. 4 at 3 (letter from counsel for SFC accusing VIZIO of "copyright infringement").  During these discussions, SFC never asserted that violations of the Source Code Provision give rise to a breach of contract claim.

In fact, SFC admitted in the *BusyBox* litigation that the defendants' alleged violations of the Source Code Provision were a "violation of Plaintiffs' exclusive rights under the Copyright Act."  Williams Decl., Ex. 9 (*BusyBox* Compl.) at ¶ 29.  Specifically, in their *BusyBox* Complaint, SFC and the copyright holder alleged that "each Defendant sells electronic products, such as high definition televisions," that contained "BusyBox or a derivative work of BusyBox."  *Id.* at ¶ 26.  But, according to the *BusyBox* Complaint, such "distribution is not made with [the copyright holder]'s permission" because "each Defendant has distributed BusyBox … in a manner that does not comply with the [GPLv2] License," particularly the Source Code Provision.  *See id.* at ¶¶ 24-27.  As such, SFC and the copyright holder asserted a copyright infringement claim to challenge the defendants' alleged reproduction and distribution of televisions without providing the source code for

---

[2]   To be sure, VIZIO denies that it has violated the GPL's Source Code Provision, including for the reasons shown above. *See* pp. 6-8, *supra*.

BusyBox, which was governed by the Source Code Provision of the GPLs.  That is the same accusation it makes here against VIZIO.

SFC's position in its remand motion that the Copyright Act merely grants "rights to *exclude*," and could not "require another to take action," such as complying with the GPLs by disclosing the source code (*see* Dkt. 14 at 12-13), is belied by its prior admissions in pre-suit communications with VIZIO and in prior litigation.  As the FSF has made clear, the copyright holder has the right to enforce the rights under the GPLs.  Apparently, it was only after SFC realized it lacked standing to sue for copyright infringement (because it is not the owner of the copyright in the asserted source code here), that it pivoted to its admittedly "unique" theory of suing for breach of contract as a purported third-party beneficiary.  But that does not change the fact that, as SFC previously admitted, the rights it seeks to enforce here are equivalent to the exclusive rights under the Copyright Act.

> **2.     The GPLs Protect Exclusive Rights Under The Copyright Act, Making A Claim To Enforce The GPLs Qualitatively Equivalent To A Copyright Claim**

SFC's positions in its pre-suit communications and in the *BusyBox* litigation are consistent with the plain language of the GPLs and clear guidance from the creator of the GPLs.  The GPLs are expressly limited to the right to copy, modify, and distribute the covered source code, each of which is an exclusive right granted to the copyright holder under the Copyright Act.  For example, GPLv2 states that "this license [] gives you legal permission to copy, distribute and/or modify the software."  Dkt. 1-6 (Compl. Errata) at Ex. A.  Importantly, "*[a]ctivities other than copying, distribution and modification are not covered by this License*; they are outside its scope."  *Id.*  LGPLv2.1 contains nearly identical language.  *See id.* at Ex. B.  Therefore, the rights granted by the GPLs are equivalent and expressly limited to the exclusive rights granted to a copyright holder under the Copyright Act to control the copying, distribution, and modification of a copyrighted work.  Thus, an action

to enforce the terms of the GPLs is, by definition, an action to enforce the exclusive rights granted to the copyright holder under the Copyright Act.

SFC recognizes this as well.  In the *BusyBox* litigation, SFC and the copyright holder alleged that "[i]f a distributor fails to [comply with the Source Code Provision], they are not fulfilling the terms of the license, and, thus, [its] ***distribution*** is not made with [the copyright holder]'s permission."  Williams Decl., Ex. 9 (*BusyBox* Compl.) at ¶ 24.  SFC further alleged that "[e]ach Defendant … continues to ***copy, modify or distribute*** BusyBox in violation of Plaintiffs' ***exclusive rights under the Copyright Act***."  *Id.* at ¶ 29.  In doing so, SFC specifically connected the Source Code Provision to the Exclusive Rights under the Copyright Act.

Moreover, because the GPLs protect exclusive rights under the Copyright Act, only the copyright holder has the power to enforce the terms of the GPLs.  The FSF, the organization that created, maintains, and updates the GPLs, publicly states as much in its FAQ: "Since the GPL is a copyright license, the copyright holders of the software are the ones who have the power to enforce the GPL."  Williams Decl., Ex. 1 (FSF FAQ) at 27-28.  *See also*, p. 5, *supra.*  This further confirms that a claim seeking to enforce the terms of the GPLs is a claim that not only could be, but indeed must be, asserted under the Copyright Act by the copyright holder of the software.

SFC does not claim to be a copyright holder of the computer programs allegedly used in VIZIO's products.  *See* Dkt. 14 (Remand Mot.) at 6 (SFC sues "not as a copyright holder, but as a third-party beneficiary of the GPL Agreements.").  That SFC attempts to disguise its claim as one for breach of contract or declaratory relief does not change the fact that the rights it is asserting are "rights that could have been asserted under the Copyright Act." *Marshall & Swift/Boeckh, LLC v. URS Corp.*, 2009 WL 10668449, at *19 (C.D. Cal. Aug. 26, 2009) (finding the Copyright Act preempts breach-of-contract claim).  As such, the

Copyright Act "has complete preemptive force" over SFC's state-law claims seeking to enforce the terms of the GPLs.  *See* Dkt. 14 (Remand Mot.) at 10.

### 3. The Source Code Provision Is Not An "Extra Element" That Transforms The Nature Of This Action

SFC contends the Source Code Provision of the GPLs (*i.e.*, the provision requiring either disclosure of the source code or a written offer to do so) is the purported "extra element" that makes its state-law claims qualitatively different from a copyright infringement claim, and saves them from preemption.  Dkt. 14 at 10.  Not only is this position inconsistent with its prior admissions, as shown above, but it is wrong as a matter of law.  To survive preemption, "the state claim must have an 'extra element' which changes the nature of the action."  *Atkinson v. Meta Platforms et al.*, 2021 WL 5447022, at *1 (9th Cir. 2021).  The "mere presence of an additional element" does not save a claim from preemption; instead, the "***extra element must transform the nature of the action.***"  *Meribear Prods.*, 2014 WL 12597609, at *8.

SFC contends that "the Source Code Provision provides the extra element necessary for [its] state law claims to avoid copyright infringement" because it "does not give [SFC] the right to demand that Vizio cease copying software covered by the GPL [] onto its smart TVs or cease distributing those smart TVs."  Dkt. 14 at 12.  But SFC lacks that right because it is not the copyright holder of the software at issue.  *See generally*, Dkt. 12 (Mot. To Dismiss) at 14-16.  The copyright holder does have the right to enforce the Source Code Provision of the GPLs in a copyright infringement action, as SFC has previously asserted.  SFC's lack of standing to enforce the GPLs is not an "extra element" for preemption purposes.

In any event, the "mere presence of an additional element" does not save a claim from preemption; instead, the "extra element must transform the nature of the action."  *Laws*, 448 F.3d at 1144.  SFC makes no attempt to explain how the Source Code Provision transforms the underlying nature of this lawsuit away from a

copyright claim.  Nor could it.  As explained above, the GPLs protect the exclusive rights of copying, distribution, and modification of the software, but "*[a]ctivities other than copying, distribution and modification are not covered by this License*; they are outside its scope." Dkt. 1-6 (Compl. Errata) at Ex. A (GPLv2); Ex. B (LGPLv2.1).  Thus, when properly raised by a copyright owner, a claim to enforce the GPLs is identical to a claim for copyright infringement to enforce exclusive rights protected by the Copyright Act.  There is no "extra element."

Judge White of the Northern District of California addressed a similar situation in *Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009) ("*Jacobsen II*").[3]  There, on remand from the Federal Circuit, the court held that the Copyright Act preempted a plaintiff's breach of contract claim based on the alleged violation of a different open source license, the Artistic License.  "The breach of contract claim alleges violations of the exact same exclusive federal rights protected by Section 106 of the Copyright Act, the exclusive right to reproduce, distribute and make derivative copies.  Accordingly, the breach of contract claim is preempted by federal copyright law[.]"  609 F. Supp. 2d at 933.  As such, the court found the "breach of contract claim does not add an 'extra element' which changes the nature of the action or the rights secured under federal copyright protection." *Id.*  The same is true here.  SFC's state-law claims based on the GPLs assert qualitatively equivalent rights over the same exclusive rights protected by federal copyright law.  The Source Code Provision does not transform the nature of the claim into one that is qualitatively different from a copyright claim.  The copyright holder has the exclusive right to control the copying and distribution of its work; thus, it can require the user to comply with the Source Code Provision as a condition to its license to copy or distribute the software.

---

[3]  *Jacobsen II* was decided following remand from the Federal Circuit's decision in *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) (hereafter "*Jacobsen I*").

SFC fails to meaningfully distinguish *Jacobsen II*.  It characterizes the holding of *Jacobsen II* as a "pleading defect," but notably does not contend that its own complaint is free of such defect, or that it could amend its complaint to avoid the defect.  Dkt. 14 (Remand Mot.) at 18.  *Jacobsen II* clearly sets forth the requisite standard of pleading, including, *inter alia*, "demonstrating that there are rights or remedies available under the contract claims that are ***not otherwise available under the copyright claim***."  *Jacobsen II*, 609 F. Supp. 2d at 933-34.  SFC does not and cannot meet this standard.  As shown in §§ II(B)(1)-(2), *supra*, all the rights and remedies SFC is attempting to enforce under the GPLs in its state-law claims are available to the copyright holder.  This is confirmed by SFC's pre-suit communications with VIZIO, its prior *BusyBox* litigation, the express language of the GPLs, and clear guidance from the creator of the GPLs.  There are no rights contemplated in the GPLs that are "not … available under the copyright claim," because any such rights are "not covered by [the GPLs], and outside [their] scope."  Dkt. 1-6 (Compl. Errata) at Ex. A (GPLv2); Ex. B (LGPLv2.1).

SFC's argument that *Jacobsen II* involved a different open-source license is irrelevant.  The Artistic License in *Jacobsen II*, like the GPLs, granted the user the right to copy, modify, and distribute the software on the condition that the user provide certain notices and make any modifications available to the public.  *Jacobsen I*, 535 F.3d at 1380.  Like SFC's claim here, the breach of contract claim in *Jacobsen II* "alleges violations of the exact same [rights as the] exclusive federal rights protected by Section 106 of the Copyright Act, the exclusive right to reproduce, distribute and make derivative copies."  *Jacobsen II*, 609 F. Supp. 2d at 933.  As such, there is no "extra element" and the claim is preempted.

SFC's citations to *Artifex Software v. Hancom, Inc.*, 2017 WL 1477373 (N.D. Cal. 2017), and *Versata Software, Inc. v. Ameriprise Fin. Inc.*, 2014 WL 950065, at *5 (W.D. Tex. 2014), do not support its argument that the Source Code Provision is the "extra element" that saves its claims from preemption.

*First*, the Magistrate Judge in *Artifex* noted that the defendant there "[did] not explain why the GPU GPL's [Source Code Provision] is not the required extra element," and thus failed to meet its burden of proving preemption. *Id.* at *3. In other words, *Artifex* did not make an affirmative finding that the Source Code Provision ***is*** the "extra element," but rather held the defendant did not meet its burden because it failed to explain ***why*** the Source Code Provision is not the "extra element." *Id.* Importantly, the *Artifex* court based its ruling of no preemption on an "extraterritorial infringement" issue that is not present here. *See id.* at *4. The court explained, "both parties agree that this action is premised upon possible extraterritorial infringement to which the Copyright Act would not apply. Because any such extraterritorial infringement would not be subject to the Copyright Act, claims based on this infringement would not be preempted and thus could be maintained under state law instead." *Id.* In contrast, VIZIO has explained why the Source Code Provision is not an "extra element" that transforms the nature of the claim because the GPLs only protect exclusive rights protected by the Copyright Act and there is no extraterritorial infringement issue here. Thus, *Artifex* is readily distinguishable.

*Second*, because *Artifex* did not find the Source Code Provision to be the extra element, it did not address or explain how the GPLs' Source Code Provision would "transform the nature of the action" into a qualitatively different claim, as is required to avoid preemption. Here, "[a]lthough the elements of [SFC's] state law claims may not be identical to the elements in a copyright action, the underlying nature of [SFC's] state law claims is part and parcel of a copyright claim." *Laws*, 448 F.3d at 1143-44. As such, the GPLs' Source Code Provision does not transform the nature of the action into a qualitatively different claim.

*Third*, the parties in *Artifex* apparently did not brief, and the court did not address, the controlling Ninth Circuit authority which holds that the violation of a condition of the license is only actionable under copyright law, not as a breach of

contract.  *See* § II.C. *infra*; *see also MDY Indus.*, 629 F.3d at 939; *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989); *Jacobsen I*, 535 F.3d at 1380. As explained further below, the Source Code Provision is a condition of the GPLs, the violation of which gives rise to a claim for copyright infringement, not breach of contract.  Thus, *Artifex* is readily distinguishable.

Like *Artifex*, *Versata* failed to address the same arguments discussed above, including how the Source Code Provision allegedly transformed the nature of the action from a copyright claim, and whether the Source Code Provision was a condition or covenant of the license under California law.  *Versata Software*, 2014 WL 950065, at *5.  Accordingly, neither *Artifex* nor *Versata* is persuasive or binding authority regarding whether the Source Code Provision constitutes an "extra element" transforming the nature of SFC's claims from copyright claims.

## C.  The Source Code Provision Is A "Condition" To The GPLs, The Violation Of Which Gives Rise To A Claim For Copyright Infringement, Not Breach Of Contract

The Copyright Act preempts SFC's claims because the Source Code Provision is a "condition" of the GPLs, the violation of which gives rise to a claim of copyright infringement, not breach of contract.  "Whether [a case] is a copyright or a contract case turns on whether the [] provisions [of the contract at issue] help define *the scope of the license*."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999); *see also Jacobsen I*, 535 F.3d at 1380.  Terms "that limit a license's scope [are referred to] as 'conditions,' the breach of which constitute copyright infringement," whereas "all other license terms [are referred to] as 'covenants,' the breach of which is actionable only under contract law."  *MDY Indus.*, 629 F.3d at 939.

When deciding whether a license term is a covenant or a condition, courts apply state law.  *See id.*  "Under California law … [a] condition is a qualification to the parties' obligations; if it occurs, the interest is terminated or enlarged."  *Grumpy*

*Cat Ltd. v. Grenade Beverage LLC*, 2018 WL 2448126, at *5 (C.D. Cal. 2018). Thus, if a "condition" to a copyright license is not met, the scope of the license is exceeded, and the licensee's rights to use the copyrighted materials are "terminated." *Grumpy Cat*, 2018 WL 2448126, at *5. In other words, violation of a "condition" to a copyright license would terminate the license, and the copyright owner may sue for infringement. *See Jacobsen*, 535 F.3d at 1380. In contrast, if the terms of the license violated are "merely covenants," the license remains intact and the violation is actionable for damages under contract law. *See Jacobsen*, 535 F.3d at 1380.

Here, there is no dispute that the Source Code Provision of the GPLs is a "condition" to the license. Thus, SFC's state-law claims are preempted by the Copyright Act under this analysis as well. *See MDY Indus.*, 629 F.3d at 957 (whether provisions are preempted by the Copyright Act depends on whether they are "contract-enforceable covenants" or "copyright-enforceable conditions").

### 1.   The Plain Language of the GPLs Confirms the Source Code Provision is a Condition

In *Jacobsen I*, the Federal Circuit, applying the regional law of the Ninth Circuit, addressed whether the terms of another open-source license, the Artistic License, "are conditions of, or merely covenants to, the copyright license." *Id.* The Artistic License included restrictions on the users' ability "to copy, modify, and distribute the software: provided that . . . [the user] a) place [the user's] modifications in the Public Domain or otherwise make them Freely Available . . . ." *Id.* The court noted that the "Artistic License states on its face that the document creates conditions" and "also uses the traditional language of conditions by noting that the rights to copy, modify, and distribute are granted '*provided that*' the conditions are met." *Id.* at 1381.

Similar to the open-source license in *Jacobsen I*, the GPL "states on its face that the document creates conditions" in the Source Code Provision. *Jacobsen I*,

535 F.3d at 1381.  For example, the Source Code Provision is found under a section titled "TERMS AND CONDITIONS" and states that the "precise terms and conditions for copying, distribution and modification" are found therein.  *See* Dkt. 1-6 at Exs. A (GPLv2) and B (LGPLv2.1).

In addition, like the license in *Jacobsen I*, the Source Code Provision of the GPLs also uses the phrase "***provided that***" to set forth its key requirements, namely, that the distribution of any derivative work be accompanied by a "complete corresponding machine-readable source code" or "a written offer" of the same.  *Id.* at Ex. A (GPLv2), Ex. B (LGPLv2.1), Dkt. 1-2 at ¶ 94.  "Under California law, 'provided that' typically denotes a condition."  *Jacobsen I*, 535 F.3d at 1381; *see also Integral Dev. Corp. v. Tolat*, 2016 WL 8929073, at *5 (N.D. Cal. 2016).  Based on the language of the GPLs, the Source Code Provision is a "copyright-enforceable condition," not a "contract-enforceable covenant."  *See MDY Indus.*, 629 F.3d at 957; *Jacobsen I*, 535 F.3d at 1380.

Because the Source Code Provision is a condition to the GPLs, any alleged violation of it is only actionable under copyright law, not contract law.  *MDY Indus.*, 629 F.3d at 939; *Jacobsen I*, 535 F.3d at 1380.  In other words, a licensee can copy, modify and distribute the software covered by the GPLs only if it complies with the conditions listed in the Source Code Provision.  If the licensee fails to comply with those conditions, it is acting outside the scope of the license and liable for copyright infringement by the copyright holder.

## 2. SFC's Criticism Of The Condition-vs-Covenant Analysis Is Inconsistent With Its Prior Judicial Admissions

SFC argues that the condition-vs-covenant analysis is a red herring, accusing VIZIO of treating it as "an either-or-proposition."  Dkt. 14 (Remand Mot.) at 19-20.  According to SFC, VIZIO's analysis is supported by "[n]one of the extensive Ninth Circuit case law developing this principle" on the issue of copyright preemption.  SFC apparently overlooks the authority it repeatedly relies on in its own motion,

including the Ninth Circuit's decision in *MDY Indus, v. Blizzard*, which specifically states "[w]e refer to contractual terms that limit a license's scope as 'conditions,' the breach of which constitute copyright infringement.  We refer to all other license terms as 'covenants,' the breach of which is actionable only under contract law." *See* 629 F.3d at 939 (citations omitted).

Moreover, SFC's prior admissions confirm that an alleged violation of the Source Code Provision gives rise to copyright infringement claims only, not breach of contract claims—the exact "either-or-proposition" it now criticizes.  Specifically, in its *BusyBox* Complaint, SFC admitted that the Source Code Provision is a condition to the GPLs.  *See, e.g.*, Williams Decl., Ex. 9 (*BusyBox* Compl.) at ¶¶ 23 ("[the copyright holder] grants certain permissions to other parties to copy, modify and redistribute BusyBox so long as those parties satisfy certain ***conditions***"), 24 ("[t]he License permits a Licensee to distribute BusyBox … on the ***condition*** that the Licensee gives recipient access to the source code").

SFC further contended in the *BusyBox* Complaint and its pre-suit communications with VIZIO that a violation of the Source Code Provision terminates a licensee's permission to copy the work.  *See, e.g.*, *id.* at ¶¶ 24-25 ("If a distributor fails to [comply with the Source Code Provision], they are not fulfilling the terms of the license and, thus, that distribution is not made with [the copyright holder's] permission.").  As a result, the GPLs are terminated and no longer exist. *See id.* at ¶ 28 ("once each Defendant made a distribution that did not comply with the License, that Defendant lost any and all right to copy, modify, or distribute BusyBox.").  Once the Source Code Provision is violated, the license is terminated and the only viable claim is one for copyright infringement.  *See* Williams Decl., Ex. 2 (SFC Letter) ("the violation by Vizio instantly terminated all rights to Linux that Vizio may have had under the GPL. . . Any copying, modification, or distribution of Linux after the initial violation … may constitute willful copyright infringement.").

SFC's argument that the "covenant vs. condition" is not applicable to the

analysis here is contrary to controlling Ninth Circuit authority and SFC's prior judicial admissions. As such, SFC's argument should be rejected.

### 3. SFC's Argument That Breach Of Contract Claims Are "Almost Never Preempted" Is Misplaced

SFC further contends that breach of contract claims are "almost never preempted by the Copyright Act." Dkt. 14 (Remand Mot.) at 11. This argument is based on the faulty assumption that SFC *has* a breach of contract claim to begin with. As explained in §§ II(C)(1)-(2), *supra*, an alleged violation of the Source Code Provision of the GPLs terminates the license and gives rise to a claim for copyright infringement, not breach of contract.

Moreover, SFC's cited authorities do not support this sweeping contention. The cases SFC cited involve violations of "covenants," or promises related to the *use* of a copyrighted work, rather than a "condition" of the license, as is the case here. For example, in *MDY Indus.*, the Ninth Circuit found that the Terms of Use that were allegedly violated—"prohibitions against a user's *use* of bots and unauthorized third-party software are covenants rather than copyright-enforceable conditions." 629 F.3d at 940. Similarly, *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005), involved an agreement granting "sole *use*" or "*private use*" rights, not any of the exclusive rights under the Copyright Act, such as copying, distribution or modification. The Ninth Circuit explained that the "right at issue is *not the reproduction* of the software … *but* is more appropriately characterized as *the use of the bitstream*." *Altera*, 424 F.3d at 1089 (citing cases "distinguish[ing] between use and reproduction").[4]

---

[4] SFC's other cited authorities also involved covenants or limitations on the use of the copyrighted work, not a condition of a copyright license involving exclusive rights under the Copyright Act. *See Chesler/Perlmutter*, 177 F. Supp. 2d at 1058-59 (involving contract to "*use* the *Gitana* concept" and "*hire* Plaintiff's writer"); *Nw. Home Designing Inc. v. Sound Built Homes Inc.*, 776 F. Supp. 2d 1210, 1213 (W.D.

*(Footnote continued)*

1   Mere "use" is not an exclusive right protected by the Copyright Act.  As the

2   Ninth Circuit held in *Altera*, a "state law tort claim concerning the unauthorized use

3   of the software's end-product is not within the rights protected by the federal

4   Copyright Act."  *Id.* at 1090.  In contrast, the GPLs only cover the exclusive rights

5   protected under the Copyright Act; specifically, the right to copy, distribute, and

6   modify the software.  *See* §§ II(B)(2)-(3), *supra*.  As such, SFC's assertion that

7   "breach of contract claims are almost never preempted" is inapt, where, as here, the

8   alleged breach is a condition of the license.

9       **D.**   **Congressional Intent And Public Policy Regarding Freedom of**

10              **Contract Are Irrelevant Because Contract Law Does Not Apply**

11  In a final effort to avoid preemption, SFC argues that the legislative history of

12  the Copyright Act reflects an aversion to intrude into private parties' freedom of

13  contract, citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir 1996)  Dkt. 14

14  (Remand Mot.) at 15-17.  SFC's argument is backwards and belied by 17 U.S.C.

15  § 301.  The Copyright Act reflects an aversion to state laws that intrude into the

16  exclusive rights protected by the Copyright Act.  17 U.S.C. § 301 (preempting "all

17  legal or equitable rights that are equivalent to any of the exclusive rights within the

18  general scope of copyright".)  SFC's argument is also based on the faulty

19  assumption that alleged violations of the Source Code Provision—a condition to the

20  GPLs—are governed by contract law.  As stated in §§ II(B)-(C), *supra*, the GPLs

21  are copyright licenses which cover **only** the copyright holder's exclusive rights to

22  control the copying, distribution, and modification under the Copyright Act.  *See*

23  *MDY Indus.*, 629 F.3d at 939; Dkt. 1-6 (Compl. Errata) at Ex. A.  SFC's argument

24  _____

25  Wash. 2011) (involving contract that governs "**the right to use**"); *Rumble, Inc. v. Daily Mail*, 459 F. Supp. 3d 1294, 1298 (C.D. Cal. 2020) (involving a "settlement

26  agreement" containing a **promise** not to violate the Copyright Act); *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1104 (E.D. Cal.

27  2006) (involving an "End User License Agreement" restricting "the **use** of Prolog").

28

that the GPLs "do not create 'exclusive rights'" misses the mark.  It is the Copyright Act which creates these exclusive rights, which the GPLs protect.

SFC also touts an analogy involving a customer who rents a movie from a video store, but refuses to return it on the basis that any breach of contract claim is preempted by the Copyright Act.  Dkt. 14 (Remand Mot.) at 17.  SFC's analogy is inapposite.  The hypothetical rental agreement does not involve exclusive rights under the Copyright Act at all, unlike copyright licenses such as the GPLs.  Whether a contract relates to the subject matter of copyright is only the first prong of the preemption analysis; the second prong is whether the contract seeks to enforce rights equivalent to the exclusive rights under the Copyright Act.  The rights of the video store owner to a return of its property or payment for its use, which is protected by the rental agreement, are "qualitatively different" from the exclusive rights under the Copyright Act.  As explained above in §II(C)(3), unlike the exclusive rights protected by the GPLs, the "unauthorized use" of a copyrighted work "is not within the rights protected by the federal Copyright Act."  *Altera*, 424 F.3d at 1090.[5]

## CONCLUSION

The Court should deny SFC's Motion to Remand.

DATED:  April 22, 2022                    Respectfully submitted,

                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP

                                          By      */s/ Michael E. Williams*
                                                  Michael E. Williams
                                                  Attorneys for Defendant
                                                  VIZIO, Inc.

---

[5]   If the hypothetical rental agreement provided that the user may not copy or distribute the video—exclusive rights that are protected by the Copyright Act—the copyright holder may have a claim for copyright infringement against the user for the unauthorized copying and distribution of the work, and any state-law claim based thereon would be preempted.