Richard G. Sanders, Esq. (SBN: 209617)
**RICHARD G. SANDERS, PLLC**
rick@rickanderslaw.com
605 Berry Road, Suite A
Nashville, TN 37204-2801
(615) 734-1188 | Fax: (615) 250-9807

— *and* —

Sa'id Vakili, Esq. (SBN: 176322)
vakili@vakili.com
John A. Schlaff, Esq. (SBN: 135748)
john.schlaff@gmail.com
David N. Schultz, Esq. (SBN: 123094)
Schu1984@yahoo.com
Stephen P. Hoffman, Esq. (SBN: 287075)
hoffman@vakili.com
**VAKILI & LEUS, LLP**
3701 Wilshire Blvd., Suite 1135
Los Angeles, CA 90010-2822

(213) 380-6010 | Fax: (213) 380-6051

*Attorneys for Plaintiff Software Freedom Conservancy, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTWARE FREEDOM CONSERVANCY, INC., a New York non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> VIZIO, INC., a California corporation; and DOES 1 to 50, inclusive, <br><br> Defendants. | Case No.: 8:21-cv-01943-JLS-KES <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT OF DEFENDANT VIZIO, INC.** <br><br> Date: June 3, 2022 <br> Time: 10:30 a.m. <br> Place: Courtroom 8A, First Street U.S. Courthouse <br> Judge: Hon. Josephine L. Staton |

1

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 2

II.  RELEVANT FACTUAL BACKGROUND ................................................ 4

    *A.  The GPL Agreements and the Source Code Provision at Issue....................... 4*

    *B.  Vizio's Breach of the GPL Agreements ........................................... 5*

    *C.  SFC's Lawsuit Against Vizio .................................................... 6*

III.  RELEVANT PROCEDURAL BACKGROUND .......................................... 7

IV.  THE LEGAL STANDARD APPLICABLE TO VIZIO'S MOTION .................... 7

V.  THIS COURT SHOULD DENY VIZIO'S MOTION BECAUSE VIZIO'S OBLIGATION TO PRODUCE SOURCE CODE UNDER THE GPL AGREEMENTS IS AN "EXTRA ELEMENT" THAT MAKES SFC'S STATE LAW BREACH OF CONTRACT CLAIMS QUALTATIVELY DIFFERENT THAN A COPYRIGHT CLAIM ........................................................ 8

    *A.  The Legal Standard Applicable To Copyright Preemption. ......................... 8*

    *B.  Vizio's Novel Test for Copyright Preemption is Unsupported by Legal Authority or Reasoning................................................... 10*

    *C.  Vizio's Novel Test for Copyright Preemption Would Undermine the Freedom to Contract and Lead to Absurd Results...................................... 16*

    *D.  The Copyright Act Does Not Preempt SFC's State Law Claims Because the Obligation to Produce Source Code is Purely Contractual and is Not Equivalent to Any of the Exclusive Rights Under the Copyright Act .......... 18*

    *E.  Two Separate Courts Already Have Held that Claims Based on the Obligation to Produce Source Code Under the Source Code Provision Are Not Preempted by the Copyright Act ......................................... 20*

    *F.  Jacobsen is Distinguishable and Does Not Support Vizio's Attempt to Dismiss this Action ....................................................... 24*

VI.  CONCLUSION ......................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Acorn Structures, Inc. v. Swantz*
  846 F.2d 923 (4th Cir. 1988)................................................................18

*Altera Corp. v. Clear Logic, Inc.*
  424 F.3d 1079 (9th Cir. 2005).......................................................3, 9, 18

*Applied Bus. Software, Inc. v. Citadel Servicing Corp.*
  2017 U.S. Dist. LEXIS 222728 (C.D. Cal. Nov. 21, 2017)......................12

*Applied Bus. Software, Inc. v. Citadel Servicing Corp.*
  2019 U.S. Dist. LEXIS 76331 (C.D. Cal. Mar. 26, 2019) .......................17

*Artifex Software v. Hancom, Inc.*
  2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017) .............................*passim*

*Ass'n of Am. Publrs., Inc. v. Frosh*
  2022 U.S. Dist. LEXIS 27892 (D. Md. Feb. 16, 2022) ............................20

*Benavidez v. City of San Diego*
  993 F.3d 1134 (9th Cir. 2021)..............................................................7

*Bowers v. Baystate Techs Inc.*
  320 F.3d 1317 (Fed. Cir. 2003)............................................................18

*CDK Global LLC v. Brnovich*
  16 F.4th 1266 (9th Cir. 2021) ..............................................................20

*Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.*
  177 F. Supp. 2d 1050 (C.D. Cal. 2001) ......................................... 18, 23

*Cook v. Brewer*
  637 F.3d 1002 (9th Cir. 2011)..............................................................7

*Crispin v. Christian Audigier, Inc.*
  2010 WL 11508342 (C.D. Cal. June 21, 2010) .......................................15

*eBay Inc v. Mercexchange, LLC*
    547 U.S. 388 (2006) ...............................................................................14

*Effects Assocs. v. Cohen, 817 F.2d 72, 73 (9th Cir. 1987)*
    908 F.2d 555 (9th Cir. 1990)........................................... …..11

*Fleet v. CBS*
    50 Cal.App.4th 1911 (1996) ............................................... 9, 20

*Flexible Lifeline Sys. v. Precision Lift, Inc.*
    654 F.3d 989 (9th Cir. 2011)....................................................14

*Fox Broadcasting Co. v. Dish Network LLC*
    160 F. Supp. 3d 1139 (C.D. Cal. 2015) ................................ 15

*GlobeRanger Corp. v. Software AG US of America, Inc.*
    836 F.3d 477 (5th Cir. 2016)....................................................24

*Grumpy Cat Ltd. v. Grenade Bev. LLC*
    2018 U.S. Dist. LEXIS 226982 (C.D. Cal. Aug. 21, 2018)....................14

Idema v. Dreamworks, Inc.
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...............................18

*In re Marriage of McDonnal*
    652 P.2d 1247 (Or. 1982)........................................................16

*Jacobsen v. Katzer*
    535 F.3d 1373 (Fed. Cir. 2008)......................................*passim*

*Jacobsen v. Kurtzer*
    609 F. Supp. 2d 925 (N.D. Cal. 2009) ................................. 10

*JZK, Inc. v. Weaver*
    2006 U.S. Dist. LEXIS 75523 (W.D. Wash. Oct. 17, 2006) ...................19

*Laws v. Sony Music Entm't, Inc.*
    448 F.3d 1134 (9th Cir. 2007)...................................................9

*Leopona, Inc. v. Cruz for President*
    (W.D. Wash. July 11, 2016)................................................................16

*LGS Architects, Inc. v. Concordia Homes*
    434 F.3d 1150 (9th Cir. 2006).........................................................12

*MDY Indus., LLC v. Blizzard Entm't, Inc.*
    629 F.3d 928 (9th Cir. 2010).............................................. 12, 13, 18

*Meridian Project Sys. v. Hardin Constr. Co.*
    426 F. Supp. 2d 1101 (E.D. Cal. 2006).........................................19

*Microsoft Corp. v. Very Competitive Computer Prod. Corp.*
    671 F. Supp. 1250 (N.D. Cal. 1987) ...............................................13

*Montz v. Pilgrim Films & Television, Inc.*
    649 F.3d 975 (9th Cir. 2011)..............................................................9

*Moses v. Fedida*
    2018 U.S. Dist. LEXIS 222855 (C.D. Cal. Dec. 12, 2018) ...................11

*Nat'l Car Rental Sys., Inc. v. Comput. Assoc. Int'l, Inc.*
    991 F.2d 426 (8th Cir. 1993)..........................................................18

*Northwest Home Designing, Inc. v. Sound Built Homes, Inc.*
    776 F. Supp. 2d 1210 (W.D. Wash. 2011).....................................18

*Oracle USA, Inc. v. Qtrax, Inc.*
    2011 U.S. Dist. LEXIS 118430 (N.D. Cal. Sep. 27, 2011)                15

*Pac. Stock, Inc. v. Pearson Educ., Inc.*
    927 F. Supp. 2d 991 (D. Haw. 2013) ...........................................12

*ProCD, Inc. v. Zeidenberg*
    86 F.3d 1447 (7th Cir. 1996)...................................................... 17, 18

*Retail Property Trust v. United Brotherhood of Carpenters & Joiners of America*
    768 F.3d 938 (9th Cir. 2014)...........................................................7

*Royal Printex, Inc. v. LA Printex Industries*
     2015 U.S. Dist. LEXIS 97072 (C.D. Cal. July 24, 2015) .........................................15

*Rumble, Inc. v. Daily Mail*
459 F. Supp. 3d 1294 (C.D. Cal. 2020) ................................................... 18, 24

*Ryan v. Editions Ltd. W.*
     786 F.3d 754 (9th Cir. 2015)...........................................................................9

*Ryoo Dental, Inc. v. Han*
     2015 U.S. Dist. LEXIS 90085 (C.D. Cal. July 9, 2015) ..............................24

*Stengel v. Medtronic Inc.*
     704 F.3d 1224 (9th Cir. 2013)........................................................................9

*Sun Microsystems, Inc. v. Microsoft Corp.*
     188 F.3d 1115 (9th Cir. 1999)......................................................................12

*Taquino v. Teledyne Monarch Rubber*
     893 F.2d 1488 (5th Cir. 1990)......................................................................18

*Valve Corp. v. Sierra Entm't, Inc.*
     431 F. Supp. 2d 1091 (W.D. Wash. 2004).....................................................12

*Versata Software, Inc. v. Ameriprise Fin., Inc.*
     2014 U.S. Dist. LEXIS 30934 (W.D. Tex. Mar. 11, 2014) .................................5, 21

*Viasat, Inc. v. Space Sys./Loral, Inc.*
     2014 WL 11889010 (S.D. Cal. Aug. 8, 2014) ..........................................13

**Statutes**

17 U.S.C. § 106.......................................................................................... 9, 22

17 U.S.C. § 301(a) ...........................................................................................9

Fed. R. Civ. P. 12(b)(6) ....................................................................................7

**Treatises**

1 Melville & David Nimmer, Nimmer on Copyright § 1.14[A] (2021)...........................8

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Vizio, Inc. ("Vizio") has filed a baseless motion to dismiss the Complaint of Plaintiff Software Freedom Conservancy, Inc. ("SFC" or "Conservancy") that misstates the test for copyright preemption, relies upon a theory that has no support in law or logic, and is contrary to controlling Ninth Circuit authority.  This Court should reject Vizio's mistaken notion that it cannot simultaneously be liable for breach of contract and copyright infringement and deny Vizio's motion to dismiss (the "Motion").

SFC chose to file a straightforward state court action against Vizio on October 19, 2021, alleging causes of action under state law for breach of contract and declaratory relief.  SFC's Complaint alleges that Vizio breached a contractual duty it undertook when it accepted the terms of two software license agreements (the "GPL Agreements"). As the Complaint alleges, Vizio used software governed by the GPL Agreements in the operating systems of the "smart TVs" it manufactures, without complying with its obligation under those agreements to disclose the source code of its operating system to recipients of the software.

In response, Vizio removed SFC's state court action to this Court[1] and then filed this Motion, asserting that SFC's state law claims are preempted by the Copyright Act. Vizio contends that all it is really liable for is copyright infringement, that one cannot simultaneously be liable for both copyright infringement and breach of contract, and that the copyright claim must take precedence—a convenient position for Vizio because SFC is suing as a third-party beneficiary of the GPL Agreements and is not asserting any copyright claims against Vizio in its Complaint.

This Court should reject Vizio's contention and deny the Motion because there is no basis, in law or logic, for Vizio's contention. Vizio asks this Court to apply a novel

---

[1] In response to Vizio's Notice of Removal, SFC filed a Motion for Remand (Doc. No. 14).  In a Scheduling Notice dated March 14, 2022 (Doc. No. 23), this Court advanced the hearing on SFC's Motion to Remand from June 3, 2022 to May 13, 2022. If this Court grants SFC's Motion to Remand, it need not consider Vizio's Motion.

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

theory of preemption that simply does not exist, and for which Vizio cites no authority. Moreover, Vizio's novel copyright preemption test would undermine the freedom to contract and lead to absurd results.

By contrast, application of the universally accepted test for copyright preemption, known as the "extra element" test, as well as long settled copyright and contract precedent, establishes that courts entertain simultaneous copyright and contract claims all the time. Ninth Circuit case law is clear that where state law claims include an "extra element" that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claims are not preempted by the Copyright Act. Indeed, the Ninth Circuit has noted that courts applying the "extra element" test generally have held that the Copyright Act does not preempt the enforcement of contractual rights.

Here, application of the "extra element" test to SFC's claims in this action establishes that these claims are not preempted by the Copyright Act. First, Vizio's obligation to produce source code under the GPL Agreements is purely contractual and is not equivalent to any of the exclusive rights enumerated in Section 106 of the Copyright Act. The Ninth Circuit has made it clear that "[m]ost courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights" because it is the sort of state law claim that "includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act." *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1089 (9th Cir. 2005) (emphasis in original). Second, courts routinely have held that the mutual exchange of contractual promises, such as Vizio's promise to make its source code freely available in exchange for being able to use the software covered by the GPL Agreements, constitutes an "extra element" sufficient to avoid preemption of a breach of contract claim by the Copyright Act. Third, two separate district courts have held that state law claims to enforce the obligation to make source code covered by the GPL Agreements freely available—the very provision at issue in this action—are not preempted by the Copyright Act.

3

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

Accordingly, as explained below, SFC's state law contract claims do not seek to enforce any rights equivalent to any exclusive right provided by copyright law and the state law claims contain an "extra element" that is qualitatively different. Therefore, SFC's state law claims are not preempted. Because Vizio's Motion is based entirely on its mistaken notion of copyright preemption, this Court should deny the Motion.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     The GPL Agreements and the Source Code Provision at Issue

The contracts at issue in this action are two of the most vital and ubiquitous software license agreements in existence: the GNU General Public License version 2 ("GPLv2") and its close cousin, the GNU Lesser General Public License version 2.1 ("LGPLv2.1"). (Complaint, Doc. No. 1-2 ("Cmplt.") ¶ 1.) These two contracts, referred to collectively as the "GPL Agreements," are attached to the Complaint as Exhibits A and B, respectively. (*See* Notice of Errata, Doc. No. 1-6 ("Errata"), Exhibits A, B.)

The GPL Agreements play a central role in the development of "free and open source software" ("FOSS"). (Cmplt. ¶ 17.) As Vizio explains, "Open Source software [i.e., FOSS] projects invite computer programmers from around the world to view software code and make changes and improvements to it." (Vizio's Memorandum of Points and Authorities in support of the Motion (Doc. No. 12) ("Memo") at 3:15-17, *quoting Jacobsen v. Katzer*, 535 F.3d 1373, 1378 (Fed. Cir. 2008).) Many of the most popular software programs are FOSS, including those at issue in this case. (Cmplt. ¶¶ 37-38.) For example, the Linux kernel, one of the most popular computer operating systems, is FOSS. (*Id.* ¶¶ 41-43.) FOSS projects are successful because many software developers may work on them, adding new features, tweaking old features, fixing bugs, and these new versions are always available to other developers to learn from, tweak and improve. (*Id.* ¶¶ 1, 3, 20, 22, 44-45.)

Before there can be any collaborative development of FOSS projects, the source code for these projects must be readily and easily available. Source code (as opposed to object or executable code) can be understood and edited by those familiar with the

4

relevant programming language. The GPL Agreements make FOSS possible by requiring that those who distribute software in an executable form—i.e., in a form that may be read (and executed) by computers—also make the software available as "source code," i.e., in a form that may be read and understood by those who are familiar with the relevant programming language, thus allowing them to further develop the software. (Cmplt. ¶¶ 20-23.) As one court has described it, "[T]he GPL allows for free use and redistribution of [the software], including in other software (i.e., the creation of a derivative work), on the condition the original licensor continues the open source trend and makes the source code freely available." *Versata Software, Inc. v. Ameriprise Fin., Inc.,* 2014 U.S. Dist. LEXIS 30934, at *4 (W.D. Tex. Mar. 11, 2014); *see also Artifex Software v. Hancom, Inc.,* 2017 U.S. Dist. LEXIS 62815, at *4 (N.D. Cal. Apr. 25, 2017) ("[T]he GNU GPL required Defendant to distribute its software with the accompanying source code.").

In order to make FOSS possible and ensure that the applicable software may be reviewed and edited by others, the GPLv2 provides, in pertinent part:

> You may copy and distribute the Program (or a work based on it…) in object code or executable form under the terms [above] provided that you also do one of the following:
>
> (a)   Accompany it with the complete corresponding machine-readable source code…; or,
>
> (b)   Accompany it with a written offer … to give any third party … a complete machine-readable copy of the corresponding source code….

(*See* Errata, Exhibit A, § 3; *see also* Cmplt. ¶ 28.) The LGPLv2.1 has equivalent language. (*See* Errata, Exhibit B, § 4.) This provision is referred to both here and in the Complaint as the "Source Code Provision."

### B.   *Vizio's Breach of the GPL Agreements*

Vizio manufactures and sells "smart TVs," i.e*.,* televisions with computers built in. (Cmplt. ¶ 32.) Smart TVs, like any computer, require an operating system, supporting

5

applications and user-facing applications to carry out their consumer-friendly features, such as playing content from YouTube or Netflix. (*Id*. ¶¶ 33-35.) In its Complaint, SFC alleges that at least 25 programs found on three smart TVs manufactured by Vizio, including the operating system, are covered by one of the GPL Agreements. (*Id*. ¶¶ 37-38.) Vizio thus distributes programs covered by the GPL Agreements in an executable form. (*Id*. ¶¶ 48-49.)

As the Complaint further alleges, however, Vizio neither makes the source code for these programs available to purchasers of its smart TVs nor provides such purchasers with a written offer to obtain the source code. Vizio's conduct thus breaches the Source Code Provision of the GPL Agreements. (*Id.* ¶¶ 28-29, 50-51.) As the GPL Agreements emphasize in their Preambles: "Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software…, that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs…" (Errata, Exhibits A & B.) In return, "if you distribute copies of such a program … you must give the recipients all the rights you have. You must make sure they, too, receive or can get the source code." (*Id*.)

### C.   *SFC's Lawsuit Against Vizio*

SFC is a not-for-profit corporation whose mission includes promoting and improving projects that use FOSS and vindicating the rights of those who receive and use such software. SFC is also a purchaser of Vizio smart TVs. SFC is suing Vizio not as a copyright holder, but as a third-party beneficiary of the GPL Agreements. (Cmplt. ¶¶ 8, 120.) SFC seeks to enforce its right to have access to the source code corresponding to the executable code found on Vizio's devices covered by the GPL Agreements. (*Id*. ¶ 121.)

SFC does not seek money damages in this action. (*See* Cmplt., Prayer for Relief, at 24-26.) Instead, the only relief SFC seeks as part of its breach of contract claim is that Vizio specifically perform under the GPL Agreements by delivering up the complete source code corresponding to the executable code identified in the Complaint. (*See id*.)

Moreover, SFC's declaratory relief claim seeks only an equivalent declaration of the parties' rights with respect to such source code. (*See id.*)

## III. RELEVANT PROCEDURAL BACKGROUND

As part of its mission to ensure compliance with the GPL Agreements and to promote FOSS projects, SFC filed this lawsuit on October 19, 2021, in the Superior Court of the State of California for the County of Orange. (Cmplt., p. 1.) On November 29, 2021, Vizio filed its Notice of Removal, removing SFC's state court action to this Court. (Doc. No. 1). Thereafter, on December 6, 2021, Vizio filed this Motion.

On December 27, 2021, SFC filed a Motion to Remand this action to state court, which is now set for hearing on May 13, 2022. If SFC's Motion to Remand is not granted, then this Motion is scheduled to be heard on June 3, 2022.

## IV. THE LEGAL STANDARD APPLICABLE TO VIZIO'S MOTION

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Benavidez v. City of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021); *Retail Property Trust v. United Brotherhood of Carpenters & Joiners of America*, 768 F.3d 938, 945 (9th Cir. 2014).

In its Motion, Vizio does not contend that SFC's claims for breach of contract and declaratory relief are defective in some way. Instead, Vizio's entire contention is that Vizio's alleged conduct "gives rise to a claim for copyright infringement, not breach of contract." (Memo at 2:6-7.) According to Vizio, SFC *should* have pled a copyright claim and this unpled copyright claim entirely preempts the state law claims actually pled by SFC in its Complaint. These claims thus "must be dismissed." (*Id.* at 2:7-15.)

As explained below, Vizio's contention is based on a theory of copyright preemption that does not exist and relies on a creative misreading of legal authorities

that only rarely touch on the issue of preemption.  Proper application of the correct test for copyright preemption establishes that SFC's state law claims are not preempted, because they assert rights that are qualitatively different from, and not equivalent to, the exclusive rights protected by copyright law.  SFC's breach of contract and declaratory relief claims seek to obtain Vizio's source code.  Vizio cannot dispute that there is no exclusive right to source code under copyright law. Although Vizio's failure to provide source code (or a written offer therefor) also makes it a copyright infringer, this is no barrier to SFC's claims.  SFC is the master of its Complaint; it had the right to choose to bring claims under state contract law, rather than copyright law, to vindicate contractual rights under the GPL Agreements that have no equivalent in copyright law. Because it is undisputed that those state law claims have been properly pled, and because Vizio's contention that these state law claims are preempted by the Copyright Act lacks merit and is contrary to controlling Ninth Circuit authority, this Court should deny the Motion.

## V.   THIS COURT SHOULD DENY VIZIO'S MOTION BECAUSE VIZIO'S OBLIGATION TO PRODUCE SOURCE CODE UNDER THE GPL AGREEMENTS IS AN "EXTRA ELEMENT" THAT MAKES SFC'S STATE LAW BREACH OF CONTRACT CLAIMS QUALTATIVELY DIFFERENT THAN A COPYRIGHT CLAIM

### A.   The Legal Standard Applicable to Copyright Preemption.

Copyright preemption is governed by Section 301(a) of the Copyright Act. 1 Melville & David Nimmer, *Nimmer on Copyright* § 1.14[A] (2021). Section 301(a) provides, in pertinent part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in the works of authorship … and come within the subject matter of copyright as specified by sections 102 and 103 … are governed exclusively by this title.

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

17 U.S.C. § 301(a). The Copyright Act is very precise about the scope of the exclusive rights under "section 106" of the Act. Section 106 enumerates only five such rights for this type of work: the right to reproduce a work, to make derivative works based on the work, to distribute copies (i.e., physical embodiments) of the work, to publicly perform the work, and to publicly display the work (hereinafter, referred to collectively as the "Exclusive Rights"). *See* 17 U.S.C. § 106.

The Ninth Circuit has established a two-part test, in accordance with Section 301 of the Copyright Act, "to determine whether a state law claim is preempted by the Act." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2007). First, a court must decide whether the rights asserted "fall[] within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id*. Second, assuming it does, the court must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id*. at 1138.

Thus, to establish copyright preemption, Vizio must show, among other things, that the state law claim "grants rights equivalent to any of the exclusive rights within the scope of copyright." *Ryan v. Editions Ltd. W*., 786 F.3d 754, 760 (9th Cir. 2015). A state law right is equivalent to an Exclusive Right only if it is violated "by the mere act of reproducing, performing, distributing or displaying the work at issue." *Fleet v. CBS*, 50 Cal.App.4th 1911, 1924 (1996). "A state cause of action is 'qualitatively different' when it contains an additional element not required for a copyright claim." *Ryan,* 786 F.3d at 760; *see also Montz v. Pilgrim Films & Television, Inc.,* 649 F.3d 975, 980 (9th Cir. 2011); *Altera Corp.,* 424 F.3d at 1089. Thus, a state-law claim is not preempted if it has "an extra element which changes the nature of the action." *Laws,* 448 F.3d at 1143.

Because copyright preemption is an affirmative defense, Vizio bears the burden of proof with respect to the Ninth Circuit's test. *Artifex Software, Inc. v. Hancom, Inc.*, 2017 U.S. Dist. LEXIS 62815, at *11 (N.D. Cal. Apr. 25, 2017), *citing Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (*en banc*). Here, because the

9

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

software covered by the GPL Agreements comes under the subject matter of copyright, the first prong of the Ninth Circuit's copyright preemption test is not at issue.  Rather, whether this Court should grant the Motion depends on the application of the second prong—the "extra element" test.  As explained below, although Vizio pays lip service to the "extra element" test, it actually asks the Court to apply a different, novel test which is unsupported by legal authority or reasoning.  Under a proper application of the "extra element" test, SFC's state law claims based on Vizio's violation of the Source Code Provision contain an "extra element" not required for a copyright claim—the obligation to provide source code. Therefore, SFC's state law claims are not preempted by the Copyright Act, and Vizio's Motion fails.

### B.    Vizio's Novel Test For Copyright Preemption Is Unsupported By Legal Authority Or Reasoning

Although Vizio mentions the "extra element" test in its moving papers (*see, e.g.,* Memo at 8:9-10), Vizio asks this Court to apply a different, novel test to determine whether SFC's state law claims are preempted by the Copyright Act.  Vizio asserts that where a copyright licensee's breach of contract also violates a condition to the license, then copyright infringement is the sole and exclusive cause of action for that breach. (Memo at 9-10.) Vizio reasons that by violating a condition to the license, the licensee has made itself a copyright infringer; therefore, it may only be sued for copyright infringement. Implicit in this reasoning is Vizio's assumption, unsupported anywhere, that one may not both infringe copyright and breach a contract through the same act.

Vizio cites to no legal authority for its novel proposition that claims for breach of contract are preempted whenever the breach also constitutes a violation of a condition to a copyright license. Even in *Jacobsen v. Katzer*, 535 F.3d 1375 (Fed. Cir. 2008) ("*Jacobsen I*"), the sole case Vizio cites for this proposition (*see* Memo at 11:14-16), the trial court, on remand, applied the "extra element test" unadorned with reliance on conditions to copyright licenses. *See Jacobsen v. Kurtzer,* 609 F. Supp. 2d 925, 933

(N.D. Cal. 2009) ("*Jacobsen II*").  Contrary to Vizio's unsupported assertion, Ninth Circuit case law specifically demonstrates that copyright infringement claims and breach of contract claims can and do coexist, even where they both depend on the breach of the same term. As one court has observed, while the "requirements for proving liability are different, … there is no per se bar to advancing both the contract and copyright claims simultaneously." *Moses v. Fedida*, 2018 U.S. Dist. LEXIS 222855, at *16 n.4 (C.D. Cal. Dec. 12, 2018).

As a general principle, nothing prevents claims for copyright infringement and breach of contract from coexisting. *See Effects Assocs. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987) ("*Effects I*"). As master of the complaint, a plaintiff may choose not to bring one potential claim or the other. *See id*. Moreover, if one claim fails, the plaintiff may even be able to try again with the other claim. *See Effects Assocs. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990) ("*Effects II*"). In *Effects*, plaintiff alleged that defendant hadn't paid what he promised for plaintiff's content. *See Effects I,* 817 F.2d at 73. Plaintiff avoided bringing a claim for breach of that promise, however, and instead sued for copyright infringement. *See id*. When the court found that the plaintiff had granted defendant an implied license, which resulted in dismissal of the copyright claim, the Ninth Circuit had this advice:

> We note, however, that plaintiff doesn't leave this court empty-handed. Copyright ownership is comprised of a bundle of rights; in granting a nonexclusive license to Cohen, Effects has given up only one stick from that bundle -- the right to sue Cohen for copyright infringement. It retains the right to sue him in state court on a variety of other grounds, including breach of contract.

*Effects II*, 908 F.2d at 559. The only difference between *Effects* and this case is that SFC voluntarily chose not to bring a copyright claim, whereas plaintiff in *Effects* had that decision made for him. In either circumstance, a plaintiff such as SFC may still bring a claim for breach of contract if it so chooses.

11

Vizio nevertheless appears to assert that its alleged breach of the GPL Agreements is different because it involves the breach of a *condition* to the copyright license, and that makes Vizio a copyright infringer. Thus, if the Source Code Provision is a condition of the GPL Agreements, then Vizio may be a copyright infringer.  As one court has stated, "A copyright owner who grants a … license ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract. However, if the licensee acts outside the scope of the license, the [copyright owner] may sue for copyright infringement." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *quoting Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999). Thus, if Vizio acted outside the scope of the license granted by the GPL Agreements, it is potentially liable for copyright infringement. (*See* Memo at 9:15-10:7.)  This does not mean, however, that Vizio somehow is immune from claims for breach of contract, as the case law discussed below makes clear.

One way to act beyond the scope of a license is to exceed the limits placed on that scope. A common example is printing more copies of a work than permitted by the license. *See Pac. Stock, Inc. v. Pearson Educ., Inc.,* 927 F. Supp. 2d 991, 998 (D. Haw. 2013) (limit of 40,000 copies in North America); *see also LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1156 (9th Cir. 2006) (building one too many houses from the copyrighted architectural plans); *Applied Bus. Software, Inc. v. Citadel Servicing Corp.*, 2017 U.S. Dist. LEXIS 222728, at *7 (C.D. Cal. Nov. 21, 2017) (loading software on too many computers); *Valve Corp. v. Sierra Entm't, Inc.*, 431 F. Supp. 2d 1091, 1102 (W.D. Wash. 2004) (scope of license limited to "retail packaged products" and thus did not cover distributions to cybercafes). Another way is to violate a condition precedent of the license, provided that the condition is "grounded in an exclusive right of a copyright." *MDY Indus.*, 629 F.3d at 940. This is Vizio's contention: by failing to provide the source code for the software programs used in its smart TVs, or a written offer therefor, Vizio has taken itself outside the scope of the GPL Agreements' license and into the realm of copyright infringement.

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

Vizio then make the illogical leap, however, that the remedy for exceeding the scope of a license must be found exclusively in enforcement of copyright. Vizio cites no legal authority for this proposition. To the contrary, one court in the Ninth Circuit has expressly rejected Vizio's position. *See Viasat, Inc. v. Space Sys./Loral, Inc.*, 2014 WL 11889010, at *11 (S.D. Cal. Aug. 8, 2014). In *Viasat,* plaintiff granted defendant a nonexclusive license to plaintiff's "Intellectual Property" (defined to include copyright), "only to the extent necessary to provide the Work under this Contract." *Id.* A jury found that defendant's use of the intellectual property went too far and breached the contract. *See id.* On a motion for a new trial, defendant argued that plaintiff's "remedy for use in excess of the license is typically not breach of contract, but enforcement of the preexisting right," which is almost exactly what Vizio asserts here. *Id.* Noting that "[m]any courts have held that a licensing clause can be the basis for a breach of contract claim," the court rejected the defendant's argument. *Id.*

Contrary to Vizio's assertion, courts in the Ninth Circuit have not held that the exclusive remedy for exceeding the scope of a software license is a copyright infringement claim. Rather, the Ninth Circuit has carefully noted that if the scope of the copyright license that has been granted has not been exceeded, the copyright owner "may sue **only** for breach of contract." *MDY Indus.*, 629 F.3d at 939 (emphasis added). If the scope of the license has been exceeded, however, then then the copyright holder "**may** sue for copyright infringement." *Id.* (emphasis added). As another court has stated, "A copyright owner's remedies against copiers who possess a valid []license but have failed to satisfy a condition upon which the rights of the license depend are not limited to breach of contract. Such use is without the authority of the licensor and **may** constitute infringement of the copyright." *Microsoft Corp. v. Very Competitive Computer Prod. Corp.*, 671 F. Supp. 1250, 1257, n.4 (N.D. Cal. 1987) (emphasis added). Never do the courts even suggest that breach of contract claims are thereby somehow displaced or waived under these circumstances. Where a license applies, the parties have agreed to waive copyright infringement claims. *See MDY Indus.* 629 F.3d at 939. It simply does

13

not follow, however, that where the license has been exceeded, the parties have agreed to waive their claims for breach of contract. Yet that is exactly what Vizio contends should be read into every license agreement, including the GPL Agreements.

Normally, where a defendant has breached a license agreement, the plaintiff will choose to sue the defendant for copyright infringement. As one court has observed, this is because a breach of contract claim "usually provides a lesser remedy than a copyright infringement action." *Pac. Stock*, 927 F. Supp. 2d at 998. Indeed, plaintiffs in cases cited by Vizio alleged both copyright infringement and breach of contract claims and sought preliminary injunctions, seeking to take advantage of the presumption of irreparable harm that then existed in copyright cases. *See, e.g., LGS Architects, Inc. v. Concordia Homes,* 434 F.3d 1150, 1155-56 (9th Cir. 2006) (alleging both breach of contract and copyright infringement and seeking preliminary injunction based on copyright infringement); *Jacobsen v. Katzer*, 2007 U.S. Dist. LEXIS 63568, at *14-*15 (N.D. Cal. Aug. 17, 2007) (denying motion for preliminary injunction on copyright claim and stating "based on the current record before the Court, the Court finds that Plaintiff's claim properly sounds in contract"), *vacated on other grounds*, 535 F.3d 1373 (Fed. Cir. 2008).[2] *Grumpy Cat,* another case cited by Vizio, involved claims for both breach of contract and copyright infringement, with the jury awarding far more for the latter than the former. *Grumpy Cat Ltd. v. Grenade Bev. LLC*, 2018 U.S. Dist. LEXIS 226982, at *4 (C.D. Cal. Aug. 21, 2018). Thus, the issue generally before a court is whether the copyright infringement claim may proceed, with the tacit assumption that any claim for breach of contract is beyond reproach. Here, however, SFC has chosen to sue Vizio for breach of contract and not copyright infringement.  Nothing in the cases cited by Vizio prevents SFC from doing so.

---

[2] The Ninth Circuit later held that, in light of the U.S. Supreme Court's holding in *eBay Inc v. Mercexchange, LLC*, 547 U.S. 388 (2006), courts may not presume irreparable harm upon a showing of likely copyright infringement. *See Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 994-95 (9th Cir. 2011).

Notwithstanding the fact that a plaintiff may prefer to sue for copyright infringement rather than breach of contract, it is fairly common for courts to consider copyright infringement claims and breach of contract claims together, even when both claims arise from the same act. For example, in *Crispin v. Christian Audigier, Inc.*, 2010 WL 11508342, at *4-*5 (C.D. Cal. June 21, 2010), the court held that defendant could be liable under both copyright law and contract law for breaching its obligation to provide attribution to the plaintiff. *Id.* The court noted that, while there was no exclusive right to attribution under copyright law, the obligation to provide attribution was a condition to the copyright license. *See id*. By failing to provide attribution, the defendant had both breached the license agreement and infringed copyright. *See id*. In *Fox Broadcasting Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1174-77 (C.D. Cal. 2015), a dispute between two sophisticated parties, the court found that the defendant's "QA copies" violated the parties' "No-Copying Provision" *and* plaintiff's copyrights. The court also noted that contract and copyright claims allow different remedies, both of which plaintiff was entitled to pursue. *See id*. at 1179-80; *see also Oracle USA, Inc. v. Qtrax, Inc.*, 2011 U.S. Dist. LEXIS 118430, at *7-*8 (N.D. Cal. Sep. 27, 2011) (awarding damages for breach of the parties' license agreement and an injunction against infringement of plaintiff's copyright). Finally, in *Royal Printex, Inc. v. LA Printex Industries*, 2015 U.S. Dist. LEXIS 97072, at *9 (C.D. Cal. July 24, 2015), the court remanded to state court a claim for a declaration that plaintiff had not breached its license agreement with the defendant, even though it already had a claim for noninfringement of defendant's copyrights pending in federal court. *Id.*

As the above discussion demonstrates, there simply is no legal proposition or rule that a defendant such as Vizio cannot be liable for both copyright infringement and breach of contract where the defendant's breach caused it to exceed the scope of a copyright license. Vizio's contrary contention is incorrect and provides no basis for this Court to conclude that SFC's state law breach of contract claims are preempted by the Copyright Act. For this reason alone, this Court should deny Vizio's Motion.

### C. Vizio's Novel Test For Copyright Preemption Would Undermine The Freedom To Contract And Lead To Absurd Results

Acceptance of Vizio's novel test for copyright preemption would undermine the freedom to contract and some common commercial transactions. "It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting." *In re Marriage of McDonnal*, 652 P.2d 1247, 1251 (Or. 1982). As explained in greater detail in Section V.D of SFC's Memorandum of Points and Authorities in support of its Motion to Remand (Doc. No. 14), Congress was careful to craft the scope of copyright preemption to respect the freedom of contract and not allow copyright law to intrude into contract law: "Nothing in the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract." H. Rep. No. 94-1476, at 132 (1976).

Here, however, Vizio seeks to interpose copyright law to avoid the contractual consequences of its breach of the Source Code Provision. Vizio promised recipients of its software to make the source code available to anyone who asked. It has broken that promise. If parties who breach copyright license agreements can avoid breach of contract claims in this way, parties to such agreements who lack standing to bring a copyright infringement claim will be unable to enforce the bargains they believed they had struck and thus will have no remedy. Some of these situations will be quite common, as these hypotheticals indicate:

- In some copyright license agreements, the party granting the license, such as a reseller, lacks standing to enforce the copyright. Under Vizio's theory, a reseller would be unable either to enforce terms that are conditions to the license or to impose conditions on the license at all. For example, if a reseller conditioned getting access to copies of the software on the timely payment of fees in order to encourage prompt payment, and a customer refused to pay but continued to use the software, the reseller would find itself unable to collect those fees under Vizio's theory. *Cf. Leopona, Inc. v. Cruz for President*, at *9

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM
CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

(W.D. Wash. July 11, 2016) (holding that a licensing agent's claim for breach of contract was not preempted where the licensee violated express conditions on the use of copyrighted works).

- In other copyright license agreements, the remedies under copyright law would not make the copyright holder whole. A developer of enterprise software might license its software for a lump sum, but then require its customer, as a condition of the license, to make certain annual maintenance payments. If the customer failed to make the payments, the actual damages for copyright infringement might be almost nothing because the customer had already fully paid for the license. Unless the developer could sue for breach of contract, it might not be able to collect on the unpaid maintenance fees. *Cf. Applied Bus. Software, Inc. v. Citadel Servicing Corp.*, 2019 U.S. Dist. LEXIS 76331, at *3 (C.D. Cal. Mar. 26, 2019).

- If a wholesaler, with the author's permission, gave copies of the author's work to a retailer on consignment, on condition that any remaining copies be returned to the wholesaler after 90 days, the retailer could keep and continue to distribute the copies on grounds that, in violating the condition to the right to distribute, it is immune to the wholesaler's claims for breach of the promise to return the copies. *Cf. ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996). The wholesaler could not even seek to use the right of replevin, a state-law remedy, to recover what is, in effect, its own property.

In sum, Vizio's novel theory that breaches of contract that also violate conditions to copyright licenses may only be enforced through copyright—and even then, only imperfectly—is unsupported by legal authority, the legal reasoning of Vizio's own leading cases, and by common sense. This Court should reject Vizio's novel theory and instead apply the "extra element" test in the manner discussed in Sections V.D and V.E, below, without regard to whether the Source Code Provision is a condition.

**D.** **The Copyright Act Does Not Preempt SFC's State Law Claims Because the Obligation to Produce Source Code is Purely Contractual and is Not Equivalent to Any of the Exclusive Rights Under the Copyright Act**

As the Ninth Circuit has observed, when the "extra element" test is correctly applied, breach of contract claims are almost never preempted by the Copyright Act. *See, e.g., Altera Corp.,* 424 F.3d at 1089; *see also MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010). Other circuits have reached the same conclusion. *See Bowers v. Baystate Techs Inc.,* 320 F.3d 1317, 1323-24 (Fed. Cir. 2003) (applying the law of the First Circuit); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996); *Nat'l Car Rental Sys., Inc. v. Comput. Assoc. Int'l, Inc.*, 991 F.2d 426, 433 (8th Cir. 1993); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988). As one court has pointed out, "A majority of courts have found that breach of contract claims are not preempted because the rights asserted in those claims were not equivalent to rights that could have been asserted in copyright." *Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.,* 177 F. Supp. 2d 1050, 1058 (C.D. Cal. 2001). Courts have found that the Copyright Act does not preempt breach of contract claims because

A claim for breach of contract has the "extra element" of an alleged exchange of promises/representations between the parties. The claim depends on more than the mere act of copying or distribution regulated by the federal Copyright Act, and is on that basis not preempted by Section 301(a).

*Northwest Home Designing, Inc. v. Sound Built Homes, Inc.*, 776 F. Supp. 2d 1210, 1216 (W.D. Wash. 2011) (citing *Idema v. Dreamworks, Inc.,* 162 F. Supp. 2d 1129, 1192 (C.D. Cal. 2001)).

The only exception to this rule is for terms that are nothing more than a promise not to infringe copyright. *See, e.g., Rumble, Inc. v. Daily Mail*, 459 F. Supp. 3d 1294, 1299 (C.D. Cal. 2020). For this exception to apply, however, the contractual term must truly be an equivalent of an Exclusive Right. Even contractual terms that build upon or

18

modify Exclusive Rights are not preempted. *Id.* at 1299-1300 (promise to "make reasonable efforts to avoid violating the United States Copyright Act" not preempted because "reasonable efforts" are an "extra element"); *JZK, Inc. v. Weaver,* 2006 U.S. Dist. LEXIS 75523 (W.D. Wash. Oct. 17, 2006) (condition that copyrighted work was "for personal use only" was not preempted even though it required reproduction and public performance of the work to breach); *Meridian Project Sys. v. Hardin Constr. Co.,* 426 F. Supp. 2d 1101 (E.D. Cal. 2006) (promise not to reverse engineer copyrighted work was not preempted even though it required reproduction of the work to breach); *see also Fox Broad. Co. v. Dish Network, LLC*, 905 F. Supp. 2d 1088, 1107 (C.D. Cal. 2012) (holding that Fox was likely to succeed on its breach of contract claim because "[a] plain reading of this section in the context of the contract as a whole suggests that the [infringing] copies constitute a breach of contract by the plain fact that they are Dish-initiated copies.").

Here, the Source Code Provision provides the extra element necessary for SFC's state law claims to avoid copyright preemption. Under the Source Code Provision, Vizio has the obligation to provide, and SFC has the right to receive, source code for software on its smart TVs that is covered by the GPL Agreements. (Cmplt. ¶¶ 8, 28-29.) The GPL Agreements explicitly require Vizio to accompany any executable computer program licensed under the GPL Agreements with either the source code for the program or a written offer for the source code. (*Id*. ¶¶ 28-29.) As the Complaint alleges, Vizio did neither. (*Id*. ¶¶ 50-51.) The right to such source code implicates no Exclusive Rights. The Source Code Provision does not give SFC the right to demand that Vizio cease copying software covered by the GPL Agreements onto its smart TVs or cease distributing those smart TVs.  Put simply, there is no exclusive right under the Copyright Act to receive source code and Vizio's alleged failure to make its source code available does not implicate any Exclusive Rights.  *See, e.g., Artifex,* 2017 U.S. Dist. LEXIS 62815, at *9.

Any assertion by Vizio that the obligation to provide source code is the equivalent of the Exclusive Rights of reproduction and distribution, because Vizio is required to make a copy of the source code and distribute it, thus misses the point. Because the rights granted to authors under Section 106 are rights to *exclude*, there is no Exclusive Right that does require or could require another to take action. As the Ninth Circuit recently stated, "Like other property rights, the right granted by a copyright is the right to exclude others. We are unaware of any authority suggesting that causing a copyright holder to make a copy of its own copyrighted work and keep it within the copyright holder's exclusive possession would violate the Copyright Act." *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1275-76 (9th Cir. 2021).   *See also Ass'n of Am. Publrs., Inc. v. Frosh*, 2022 U.S. Dist. LEXIS 27892, at *20-*21 (D. Md. Feb. 16, 2022) (holding that state law cannot force book publishers to distribute their works against their will). Vizio violates the Source Code Provision by *failing* to make a copy of the source code and then *failing* to make it available to purchasers of its smart TVs. These failures implicate no Exclusive Rights. *See Fleet*, 50 Cal.App.4th at 1924.

In short, if there is no right under copyright law to make source code available, then any contractual obligation to do, such as the Source Code Provision in the GPL Agreements, must be an "extra element" that is "qualitatively different" from any of the Exclusive Rights under the Copyright Act. *See Artifex*, 2017 U.S. Dist. LEXIS 62815, at *9-*10.  For this reason, SFC's state law claims are not preempted by the Copyright Act and Vizio's Motion should be denied.

### E.   Two Separate Courts Already Have Held That Claims Based on the Obligation to Produce Source Code Under the Source Code Provision Are Not Preempted by the Copyright Act

In addition to the fact that the vast majority of courts have held that contract claims are not preempted by the Copyright Act, two courts, including one in the Ninth Circuit, have already addressed whether the obligation to provide source code found in Source Code Provision of the GPL Agreements (called the "open source obligation" or "requirement" in the opinions) is subject to copyright preemption. *See Artifex Software*

20

*v. Hancom, Inc.*, 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017); *Versata Software, Inc. v. Ameriprise Fin., Inc.*, 2014 U.S. Dist. LEXIS 30934, at *5 (W.D. Tex. Mar. 11, 2014). ***Both courts held that it is not.***

In *Versata*, plaintiff Versata's software incorporated XimpleWare's "VTD-XML" software, a program governed by the GPL Agreement into its own larger software program. 2014 U.S. Dist. LEXIS 30934, at *3-*4. When Versata sued its licensee, Ameriprise, for breach of a broader master license agreement, Ameriprise counterclaimed for breach of the GPL Agreement's Source Code Provision (even though Ameriprise was not, strictly speaking, a party to that agreement). *Id*. at *4. Versata moved for summary judgment, arguing that Ameriprise's counterclaim was preempted by copyright law because the Source Code Provision in the GPL Agreement "amounts to nothing more than a promise to not commit copyright infringement." *Id*. at *13. Versata reasoned—and the court acknowledged—that once it failed to provide the source code, the GPL Agreement's copyright license terminated and plaintiff Versata "is potentially liable for copyright infringement for distributing or copying the software without permission." *Id*. Indeed, Versata was already the subject of lawsuits brought by the copyright holder for infringement. *Id*. Nevertheless, the court determined that Versata's reasoning was irrelevant and concluded that the obligation to provide source code was an extra element that defeated copyright preemption. As the *Versata* court explained:

> Copyright law imposes no open source obligations, and Ameriprise has not sued Versata for infringing XimpleWare's copyright by distributing VTD-XML without permission. Instead, Ameriprise has sued based on Versata's breach of an additional obligation: an affirmative promise to make its derivative work open source because it incorporated an open source program into its software. Ameriprise's claim therefore requires an 'extra element' in addition to reproduction or distribution: a failure to disclose the source code of the derivative software. *Id*. at *14-*15.

21

*Versata* was followed by the Northern District of California in *Artifex,* 2017 U.S. Dist. LEXIS 62815, at \*9. *Artifex* involved software called "Ghostscript," which was distributed under a GPL Agreement and which defendant Hancom incorporated into its own software. *Id.* at\*3-\*4. As a condition of the license, Hancom was required by the GPL Agreement "to distribute its software with the accompanying source code." *Id.* at \*4. Hancom did not do so, and plaintiff Artifex, which was also the copyright holder, sued for both breach of the GPL Agreement and for copyright infringement. *Id.* at \*5. Hancom argued, as Vizio does here, that the contract claim was preempted because any allegation that it violated the open source requirement of the GPL Agreement involved the exact same exclusive federal rights to reproduce, distribute and make derivative copies protected by Section 106 of the Copyright Act. *Id.* at \*9-\*10. The court soundly rejected Hancom's argument, choosing instead to follow *Versata* for the proposition that "a failure to disclose the source code of the derivative software" constitutes the required "'extra element' in addition to reproduction or distribution." *Id.* at \*9, *quoting Versata*, 2014 U.S. Dist. LEXIS 30934, at \*5.

Here, as in *Versata* and *Artifex*, SFC seeks to enforce the obligation under the GPL Agreements to make source code available. As both *Versata* and *Artifex* point out, there is no right to obtain source code among the Exclusive Rights protected by the Copyright Act. To the contrary, the Exclusive Rights are all rights to prevent another from taking a certain action. Here, by contrast, SFC seeks to have Vizio affirmatively make and distribute source code. *See* 17 U.S.C. § 106. The mere fact that SFC's contractual rights are related to Vizio's licensing rights does not magically convert Conservancy's state law contract claim into an action under the Copyright Act. The mere fact that Vizio's violation of SFC's contractual rights may also violate copyrights does not mean SFC somehow stands in the same, or even similar, place as one of the copyright holders. Indeed, Vizio can be sued by both copyright holders and parties to the GPL Agreements, just as in *Versata* and *Artifex*.

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

Vizio does not even discuss *Versata,* let alone attempt to explain why the holding in *Versata* does not compel this Court to deny its Motion. Moreover, Vizio's attempt to distinguish *Artifex* lacks merit and is unavailing. (*See* Memo at 12:14-27, n.4.)

First, Vizio asserts that *Artifex* is distinguishable because the defendant "did not meet its burden" to explain why the open source requirement of the GPL Agreement is not an extra element. *Id.* Vizio has to meet this same burden here, however, because copyright preemption is an affirmative defense. *Chesler/Perlmutter Prods., Inc.,* 177 F. Supp. 2d at 1056. Vizio has failed to meet its burden for all the reasons discussed herein, just as Defendant Hancom failed to meet its burden in *Artifex.*

Second, Vizio mistakenly asserts that the *Artifex* court "did not address or explain how the GPL's open source requirement would 'transform the nature of the action' into a qualitatively different claim." (Memo at 12:18-20, n. 4.) In fact, the *Aritfex* court specifically stated that "[t]o avoid preemption under the second prong, the state law claim must protect rights which are qualitatively different from the copyright rights" and then held that Hancom "does not explain why the GPU GPL's open source requirement is not the required extra element …" *Artifex,* 2017 U.S. Dist. LEXIS 62815, at *8-*9, *10 (quotation and citation omitted). Vizio simply is unhappy with the fulsomeness of the *Artifex* court's analysis.

Third, Vizio complains that the *Artifex* court did not address authority holding that "exceeding the scope of a license by violating a condition of the license gives rise to a claim for copyright infringement, not breach of contract." According to Vizio, "[b]ecause the alleged conduct underlying SFC's claims would constitute copyright infringement, there is no extra element that transforms the nature of the action into a qualitatively different claim." (Memo at 12:20-22, 24-26, n. 4.) As explained above, Vizio is simply wrong. It can be liable both for copyright infringement and for breach of the Source Code Provision in the GPL Agreements. Moreover, whether or not that provision is a condition of the GPL License Agreements is completely irrelevant to the question of whether SFC's state law breach of contract claims are preempted.

Accordingly, this Court should apply the holdings of *Versata* and *Artifex,* reject Vizio's flawed attempt to distinguish *Artifex,* rule that SFC's claim that Vizio has breached the Source Code Provision in the GPL License Ageements is not preempted by the Copyright Act, and deny Vizio's Motion.

### F.   Jacobsen II is Distinguishable and Does Not Support Vizio's Attempt to Dismiss this Action

In support of its assertion that SFC's state law claims are preempted by the Copyright Act, Vizio cites only one decision that applies the "extra element" test *and* holds that a contract claim is preempted by the Copyright Act.[3] *See* Memo at 13:9-15, *citing Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009) ("*Jacobsen II*").[4] *Jacobsen II* is distinguishable and provides no reason for this Court to grant Vizio's Motion, for several separate reasons.

First, *Jacobsen II* was about an entirely different FOSS agreement called the "Artistic License" and did not involve the Source Code Provision. *Id.* at 932. The Artistic License did not include a mandatory obligation to provide source code to recipients of the executable code and the breach of license claim in *Jacobsen* did not include an allegation that source code had not been provided. *See Jacobsen I*, 535 F.3d at 1376-77. Second, the contractual provision alleged to have been breached in *Jacobsen II* was nothing more than a promise not to infringe copyright. It thus falls into a narrow exception to the general rule that claims for breach of contract are not preempted.  *See, e.g., Rumble, Inc. v. Daily Mail*, 459 F. Supp. 3d 1294, 1299 (C.D. Cal. 2020). Third, the

---

[3]   The other cases on which Vizio seeks to rely, such as *GlobeRanger Corp. v. Software AG US of America, Inc.*, 836 F.3d 477, 484 (5th Cir. 2016) and *Ryoo Dental, Inc. v. Han*, 2015 U.S. Dist. LEXIS 90085 (C.D. Cal. July 9, 2015) (*see* Memo at 13), did not consider arguments that claims for breach of contract were preempted by the Copyright Act and therefore are wholly inapplicable here.

[4]   The district court's opinion in *Jacobsen* was rendered after the Federal Circuit remanded the case in *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ("*Jacobsen I*"). For that reason, it is commonly referred to as *Jacobsen II*.

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

*Jacobsen II* court merely held, in describing plaintiff's claim for breach of contract, that plaintiff had failed to allege in his complaint the required "extra element." *Id.* at 933. In fact, the *Jacobsen II* court does not even describe plaintiff's attempt to do so. This is a pleading defect, not a general statement that copyright law preempts breach of contract claims arising from license agreements. Indeed, the *Jacobsen II* court invited plaintiff to amend the complaint in a way that "demonstrat[ed] that there are rights or remedies available under the contract claims that are not otherwise available under the copyright claim." *Id.* at 934.

Finally, and perhaps most importantly, *Jacobsen II* did not address the "extra element" at issue here: the Source Code Provision. By contrast, *Artifex did* address this extra element, and found that it was sufficient to prevent copyright preemption. *See Artifex,* 2017 U.S. Dist. LEXIS 62815, at *9-*10. In doing so, the *Artifex* court explicitly distinguished *Jacobsen II,* explaining that the defendant "does not explain why the GNU GPL's open source requirement [i.e., the Source Code Provision] is not the required extra element and the argument was apparently not made in *Jacobsen II*." *Id.* at *10.

In sum, Vizio's reliance on *Jacobsen II* is unavailing, for all the above reasons, and provides no basis for this Court to grant the Motion.

## VI.   CONCLUSION

SFC agrees with Vizio on one point—this case does not belong in federal court. SFC has properly pleaded state law claims for breach of contract and declaratory relief and Vizio's transparently false premise—that the breach of a copyright license can only be pled as a copyright infringement claim—does not support Vizio's contention that SFC's state law claims are preempted by the Copyright Act and provides no basis to grant this Motion.  Accordingly, for all the foregoing reasons, SFC respectfully requests that this Court deny Vizio's Motion and instead remand this action to state court.

///

///

///

DATED: April 29, 2022                           **RICHARD G. SANDERS, PLLC**
                                                **VAKILI & LEUS, LLP**


                                        By:  /s/ Sa'id Vakili
                                             Sa'id Vakili, Esq.
                                             David N. Schultz, Esq.
                                             Richard Sanders, Esq.
                                             *Attorneys for Plaintiff Software Freedom*
                                             *Conservancy, Inc.*

MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM
CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

# CERTIFICATE OF SERVICE

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*
*U.S.D.C. C.D. Cal. Case No.: 8:21-cv-01943-JLS-KES*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On April 29, 2022, I served the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. IN OPPOSITION TO MOTION TO DISMISS COMPLAINT OF DEFENDANT VIZIO, INC.** on all interested parties in this action at the addresses listed below, as follows:

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Michael E. Williams, Esq.
*michaelwilliams@quinnemanuel.com*
Daniel C. Posner, Esq.
*danposner@quinnemanuel.com*
John Z. Ying
*johnyin@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

**213/443-3000** | Fax: 213/443-3100

*Counsel for Defendant Vizio, Inc.*

I hereby certify that on the 29th day of April 2022, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action.  The NEF will constitute service of the document.  Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

/s/ Jason C. Ming
Jason C. Ming