Richard G. Sanders, Esq. (SBN: 209617)
rick@ricksanderslaw.com
**RICHARD G. SANDERS, PLLC**
605 Berry Road, Suite A
Nashville, TN 37204-2801
(615) 734-1188 | Fax: (615) 250-9807

— *and* —

Sa'id Vakili, Esq. (SBN: 176322)
vakili@vakili.com
David N. Schultz, Esq. (SBN: 123094)
Schu1984@yahoo.com
John A. Schlaff, Esq. (SBN: 135748)
john.schlaff@gmail.com
Stephen P. Hoffman, Esq. (SBN: 287075)
hoffman@vakili.com
**VAKILI & LEUS, LLP**
3701 Wilshire Blvd., Suite 1135
Los Angeles, CA 90010-2822
(213) 380-6010 | Fax: (213) 380-6051

*Attorneys for Plaintiff Software Freedom Conservancy, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTWARE FREEDOM CONSERVANCY, INC., a New York non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>VIZIO, INC., a California corporation; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 8:21-cv-01943-JLS-KES<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT**<br><br>Date:      May 13, 2022<br>Time:      10:30 a.m.<br>Place:     Courtroom 8A, First Street U.S. Courthouse<br>Judge:     Hon. Josephine L. Staton |

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ....................................6

II.  NONE OF VIZIO'S MISTAKEN ASSERTIONS REGARDING COPYRIGHT PREEMPTION PROVIDES ANY BASIS TO DENY SFC'S MOTION TO REMAND ...............................................................................................8

    A.  *Vizio's Novel Test for Copyright Preemption Is Unsupported by Legal Authority or Reasoning and Cannot Defeat SFC's Motion* .............................9

    B.  *Vizio's Assertion that SFC's State Law Claims Seek to Enforce Rights that the Copyright Act Protects is Simply False* ........................................................16

    C.  *Vizio Fails to Successfully Distinguish the Rulings in Versata and Artifex, Which Already Have Held that Claims Based on the Obligation to Produce Source Code Under the Source Code Provision Are Not Preempted by the Copyright Act* .................................................................................................18

    D.  *Jacobsen II Is Distinguishable and Does Not Support Vizio's Assertion that SFC's State Law Claims are Preempted by the Copyright Act* .....................20

III.  VIZIO CANNOT USE EXTRINSIC EVIDENCE, STATEMENTS AND ARGUMENTS MADE IN UNRELATED PRIOR LITIGATION, OR PRE-LITIGATION COMMUNICATIONS TO DEFEAT THE MOTION ...................22

    A.  *The Extrinsic Evidence Relied Upon by Vizio is Irrelevant for Purposes of Deciding this Motion* .....................................................................................22

    B.  *Vizio Cannot Bind SFC to Prior Statements and Arguments Made in Unrelated Litigation and Privileged Settlement Communications, Because they are Irrelevant or Inadmissible.* ..............................................................23

        1.  *Statements and Arguments Made in Unrelated Prior Litigation Are Not Binding on SFC in this Action* ................................................................24

        2.  *The Pre-Lawsuit Correspondence Between SFC and Vizio Constitutes Confidential Settlement Communications and is Inadmissible Under Rule 408(A) of the Federal Rules of Evidence* ................................................27

    C.  *Vizio's Baseless Assertions Regarding SFC's Alleged Misrepresentations Have No Relevance Whatsoever to this Motion* .............................................28

IV.  CONCLUSION .................................................................................................29

1

# TABLE OF AUTHORITIES

## Cases

*Applied Bus. Software, Inc. v. Citadel Servicing Corp.*
    2019 U.S. Dist. LEXIS 76331 (C.D. Cal. Mar. 26, 2019)....................................15

*Artifex Software v. Hancom, Inc.,*
    2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017).......................... 7, 18, 20

*Baughman v. Walt Disney World Co.*
    685 F.3d 1131 (9th Cir. 2012)....................................................25

*Carson v. Dynegy, Inc.*
    344 F.3d 446 (5th Cir. 2003) ....................................................18

*CDK Global LLC v. Brnovich*
    16 F.4th 1266 (9th Cir. 2021) .............................................. 8, 16

*Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.*
    177 F. Supp. 2d 1050 (C.D. Cal. 2001) .........................................19

*Cont'l Cas. Co. v. Chatz*
    591 B.R. 396 (N.D. Cal. 2018)...................................................25

*Crispin v. Christian Audigier, Inc.*
    2010 WL 11508342 (C.D. Cal. June 21, 2010)...................................13

*Effects Assocs. v. Cohen (Effects I)*
    817 F.2d 72 (9th Cir. 1987) ....................................................9

*Effects Assocs. v. Cohen (Effects II)*
    908 F.2d at 555 (1990) ........................................................10

*Flagship W., LLC v. Excel Realty Partners LP*
    337 Fed. App'x 679 (9th Cir. 2009) ...........................................26

*Fleet v. CBS*
    50 Cal.App.4th 1911 (1996) ...................................................17

2
TABLE OF AUTHORITIES

*Fox Broadcasting Co. v. Dish Network LLC*
    160 F. Supp. 3d 1139 (C.D. Cal. 2015) ................................................................13

*Garcia v. Lopez*
    2009 U.S. Dist. LEXIS 12622 (C.D. Cal. Feb. 5, 2009) .......................................22

*Heichman, v. Am. Tel. & Tel. Co.*
    943 F. Supp. 1212 (C.D. Cal. 1995) ....................................................................23

*Hunter v. Philip Morris USA*
    582 F.3d 1039 (9th Cir. 2009) ............................................................................14

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*
    2017 Bankr. LEXIS 1869 (Bankr. C.D. Cal. Jul. 6, 2007)..................................28

*Jacobsen v. Katzer*
    535 F.3d 1373 (Fed. Cir. 2008) ..........................................................................20

*Jacobsen v. Katzer (Jacobsen II)*
    609 F. Supp. 2d 925 (N.D. Cal. 2009)................................................................20

*Leopona, Inc. v. Cruz for President*
    2016 U.S. Dist. LEXIS 89706 (W.D. Wash. July 11, 2016)................................15

*Lippitt v. Raymond James Fin. Servs.*
    340 F.3d 1033 (9th Cir. (Cal.) 2003)..................................................................23

*Marshall & Swift/Boeckh, LLC v. URS Corp.*
    2009 U.S. Dist. LEXIS 139264 (C.D. Cal. Aug. 26, 2009) ................................21

*MDY Industries LLC v. Blizzard Entertainment, Inc.*
    629 F.3d 928 (9th Cir. 2010) ..............................................................................10

*Microsoft Corp. v. Very Competitive Computer Prod. Corp.*
    671 F. Supp. 1250 (N.D. Cal. 1987).....................................................................12

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*
    692 F.3d 983 (9th Cir. 2012) ..............................................................................26

3

TABLE OF AUTHORITIES

*Moses v. Fedida*
    2018 U.S. Dist. LEXIS 222855 (C.D. Cal. Dec. 12, 2018)....................................9

*New Hamp. v. Maine*
    532 U.S. 742 (2001) ...........................................................................................25

*Nextdoor.com v. Abhyanker*
    2013 U.S. Dist. LEXIS 101440 (N.D. Cal. Jul. 19, 2013.....................................25

*Oracle USA, Inc. v. Qtrax, Inc.*
    2011 U.S. Dist. LEXIS 118430 (N.D. Cal. Sep. 27, 2011)...................................13

*Pac. Stock, Inc. v. Pearson Educ., Inc.*
    927 F. Supp. 2d 991 (D. Haw. 2013)....................................................................13

*Palumbo Design, LLC v. 1169 Hillcrest, LLC*
    2019 U.S. Dist. LEXIS 234198 (C.D. Cal. Dec. 3, 2019)....................................25

*ProCD, Inc. v. Zeidenberg*
    86 F.3d 1447 (7th Cir. 1996) ...............................................................................16

*Rains v. Criterion Sys.*
    80 F.3d 339 (9th Cir. 1996) .................................................................................22

*Redwood Theatres, Inc. v. Festival Enters., Inc.*
    908 F.2d 477 (9th Cir. 1990) ...............................................................................22

*Royal Printex, Inc. v. LA Printex Industries*
    2015 U.S. Dist. LEXIS 97072 (C.D. Cal. July 24, 2015)....................................13

*Rumble, Inc. v. Daily Mail*
    459 F. Supp. 3d 1294 (C.D. Cal. 2020) ...............................................................21

*Software Freedom Conservancy, Inc. v. Best Buy Co.*
    2010 U.S. Dist. LEXIS 75208 (S.D.N.Y. Jul. 27)...............................................24

*Versata Software, Inc. v. Ameriprise Fin., Inc.*
    2014 U.S. Dist. LEXIS 30934 (W.D. Tex. Mar. 11, 2014)..............................7, 18

4

TABLE OF AUTHORITIES

*Viasat, Inc. v. Space Sys./Loral, Inc.*
        2014 WL 11889010 (S.D. Cal. Aug. 8, 2014)..........................................................12

**Statutes**

17 U.S.C. § 106....................................................................................................................16

17 U.S.C. § 301(a) .............................................................................................................14

17 U.S.C. § 501....................................................................................................................24

**Rules**

Fed. R. Evid. 408(a)(2) ......................................................................................................28

Rule 408(a) of the Federal Rules of Evidence .................................................................27

TABLE OF AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Vizio, Inc.'s ("Vizio") opposition to the Motion to Remand (the "Motion") filed by Plaintiff Software Freedom Conservancy, Inc. ("SFC" or "Conservancy") relies upon a complete misstatement of the test for copyright preemption that has no support in law or logic and is contrary to controlling Ninth Circuit authority.  Vizio's attempts to use extrinsic evidence, statements, and arguments from other unrelated litigation and pre-lawsuit communications by SFC to Vizio to defeat the Motion likewise lack merit and are contrary to law.  Accordingly, this Court should grant SFC's Motion and remand this action to Orange County Superior Court.

Vizio asserts, without basis or support, that SFC's state law claims for breach of contract and declaratory relief are preempted by the Copyright Act because, "if a state-law claim could be asserted under the Copyright Act, it is preempted and subject to removal." (Opposition ("Opp.") at 1:18-19.)  Vizio is wrong as a matter of fact and law.

<u>First</u>, Vizio's contention is directly contrary to the "extra element" test used by the Ninth Circuit to determine whether state law claims are preempted by the Copyright Act. As SFC established in its moving papers, SFC's claim that Vizio has breached the Source Code Provision in the GPL Agreements[1] by failing to make the source code for the operating systems of Vizio's "smart TVs" freely available is purely contractual and is not equivalent to any of the exclusive rights found in Section 106 of the Copyright Act.  Therefore, SFC's state law breach of contract claims include an "extra element" that makes the rights SFC asserts qualitatively different from those protected by the Copyright Act and thus transforms the nature of this action. (*See, e.g.,* Memo at 1:20-2:25, 9:11-13:18.)

<u>Second</u>, contrary to Vizio's unsupported assertion, Ninth Circuit case law specifically demonstrates that copyright infringement claims and breach of contract claims can and do coexist, even where they both depend on the breach of the same term.

---

[1] Terms used in this reply memorandum have the same meaning as defined in SFC's Memorandum of Points and Authorities in support of its Motion (the "Memo").

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

Vizio does not controvert the case law cited by SFC which concludes that breach of contract claims are almost never preempted by the Copyright Act.  (*See* Memo at 11:6-12:13 and cases cited therein.)  Nor does Vizio successfully distinguish the two cases cited by SFC—*Artifex Software v. Hancom, Inc.,* 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017) and *Versata Software, Inc. v. Ameriprise Fin., Inc.,* 2014 U.S. Dist. LEXIS 30934 (W.D. Tex. Mar. 11, 2014)—which are directly on point and already have held that claims based on the obligation to produce source code under the GPL Agreements are not preempted by the Copyright Act.  (*See id.* at 13:19-15:19.)

Third, Vizio's assertion that "SFC's state-law claims seek to enforce rights that the Copyright Act protects" (Opp. at 1:20-21) is demonstrably incorrect.  SFC's right to compel Vizio to disclose its source code under the GPL Agreements does not implicate any rights under the Copyright Act.  Indeed, the rights granted under Section 106 of the Copyright Act are rights to *exclude,* not rights to require another to take action and disclose source code.

In short, Vizio's mistaken assertions provide no basis for this Court to conclude that SFC's state law claims are preempted by the Copyright Act.  (*See* Section II *infra*.)

Vizio's remaining contentions similarly lack merit and provide no basis to deny SFC's Motion.  First, Vizio improperly seeks to use extrinsic evidence to defeat the Motion.  As explained in Section III.A *infra*, all evidence extrinsic to the pleadings is irrelevant for purposes of this Court's ruling on the Motion.  Second, as Section III.B.1 *infra* demonstrates, any statements or arguments made by SFC in prior unrelated litigation are neither relevant nor binding on SFC in this action and provide no basis to conclude that SFC's state law claims are preempted.  Third, any pre-lawsuit communications by SFC to Vizio are inadmissible settlement communications.  Moreover, Section III.B.2 *infra* establishes that, even if these communications were admissible, they are not binding on SFC, do not constitute admissions and provide no grounds to deny the Motion.

7

Accordingly, as explained in greater detail below, this Court should reject Vizio's flawed assertions, correctly apply the "extra element" test as described in SFC's Memo, conclude that SFC's state law claims are not preempted by the Copyright Act, grant SFC's Motion, and remand this action to Orange County Superior Court.

## II. NONE OF VIZIO'S MISTAKEN ASSERTIONS REGARDING COPYRIGHT PREEMPTION PROVIDE ANY BASIS TO DENY SFC'S MOTION TO REMAND.

SFC established in its moving papers that its state law breach of contract claims, based on the allegation that Vizio has breached the Source Code Provision in the GPL Agreements by failing to make the source code for the operating systems of its Vizio's "smart TVs" freely available, are not preempted by the Copyright Act. As SFC has explained, the Source Code Provision found in the GPL Agreements obligates Vizio, as the licensee of software covered by these agreements, to accompany the covered software with either the source code for such software or a written offer for the source code. As a purchaser of Vizio's "smart TVs," SFC is entitled to this software.

The right to receive source code, however, does not fit into any of the Exclusive Rights set forth in Section 106 of the Copyright Act. On the contrary, as the Ninth Circuit has recently explained, the right granted by a copyright, like other property rights, "is the right to exclude others." *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1275-76 (9th Cir. 2021). Therefore, the state law claims for breach of contract and declaratory relief alleged in SFC's Complaint are not preempted, because they include an "extra element" that makes the rights asserted by SFC under the GPL Agreements qualitatively different from those protected by the Copyright Act, and thus transforms the nature of this action. (*See, e.g.,* Memo at 1:20-2:25, 9:11-13:18.)

In its Opposition, Vizio raises various assertions in a failed attempt to show that the Copyright Act completely preempts SFC's state law claims. As explained *infra*, these assertions are all fatally flawed and provide no grounds to deny SFC's Motion.

**A.      Vizio's Novel Test for Copyright Preemption is Unsupported by Legal Authority or Reasoning and Cannot Defeat SFC's Motion**

Vizio agrees that the Copyright Act completely preempts only those "state-law claims that seek to enforce rights equivalent to the exclusive rights the Copyright Act protects." (Opp. at 1:16-18.)  In the very next sentence of its Opposition, however, Vizio completely misconstrues this language to invent a new rule for copyright preemption—wholly incongruous with Ninth Circuit precedent—stating that, "[p]ut differently, if a state-law claim could be asserted under the Copyright Act, it is preempted and subject to removal." (Opp. at 1:18-19.) Thus, according to Vizio, if SFC or a hypothetical copyright holder could bring a claim for copyright infringement, any state law claim based on the same facts is automatically preempted.

Vizio cites to no legal authority for its unfounded proposition that claims for breach of contract are preempted whenever the breach also constitutes copyright infringement.   Contrary to Vizio's unsupported assertion, Ninth Circuit case law specifically demonstrates that copyright infringement claims and breach of contract claims can and do coexist, even where they both depend on the breach of the same term. As one court has observed, while the "requirements for proving liability are different, … there is no per se bar to advancing both the contract and copyright claims simultaneously."  *Moses v. Fedida*, 2018 U.S. Dist. LEXIS 222855, at *16 n.4 (C.D. Cal. Dec. 12).

As a general principle, nothing prevents claims for copyright infringement and breach of contract from coexisting. *See Effects Assocs. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987) ("*Effects I*"). As master of the complaint, a plaintiff may choose not to bring one potential claim or the other. *See id*. Moreover, if one claim fails, the plaintiff may even be able to try again with the other claim. *See Effects Assocs. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990) ("*Effects II*"). In *Effects I*, plaintiff alleged that defendant hadn't paid what he promised for plaintiff's content. *See Effects I*. Plaintiff avoided bringing a claim for breach of that promise, however, and instead sued for copyright infringement.

9

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

*See id*. When the court found that the plaintiff had granted defendant an implied license, which resulted in dismissal of the copyright claim, the Ninth Circuit had this advice:

> We note, however, that plaintiff doesn't leave this court empty-handed. Copyright ownership is comprised of a bundle of rights; in granting a nonexclusive license to Cohen, Effects has given up only one stick from that bundle -- the right to sue Cohen for copyright infringement. It retains the right to sue him in state court on a variety of other grounds, including breach of contract.

*Effects II*, 908 F.2d at 559. The only difference between *Effects I* and this case is that SFC voluntarily chose not to bring a copyright claim, whereas plaintiff in *Effects I* had that decision made for him. In either circumstance, a plaintiff such as SFC may bring a claim for breach of contract if it so chooses.

Vizio nevertheless asserts that its alleged breach of the GPL Agreements is different because it involves the breach of a *condition* to the copyright license, and that makes Vizio a copyright infringer. According to Vizio, "the violation of a condition of [a] license is only actionable under copyright law, not as a breach of contract." (Opp. 18:27-19:1; *see also* Opp. at 21:24-22:5.)

Vizio is incorrect. It manufactures the rule quoted above by selectively and improperly quoting from the Ninth Circuit's opinion in *MDY Industries LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010). The issue in *MDY Industries* was whether copyright holder Blizzard could maintain a claim for copyright infringement based on a violation of a purported condition to the license. *Id*. at 937. The Ninth Circuit held that it could not because the purported condition lacked a nexus to any Exclusive Right. *See id*. at 941. In doing so, however, the court recognized the general proposition that a violation of a condition to a license may give rise to a claim for copyright infringement because, in violating the condition, the licensee has stepped outside of the scope of the license that shields the licensee from infringement actions. *See id*. at 939.

In support of its manufactured rule, Vizio asserts that *MDY Industries* specifically states "[w]e refer to contractual terms that limit a license's scope as 'conditions,' the breach of which constitute copyright infringement. We refer to all other license terms as 'covenants,' the breach of which is actionable only under contract law." (Opp. at 22:1-5, *quoting MDY Industries,* 629 F.3d at 939.)  In relying on this language, however, Vizio ignores the language from the Ninth Circuit immediately preceding this selective quotation, which states as follows:

> A copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement, and it ***may sue only for breach of contract***. However, if the licensee acts outside the scope of the license, the licensor ***may sue for copyright infringement.*** Enforcing a copyright license raises issues that lie at the intersection of copyright and contract law.

*MDY Industries,* 629 F.3d at 939 (citations omitted) (emphasis added).

As the above language—conveniently ignored by Vizio—makes clear, if Vizio acted outside the scope of the license granted by the GPL Agreements, it is potentially liable for copyright infringement. This does not mean, however, that Vizio somehow is immune from claims for breach of contract. Indeed, the Ninth Circuit is very careful with its language here, explaining that, if the scope of the granted copyright license has not been exceeded, and a condition thus has not been violated, the copyright owner "may sue *only* for breach of contract." *MDY Industries*, 629 F.3d at 939 (emphasis added). If the scope of the license *has* been exceeded, however, and a condition has thus been violated, the copyright holder then "*may* sue for copyright infringement." *Id*. (emphasis added). At no point, however, does the *MDY Industries* court even imply that the ability to bring a claim for copyright infringement preempts or otherwise forestalls a claim for breach of contract. Put another way, there is no blanket rule against maintaining claims for both copyright infringement and breach of contract where the breach of a license agreement also violates a condition to the copyright license. Vizio's disingenuous reliance on the

11

misleading language it chooses to quote from *MDY Industries* thus fails to support its assertion that the ***only*** remedy for violating a condition of a license is a claim for copyright infringement. Accordingly, *MDY Industries* provides no basis for this Court to conclude that SFC's state law claims are preempted. Moreover, as SFC demonstrated in its moving papers, the distinction between conditions and covenants advanced by Vizio is simply a red herring. (*See* Memo at 19:14-21:9.)

Courts in the Ninth Circuit have explicitly rejected Vizio's assertion that the exclusive remedy for exceeding the scope of a software license is a copyright infringement claim. For example, in *Viasat, Inc. v. Space Sys./Loral, Inc*., 2014 WL 11889010, at *11 (S.D. Cal. Aug. 8, 2014). plaintiff granted defendant a nonexclusive license to plaintiff's "Intellectual Property" (defined to include copyright), "only to the extent necessary to provide the Work under this Contract." *Id*. A jury found that defendant's use of the intellectual property went too far and breached the contract. *See id*. On a motion for a new trial, defendant argued that plaintiff's "remedy for use in excess of the license is typically not breach of contract, but enforcement of the preexisting right," which is almost exactly what Vizio asserts here. *Id*. Noting that "[m]any courts have held that a licensing clause can be the basis for a breach of contract claim," the court rejected the defendant's argument. *Id*.

Moreover, another court has stated that "[a] copyright owner's remedies against copiers who possess a valid []license but have failed to satisfy a condition upon which the rights of the license depend are not limited to breach of contract. Such use is without the authority of the licensor and ***may*** constitute infringement of the copyright." *Microsoft Corp. v. Very Competitive Comp. Prod. Corp.*, 671 F. Supp. 1250, 1257, n.4 (N.D. Cal. 1987) (emphasis added). Courts have never even suggested that breach of contract claims are thereby somehow displaced or waived under these circumstances. Where a license applies, the parties have agreed to waive copyright infringement claims. *See MDY Indus.,* 629 F.3d at 939. It simply does not follow, however, that where the license has been exceeded, the parties have agreed to waive their claims for breach of contract.

Yet that is exactly what Vizio contends should be read into every license agreement, including the GPL Agreements.

Normally, where a defendant has breached a license agreement, the plaintiff will choose to sue the defendant for copyright infringement. As one court has observed, this is because a breach of contract claim "usually provides a lesser remedy than a copyright infringement action." *Pac. Stock, Inc. v. Pearson Educ., Inc.,* 927 F. Supp. 2d 991, 998 (D. Haw. 2013). Notwithstanding the fact that a plaintiff may prefer to sue for copyright infringement rather than breach of contract, however, it is fairly common for courts to consider copyright infringement claims and breach of contract claims together, even when both claims arise from the same act. For example, in *Crispin v. Christian Audigier, Inc.*, 2010 WL 11508342, at *4–5 (C.D. Cal. June 21, 2010), the court held that defendant could be liable under both copyright law ***and*** contract law for breaching its obligation to provide attribution to the plaintiff. *Id.* The court noted that, while there was no exclusive right to attribution under copyright law, the obligation to provide attribution was a condition to the copyright license. *See id.* By failing to provide attribution, the defendant had both breached the license agreement and infringed a copyright. *See id.*

Similarly, in *Fox Broadcasting Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1174-77 (C.D. Cal. 2015). a dispute between two sophisticated parties, the court found that the defendant's "QA copies" violated the parties' "No-Copying Provision" ***and*** plaintiff's copyrights. The court also noted that contract and copyright claims allow different remedies, both of which plaintiff was entitled to pursue. *See id.* at 1179-80; *see also Oracle USA, Inc. v. Qtrax, Inc.*, 2011 U.S. Dist. LEXIS 118430, at *7-8 (N.D. Cal. Sep. 27, 2011) (awarding damages for breach of the parties' license agreement and an injunction against infringement of plaintiff's copyright). Finally, in *Royal Printex, Inc. v. LA Printex Industries*, 2015 U.S. Dist. LEXIS 97072, at *9 (C.D. Cal. July 24, 2015), the court remanded to state court a claim for a declaration that plaintiff had not breached its license agreement with the defendant, even though it already had a claim for noninfringement of defendant's copyrights pending in federal court. *Id.*

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

Vizio's contention that state law claims that could be asserted under the Copyright Act are preempted and subject to removal is fatally flawed for the additional reason that it misstates the language of the Copyright Act. Section 301(a) states that "all legal or equitable *rights* that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 … and come within the subject matter of copyright … are governed exclusively by this title." 17 U.S.C. § 301(a) (emphasis added).  The Copyright Act thus preempts equivalent ***rights***, not equivalent ***claims***. Here, there are two separate and distinct rights at issue. First, purchasers of Vizio's "smart TVs" have a right to receive the source code for software covered by the GPL Agreements.  Violation of that right gives rise to a claim for breach of contract.  Second, holders of copyright in the software have a right to exclude Vizio from reproducing or distributing the software without permission.  Violation of these Exclusive Rights of reproduction and distribution gives rise to a copyright infringement claim.

Vizio's contention is also fatally flawed because it turns the general principle that "a plaintiff is the master of his Complaint" on its head.  Ordinarily, plaintiffs "may avoid federal jurisdiction by relying exclusively on state law." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quotation omitted). Under Vizio's contention, however, the mere fact that a plaintiff ***could*** have brought a copyright infringement claim prevents that plaintiff from relying on state law claims, regardless of whether the copyright infringement claim and the state law claims involve equivalent rights.

Finally, adopting Vizio's unsupported contention that state law claims that could be asserted under the Copyright Act are preempted and subject to removal would undermine the freedom to contract and lead to absurd results. As SFC explained in its moving papers, Congress was careful to craft the scope of copyright preemption to respect the freedom of contract and not allow copyright law to intrude into contract law: "Nothing in the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract." (Memo at 15:20-16:5, *quoting* H. Rep. No. 94-1476, at 132 (1976).)

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

If parties such as Vizio who breach copyright license agreements can avoid breach of contract claims by seeking to interpose copyright law to avoid the contractual consequences of their breach, however, parties to such agreements who lack standing to bring a copyright infringement claim will be unable to enforce the bargains they believed they had struck and thus will have no remedy. Some of these situations will be quite common, as these hypotheticals indicate:

- In some copyright license agreements, the party granting the license, such as a reseller, lacks standing to enforce the copyright. Under Vizio's theory, a reseller would be unable either to enforce terms that are conditions to the license or to impose conditions on the license at all. For example, if a reseller conditioned getting access to copies of the software on the timely payment of fees in order to encourage prompt payment, and a customer refused to pay but continued to use the software, the reseller would find itself unable to collect those fees under Vizio's theory. *Cf. Leopona, Inc. v. Cruz for President*, at *9 (W.D. Wash. July 11, 2016) (holding that a licensing agent's claim for breach of contract was not preempted where the licensee violated express conditions on the use of copyrighted works).

- In other copyright license agreements, the remedies under copyright law would not make the copyright holder whole. A developer of enterprise software might license its software for a lump sum, but then require its customer, as a condition of the license, to make certain annual maintenance payments. If the customer failed to make the payments, the actual damages for copyright infringement might be almost nothing because the customer had already fully paid for the license. Unless the developer could sue for breach of contract, it might not be able to collect on the unpaid maintenance fees. *Cf. Applied Bus. Software, Inc. v. Citadel Servicing Corp.*, 2019 U.S. Dist. LEXIS 76331, at *3 (C.D. Cal. Mar. 26, 2019).

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

- If a wholesaler, with the author's permission, gave copies of the author's work to a retailer on consignment, on condition that any remaining copies be returned to the wholesaler after 90 days, the retailer could keep and continue to distribute the copies on grounds that, in violating the condition to the right to distribute, it is immune to the wholesaler's claims for breach of the promise to return the copies. *Cf. ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996). The wholesaler could not even utilize the right of replevin, a state-law remedy, to recover what is, in effect, its own property.

In sum, Vizio's novel theories that a state law claim is preempted and subject to removal if it could be asserted under the Copyright Act and that breaches of contract that also violate conditions to copyright licenses may only be enforced through copyright are unsupported by legal authority or common sense. There simply is no legal proposition or rule that a defendant such as Vizio cannot be liable for both copyright infringement and breach of contract where the defendant's breach caused it to exceed the scope of a copyright license. Accordingly, Vizio's mistaken assertions provide no basis for this Court to conclude that SFC's state law claims are preempted by the Copyright Act.

**B.      *Vizio's Assertion that SFC's State Law Claims Seek to Enforce Rights that the Copyright Act Protects is Simply False.***

Vizio also asserts that this Court should deny the Motion because SFC's state law claims clearly seek to enforce rights that the Copyright Act protects. (Opp. at 1:19-21.) This assertion is demonstrably false. The Copyright Act is very precise about the scope of the exclusive rights it protects. Section 106 of the Copyright Act enumerates only five such rights for this type of work: the right to reproduce a work, to make derivative works based on the work, to distribute copies (i.e., physical embodiments) of the work, to publicly perform the work, and to publicly display the work. *See* 17 U.S.C. § 106. These rights are "exclusive" because they give the holder the power to exclude others from carrying out any of these activities without permission. *See CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1275-76 (9th Cir. 2021).

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

By contrast, the right to receive source code under the Source Code Provision of the GPL Agreements—the provision that forms the basis of SFC's breach of contract claim—is not an enumerated Exclusive Right and is not protected under Section 106 of the Copyright Act. The Source Code Provision does not give SFC or other purchasers of Vizio's "smart TVs" the right to stop Vizio from reproducing, making derivative works of, or distributing copies of the covered software. Rather, it gives them the right to receive source code, a human-readable version of the covered software. This right is ***the very opposite*** of an Exclusive Right.  SFC wishes to compel Vizio to take action and disclose the source code of the covered software; it does not seek to exclude Vizio or prevent it from taking action.  Vizio violates the Source Code Provision by *failing* to make a copy of the source code available to purchasers of its "smart TVs."  This failure implicates no Exclusive Rights. *See Fleet v. CBS*, 50 Cal.App.4th 1911, 1924 (1996). For this reason, Vizio's assertion that SFC's state law claims seek to enforce rights that the Copyright Act protects is simply wrong and provides no ground to deny the Motion.

Vizio's misleading discussion of certain language from the GPL Agreements does not change the above conclusion. First, Vizio attempts to make much of the fact that the GPL Agreements state that "[a]ctivities other than copying, distribution and modification are not covered by this License; they are outside its scope." (Opp. at 1:25-27, *quoting* GPL Agreements, pp. 2, 3.)  Contrary to Vizio's assertion, such language does not mean that the GPL Agreements "cover only exclusive rights protected by the Copyright Act."  (Opp. at 1:22-23; *see also id* at 4:17-19; 13:23-28.) Such language is nothing more than a limitation on the scope of activities governed by the GPL Agreements, as opposed to such activities as running covered computer programs and obtaining output from covered computer programs. (*See* GPL Agreements, pp. 2, 3.) Moreover, this language does not change the nature of the Source Code Provision or somehow convert the right created by the Source Code Provision to one that is equivalent to an Exclusive Right protected by the Copyright Act.  For these reasons,

17

Vizio's reliance on the language of the GPL Agreements lacks merit and does not support its contention that SFC's state law claims are preempted by the Copyright Act.[2]

### C. Vizio Fails to Successfully Distinguish the Rulings in *Versata* and *Artifex*, Which Have Already Held That Claims Based on the Obligation to Produce Source Code Under the GPL Agreements Are Not Preempted by the Copyright Act.

SFC demonstrated in its moving papers that this Court should grant the Motion for the additional reason that two courts, including one in the Ninth Circuit, have already held that the obligation to provide source code found in Source Code Provision of the GPL Agreements is not subject to copyright preemption. (*See* Memo at 13:19-15:19, discussing *Versata Software, Inc. v. Ameriprise Fin., Inc*., 2014 U.S. Dist. LEXIS 30934 (W.D. Tex. Mar. 11, 2014) and *Artifex Software v. Hancom, Inc*., 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017). Vizio's attempt to distinguish *Versata* and *Artifex* fails.

Vizio first contends that *Versata* is distinguishable, and should be ignored by this Court, because the *Versata* court "failed to address … how the Source Code Provision allegedly transformed the nature of the action from a copyright claim." (Opp. at 19:6-8.) Vizio is incorrect—*Versata* specifically applied the "extra element" for copyright preemption in a manner that asked whether the extra element transformed the nature of the action, noting that the "extra element" test "asks whether the asserted cause of action requires proof of 'one or more qualitatively different elements' than a copyright infringement claim." *Versata*, 2014 U.S. Dist. LEXIS 30934, at *8, *quoting Carson v. Dynegy, Inc.,* 344 F.3d 446, 456 (5th Cir. 2003). *Versata* then went on to describe the

---

[2] For these same reasons, the fact that the Source Code Provision may be contained within a section of the GPL Agreements that discusses the conditions under which a licensee may copy and distribute the copyrighted work (*see* Opp. at 1:28-2:2, 4:20-22) does not magically convert the Source Code Provision to one that is equivalent to an Exclusive Right and thus subject to copyright preemption. The mere fact that the Source Code Provision may "relate[] to the exclusive rights of the copyright holder to control the copying and distribution under the Copyright Act" (Opp. at 4:23-24) does not somehow convert that provision into an Exclusive Right.

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

Source Code Provision at issue in the case as "separate and distinct from any copyright obligation" because "[c]opyright law imposes no open source obligations …" *Id.* at *14. Finally, *Versata* held that Ameriprise's claim for breach of the Source Code Provision "requires an 'extra element' in addition to reproduction or distribution: a failure to disclose the source code of the derivative software." *Id.* at *14-*15.

Vizio also asserts that *Versata* is distinguishable because the *Versata* court did not decide "whether the Source Code Provision was a condition or covenant of the license under California law." (Opp. 19:8-9.) Once again, Vizio is mistaken. The *Versata* court ***explicitly found*** that the Source Code Provision was a condition of the copyright license, stating that "the GPL allows for free use and redistribution of [the software] … on the condition the original licensor continues the open source trend and makes the source code freely available." *Versata*, 2014 U.S. Dist. LEXIS 30934, at *4.[3] Accordingly, *Versata* is directly on point, despite Vizio's flawed attempts to distinguish it, and supports this Court's granting of SFC's Motion.

Vizio's attempts to distinguish *Artifex* similarly lack merit. Vizio first asserts that *Artifex* is distinguishable because the *Artifex* court "did not make an affirmative finding that the Source Code Provision is the 'extra element,' but rather held the defendant did not meet its burden because it failed to explain why the Source Code Provision is not the 'extra element.'" (Opp. at 18:4-7.) Vizio has to meet this same burden here, however, because copyright preemption is an affirmative defense. *Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.,* 177 F. Supp. 2d 1050, 1056 (C.D. Cal. 2001). Vizio has failed to meet its burden, for all the reasons discussed herein and in SFC's moving papers, just as defendant Hancom failed to meet its burden in *Artifex*.

Second, Vizio mistakenly asserts that the *Artifex* court "did not address or explain how the GPLs' open source requirement would 'transform the nature of the action' into a qualitatively different claim ..." (Opp. at 18:19-20.) In fact, the *Aritfex* court

---

[3] Although the *Versata* court may have applied Texas law rather than California law, Vizio does not explain, and cannot explain, how this is a significant difference.

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF
SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

specifically stated that "[t]o avoid preemption under the second prong, the state law claim must protect rights which are qualitatively different from the copyright rights" and then held that Hancom "does not explain why the GNU GPL's open source requirement is not the required extra element …" *Artifex,* 2017 U.S. Dist. LEXIS 62815, at *8-*9, *10 (quotation and citation omitted).  Vizio simply is unhappy with the fulsomeness of the *Artifex* court's analysis.

Third, Vizio complains that the *Artifex* court did not address Ninth Circuit authority holding that "the violation of a condition of the license is only actionable under copyright law, not as a breach of contract." (Opp. at 18:26-19:1.)   As explained in Section II.A *supra*, Vizio disingenuously relies on a selective quotation from *MDY Industries* for this proposition, and *MDY Industries* simply does not so hold.

Finally, Vizio ignores the fact that the *Artifex* court specifically rejected Hancom's attempt to rely upon *Jacobsen II* (discussed in Section II.D *infra*), choosing instead to follow *Versata* for the proposition that "a failure to disclose the source code of the derivative software" constitutes the required "'extra element' in addition to reproduction or distribution." *Id*. at *9, *quoting Versata*, 2014 U.S. Dist. LEXIS 30934, at *5. This Court likewise should apply the holdings of *Versata* and *Artifex,* reject Vizio's flawed attempts to distinguish these cases, and grant the Motion.

### D.   *Jacobsen II is Distinguishable and Does Not Support Vizio's Assertion that SFC's State Law Claims Are Preempted By The Copyright Act*

Vizio's Opposition relies primarily on *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009) ("*Jacobsen II*"), asserting that it "addressed a similar situation" as that here. (Opp. at 16:8-9; *see also id.* at 16:9-25.) *Jacobsen II* is distinguishable and provides no reason for this Court to deny SFC's Motion, for several separate reasons.

First, *Jacobsen II* was about an entirely different FOSS agreement called the "Artistic License" and did not involve any Source Code Provision. *Id*. at 932. The Artistic License did not include a mandatory obligation to provide source code to recipients of the executable code and the breach of license claim in *Jacobsen* did not

include an allegation that source code had not been provided. *See Jacobsen v. Katzer,* 535 F.3d 1373, 1376-77 (Fed. Cir. 2008) ("*Jacobsen I*"). Contrary to Vizio's mistaken representation (Opp. at 17:17-20), the Artistic License at issue in *Jacobsen II* did not include a provision analogous to the Source Code Provision in the GPL Agreements and did not include an obligation "to make any modifications available to the public." (Opp. 17:19.) Rather, the Artistic License only required "a description of how the files or computer code had been changed from the original source code." *Jacobsen I*, 535 F.3d at 1376. For this reason alone, the situation in *Jacobsen II* is not similar to that here.

Second, the contractual provision alleged to have been breached in *Jacobsen II* was nothing more than a promise not to infringe copyright. It thus falls into a narrow exception to the general rule that claims for breach of contract are not preempted. *See, e.g.,* Memo at 13:1-11, *citing Rumble, Inc. v. Daily Mail*, 459 F. Supp. 3d 1294, 1299 (C.D. Cal. 2020); see also *Marshall & Swift/Boeckh, LLC v. URS Corp.,* 2009 U.S. Dist. LEXIS 139264, at *61 (C.D. Cal. Aug. 26, 2009) (finding preemption of a contract claim where the contractual term at issue was a prohibition against a "unauthorized copying of any portion" of the copyrighted work, i.e., a promise not to infringe).

Third, Vizio ignores the fact that the *Jacobsen II* court invited plaintiff to amend the complaint in a way that "demonstrat[ed] that there are rights or remedies available under the contract claims that are not otherwise available under the copyright claim." *Jacobsen II,* 609 F. Supp. 2d at 934. Here, as explained both here and in its moving papers, SFC has demonstrated that its right to obtain copies of the source code under the Source Code Provision of the GPL Agreements is not available under the Copyright Act.

In sum, Vizio's reliance on *Jacobsen II* is unavailing and provides no basis for this Court to deny the Motion.

## III.   VIZIO CANNOT USE EXTRINSIC EVIDENCE, STATEMENTS AND ARGUMENTS MADE IN UNRELATED PRIOR LITIGATION, OR PRE-LITIGATION COMMUNICATIONS TO DEFEAT THE MOTION

### A.   *The Extrinsic Evidence Relied Upon by Vizio is Irrelevant For Purposes of Deciding this Motion*

21

Throughout its Opposition, Vizio seeks to rely upon extrinsic evidence to defeat the Motion. Moreover, Vizio asserts that SFC's Complaint is worded to avoid federal subject matter jurisdiction over its claims (i.e., so-called "artful pleading"). (Opp. at 9:8-16.)  However, Vizio wholly misapplies the "artful pleading" doctrine.

"Under the 'artful pleading' doctrine, a court may recharacterize a plaintiff's state law causes of action as federal if the particular conduct complained of is governed exclusively by federal law. … This exception to the rules of removal is narrow and is only to be applied in exceptional circumstances." (*Garcia v. Lopez*, 2009 U.S. Dist. LEXIS 12622, at *2-*3 (C.D. Cal. Feb. 5).) Although it invokes the "artful pleading" doctrine, Vizio selectively omits that, as the party invoking it, it bears a "heavy burden" to show that SFC's claims are governed ***exclusively*** by federal law. (*See id.* at *4; *Redwood Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477, 479 (9th Cir. 1990) (recognizing "the strong bias against permitting removal where a plaintiff has chosen to proceed solely on state-law grounds".) As the *Garcia* court noted, in addressing the removal of a California state court action alleging a state law breach of contract claim: "It is well established that the party who brings a suit is master to decide what law he will rely upon, and if he can maintain his claim on both state and federal grounds, he may ignore the federal question and assert only a state law claim and defeat removal. ***That Plaintiffs could potentially state a Copyright Act claim based on the facts alleged does not mean that they must.  Plaintiffs are free to limit their causes of action as they wish.*** *Garcia*, 2009 U.S. Dist. LEXIS 12622, at *3-*4 (emphasis added; citations omitted); *accord Rains v. Criterion Sys.*, 80 F.3d 339, 344 (9th Cir. 1996).

"While perhaps theoretically distinct, the artful pleading doctrine in practice collapses into the complete preemption doctrine, because it can only be said that a claim alleged under state law necessarily arises under federal law where 'the particular conduct complained of [is] governed exclusively by federal law.'" (*Garcia*, 2009 U.S. Dist. LEXIS 12622, at *3, *quoting Heichman*, *v. Am. Tel. & Tel. Co.*, 943 F. Supp. 1212, 1219 (C.D. Cal. 1995).  "The artful pleading doctrine allows courts to 'delve beyond the face

of the state court complaint and find federal question jurisdiction' by 'recharacterizing a plaintiff's state-law claim as a federal claim.'" (*Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir. (Cal.) 2003) (citations omitted).)

Because SFC has established that its state law claims are not governed exclusively by federal law, the "artful pleading" doctrine does not apply. (*See, e.g.*, *Rains*, 80 F.3d at 344 ("The artful pleading doctrine does not permit defendants to achieve what they are trying to accomplish here: to rewrite a plaintiff's properly pleaded claim in order to remove it to federal court.").) The "well-pleaded complaint" doctrine prohibits this Court from considering extrinsic evidence from outside of the four corners of SFC's Complaint in ruling on jurisdictional issues. (*See Lippitt*, 340 F.3d at 1040.) This Court thus must disregard all such extrinsic evidence, including the extrinsic evidence submitted with Vizio's Opposition, as irrelevant for purposes of deciding this Motion.

### B. Vizio Cannot Bind SFC To Prior Statements And Arguments Made in Unrelated Litigation and Confidential Settlement Communications, Because They Are Irrelevant or Inadmissible.

To support its claims of preemption, Vizio asserts that SFC is bound by various statements it made before this litigation commenced, suggesting that a failure to comply with the GPL Agreements, including the Source Code Provision, may constitute copyright infringement. (*See* Opp. at 11:26-13:13.) However, those statements were all made either: (1) in the course of unrelated litigation that involved different issues, parties, and software, which are not binding on SFC, or (2) in pre-lawsuit settlement communications with Vizio which are inadmissible. Thus, even if the "artful pleading" doctrine were to apply, SFC is still not bound by these irrelevant or inadmissible statements and arguments, and they cannot defeat the Motion.

#### 1. Statements and Arguments Made in Unrelated Prior Litigation Are Not Binding on SFC In This Action

Vizio suggests that legal arguments made by SFC in the so-called "*BusyBox* litigation*" should be binding on, or at least be persuasive against, SFC in the present action. (*See* Opp. at 12:14-13:13; *see also* Declaration of Michael E. Williams in support

of Opp. ("Williams Decl."), ¶ 10 & Exh. "9" (complaint in *BusyBox* litigation) (the "BusyBox Complaint").)   Specifically, Vizio asserts that SFC's arguments in the *BusyBox* litigation—namely, that violations of the Source Code Provision may constitute copyright infringement—contradict its position in this action and qualify as admissions. (*See, e.g.*, Opp. at 12:14-16, 13:3-7.)   This assertion fundamentally misunderstands the nature of the *BusyBox* litigation and SFC's claims and completely misapplies relevant law, which clearly holds that such arguments are *not* binding on SFC.

The *BusyBox* litigation referenced by Vizio was a lawsuit brought in 2009 by copyright holder Erik Andersen ("Andersen") and SFC (as copyright enforcement agent) against Best Buy Co., Samsung, and twelve other commercial electronics distributors alleging copyright infringement of software created by Andersen titled "BusyBox."  (*See Software Freedom Conservancy, Inc. v. Best Buy Co.*, 2010 U.S. Dist. LEXIS 75208, at *1 (S.D.N.Y. Jul. 27) (hereafter, "*BusyBox*").) The copyright infringement claim brought in *BusyBox* sought to enforce rights completely separate and distinguishable from those asserted here. SFC and Andersen were not seeking to enforce the Source Code Provision against the defendants. Instead, they were only using defendants' failure to comply with that provision as evidence of a violation of the license, where such violation rendered any distribution of the software unauthorized and, thus, infringing.  ((*See* BusyBox Complaint, ¶¶ 24-28; *id.,* ¶ 32 ("Each Defendant's *distribution of products or firmware that contain BusyBox without approval or authorization by Plaintiffs infringes Plaintiffs'* exclusive copyrights in BusyBox pursuant to 17 U.S.C. § 501.") (emphasis added).)

In this action, by contrast, SFC solely seeks to enforce the Source Code Provision, as the allegations of the Complaint make clear. (*See, e.g.,* Cmplt., ¶ 115 (SFC "has a right" to the Source Code under the GPL Agreements); ¶ 120 (SFC "may seek to enforce the Source Code Provision against Vizio"); ¶ 121 (SFC "has a right to the Source Code …").) Vizio fails to explain, and indeed ***cannot*** explain, how SFC's right as a third party beneficiary to compel Vizio to disclose its source code constitutes an exclusive right under the Copyright Act.

Furthermore, SFC is not estopped from asserting positions that may differ with its arguments in prior litigation. Vizio's contrary assertions appear to conflate judicial **admissions** with judicial **estoppel**; the former is recognized as exclusively applicable to contrary statements made in the same litigation, while the latter may apply to statements made by a party in the same or prior litigation.  *See Nextdoor.com v. Abhyanker*, 2013 U.S. Dist. LEXIS 101440, at *28-*30 (N.D. Cal. Jul. 19, 2013 and cases cited therein); *accord Palumbo Design, LLC v. 1169 Hillcrest, LLC*, 2019 U.S. Dist. LEXIS 234198, at *19-*20 (C.D. Cal. Dec. 3, 2019).

Specifically, the doctrine of judicial estoppel is an equitable rule created "to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hamp. v. Maine*, 532 U.S. 742, 749-50 (2001) (quotations and citations omitted.)  As an equitable doctrine, courts have discretion whether to invoke judicial estoppel. *Id.* at 750.  There are three factors courts should consider in determining whether judicial estoppel applies to particular statements by a party: (1) "whether the party's later position is clearly inconsistent with its earlier position"; (2) "whether the party succeeded in persuading a court to accept its earlier position, creating a perception that the first or second court was misled"; and (iii) "whether the party seeking to assert an inconsistent position derives an unfair advantage or imposes an unfair detriment on the opposing party."  *See, e.g., Cont'l Cas. Co. v. Chatz*, 591 B.R. 396, 411-12 (N.D. Cal. 2018), *citing Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134 (9th Cir. 2012). Here, each of these factors weigh *heavily* against estoppel.

<u>First</u>, as explained above, SFC's arguments in *BusyBox* and in this action are easily distinguishable: in *BusyBox*, unauthorized distribution of software was the central claim; this action instead focuses solely on Vizio's failure to produce its source code, in violation of the GPL Agreements.  As a result, SFC's position in this action is not "clearly inconsistent" with its position in *BusyBox*, and the first factor fails.  *See, e.g., Flagship W., LLC v. Excel Realty Partners LP*, 337 Fed. App'x 679, 680 (9th Cir. 2009)

(positions not inconsistent where party did not affirmatively concede a contrary position that it later adopted).

Second, Vizio has provided no facts or evidence that would even imply that SFC's arguments in *BusyBox* "succeeded in persuading a court to accept its earlier position." (*Chatz*, 591 B.R. at 411-12.)  Indeed, as Vizio's own exhibits establish, SFC settled its claims against Samsung in that litigation.  (*See* Williams Decl., Exh. "7", at 1.)  "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *New Hamp.*, 532 U.S. at 750-51 (quotation omitted). Vizio thus has not, and cannot, establish the second factor.

Third, Vizio has similarly provided no facts or evidence that SFC "derives an unfair advantage or imposes an unfair detriment on the opposing party."  *Chatz*, 591 B.R. at 411-12.  As a general matter, this factor requires that the parties in the present litigation be the same or in privity to the parties from the prior litigation.  *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012). Vizio was not a named party in *BusyBox*, and no evidence has been submitted that Vizio is in privity with any of the named defendants there.  Moreover, a party does not derive an unfair advantage or impose an unfair detriment if the two positions are based on the same factual issues.  *See, e.g., Flagship W.*, 337 Fed. App'x at 681.

Furthermore, courts are only to apply the judicial estoppel doctrine in the most egregious of cases, i.e., "when a party's position is tantamount to a ***knowing misrepresentation to or even fraud on the court***."  *Milton H. Greene*, 692 F.3d at 994 (emphasis added). Neither Vizio nor the underlying facts themselves provides any basis for this Court to reach such a conclusion.

Accordingly, for all the above reasons, SFC's statements and arguments in unrelated litigation are not binding in this action and cannot be used by Vizio to establish that SFC's state law claims are preempted by the Copyright Act.

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT

**2.     The Pre-Lawsuit Correspondence Between SFC and Vizio Constitutes Confidential Settlement Communications and Is Inadmissible Under Rule 408(a) of the Federal Rules of Evidence**

Vizio also asserts that statements made by SFC to Vizio in pre-suit communications support its preemption claim, because SFC allegedly characterized its claims as "copyright infringement." (Opp. at 5:11-6:3.) Nowhere in its Opposition, however, does Vizio come forward with any legal authority demonstrating that these statements are admissible. In fact, these statements provide no basis to deny the Motion, for two separate reasons.

First, as explained in Section II.A *supra*, the fact that SFC may have characterized its claims as "copyright infringement" is of no import. Vizio's conduct may constitute both copyright infringement ***and*** a breach of the GPL Agreements, and SFC, as the master of its complaint, may choose whether to allege a claim for copyright infringement or rely solely on state law breach of contract claims.

Second, the exhibits submitted by Vizio containing such statements constitute confidential settlement communications, which are being offered to disprove the validity of, or to impeach or contradict, SFC's claims in this action. Therefore, Rule 408(a) of the Federal *Rules of Evidence* requires that such communications be excluded and disregarded by this Court as inadmissible.[4]  Rule 408(a) specifically provides that "conduct or a statement made during compromise negotiations about the claim" is not admissible "to impeach by a prior inconsistent statement or a contradiction." *See Fed. R. Evid.* 408(a)(2). Courts interpret these provisions broadly in support of its purpose: facilitating settlement negotiations.  This purpose, and the underlying policies it promotes, are so important that Rule 408(a) is interpreted to include not only explicit settlement offers but also any conduct or statements which relate to or facilitate efforts to compromise.  *See In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 2017 Bankr. LEXIS

---

[4] To respect the confidentiality of these communications and avoid any further unauthorized disclosures of the same, SFC does not reproduce or recite the contents of these communications in this section.

1869, at *14-*18 (Bankr. C.D. Cal. Jul. 6, 2007) ("Exploratory compromise negotiations that have not yet progressed to the point at which the parties are willing to exchange formal compromise offers still fall within the purview of FRE 408.")  Accordingly, the mere fact that a statement does not include an explicit settlement offer does not exclude it from Rule 408(a)'s ambit if the statement is intended to facilitate negotiations.  *See, e.g.*, *id.*

Additionally, SFC has separately submitted Evidentiary Objections to exclude these exhibits and references thereto, as they demonstrate that the pre-litigation correspondence between SFC and Vizio constitutes confidential settlement communications that are inadmissible under Rule 408(a).  This Court should grant SFC's Evidentiary Objections, rule that the pre-litigation correspondence submitted by Vizio is inadmissible, and ignore such communications when ruling on the Motion.

### C.  *Vizio's Baseless Assertions Regarding SFC's Alleged Misrepresentations Have No Relevance Whatsoever To This Motion*

Finally, Vizio asserts that SFC's Complaint and its Motion "contain numerous misrepresentations" regarding Vizio's purported compliance with the GPL Agreements. (Opp. at 6:4-6:7; *see also id.* at 6:8-8:3.) SFC disputes that it made any such misrepresentations and will address Vizio's baseless assertions at the appropriate time. Vizio fails to explain, however, and indeed cannot explain, how any of SFC's alleged misrepresentations have any bearing on whether SFC's state law breach of contract claims are preempted by the Copyright Act or whether this Court shall grant SFC's Motion and remand this action to state court.  If Vizio believes that SFC's Complaint contains purported misrepresentations, it may attempt to challenge those purported misrepresentations during trial or by motion for summary judgment. For purposes of this Motion, however, Vizio's assertions regarding such purported misrepresentations have no bearing on the issues before this Court and thus have no relevance whatsoever. Accordingly, this Court should ignore Vizio's baseless assertions when ruling on the Motion.

**IV.   CONCLUSION**

For all the foregoing reasons, and for all the reasons set forth in its moving papers and accompanying Evidentiary Objections, SFC respectfully requests that this Court grant this Motion and remand this action to the Orange County Superior Court.

DATED: April 29, 2022          **RICHARD G. SANDERS, PLLC**
                               **VAKILI & LEUS, LLP**


                          By: /s/ *Sa'id Vakili*
                               Sa'id Vakili, Esq.
                               David N. Schultz, Esq.
                               Richard Sanders, Esq.
                               Stephen P. Hoffman, Esq.
                               *Attorneys for Plaintiff Software Freedom*
                               *Conservancy, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*
*U.S.D.C. C.D. Cal. Case No.: 8:21-cv-01943-JLS-KES*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On April 29, 2022, I served the foregoing document described as **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF SOFTWARE FREEDOM CONSERVANCY, INC. TO REMAND ACTION TO STATE COURT** on all interested parties in this action at the addresses listed below, as follows:

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Michael E. Williams, Esq.
*michaelwilliams@quinnemanuel.com*
Daniel C. Posner, Esq.
*danposner@quinnemanuel.com*
John Z. Ying
*johnyin@quinnemanuel.com*
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

**213/443-3000** | Fax: 213/443-3100

*Counsel for Defendant Vizio, Inc.*

I hereby certify that on the 29th day of April 2022, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action.  The NEF will constitute service of the document.  Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

/s/ Jason C. Ming
Jason C. Ming