1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                  WESTERN DIVISION

4                      - - -

5      HONORABLE DEAN D. PREGERSON, DISTRICT JUDGE PRESIDING

6

7    SOFTWARE FREEDOM CONSERVANCY,    )
     INC.,                            )
8                                     )
           Plaintiffs,                )
9                                     )
                                      )
10                                    ) No. SACV 21-01943-JLS
           vs.                        )
11                                    )
                                      )
12                                    )
     VIZIO, INC., et al.,             )
13                                    )
           Defendants.                )
14   _____

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS

17   *PLAINTIFF'S MOTION TO REMAND TO ORANGE COUNTY SUPERIOR COURT*
                          *[14]*

18               LOS ANGELES, CALIFORNIA

19                FRIDAY, MAY 13, 2022

20

21   _____

22                 MARIA R. BUSTILLOS
                OFFICIAL COURT REPORTER
23                  C.S.R. 12254
                UNITED STATES COURTHOUSE
24               350 WEST 1ST STREET
                     SUITE 4455
25           LOS ANGELES, CALIFORNIA 90012
                   (213) 894-2739

1                          **A P P E A R A N C E S**

2

3

4       **ON BEHALF OF THE PLAINTIFFS,**
        **SOFTWARE FREEDOM**                    VAKILI and LEUS, LLP
5       **CONSERVANCY, INC.:**                  BY:  JOH. A. SCHLAFF, ESQ.
                                                3701 WILSHIRE BOULEVARD
6                                               SUITE 1135
                                                LOS ANGELES, CALIFORNIA 90010
7                                               (213)380-6010

8

9       **ON BEHALF OF THE DEFENDANTS,**
        **VIZIO, INC.:**                        QUINN, EMANUEL, URQUHART,
                                                OLIVER and SULLIVAN, LLP
10                                              BY:  MICHAEL E. WILLIAMS,
                                                ESQ.
11                                              865 S. FIGUEROA STREET
                                                10TH FLOOR
12                                              LOS ANGELES, CALIFORNIA 90017
                                                (213) 443-3000

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## I N D E X

2

                                                              PAGE
PLAINTIFF'S MOTION TO REMAND TO ORANGE COUNTY SUPERIOR COURT
[14]:                                                           4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; FRIDAY, MAY 13, 2022

2                              -o0o-

3              (COURT IN SESSION AT 10:35 A.M.)

4          THE COURTROOM DEPUTY:  Calling item number two,

5     SACV 21-01943-JLS:  *Software Freedom Conservancy, Inc. v.*

6     *Vizio, Inc., et al.*

7          Counsel, please state your appearances.

8          MR. SCHLAFF:  It's John Schlaff from the

9     Law Offices of Vakili and Leus, and I'm appearing on behalf

10    of Software Freedom Conservancy.

11         MR. WILLIAMS:  Good morning, Your Honor.

12    Michael Williams on behalf of Quinn Emanuel on behalf of

13    defendant Vizio.

14         THE COURT:  Good morning.  All right.  We're here

15    on the plaintiff's motion to remand and the defendant's

16    motion to dismiss.  Obviously, they are intertwined, but I am

17    going to focus for purposes of oral argument and any

18    questions I may have on the motion to remand today.  So with

19    that, it's plaintiff's motion, and we'll begin with

20    plaintiff's counsel.  And, again, I just may have a few

21    questions, because it is a little bit unusual.  There have

22    been an a few decisions -- related decisions, but let me hear

23    more.

24         MR. SCHLAFF:  Your Honor, this is John Schlaff.

25    First, I'd like to point out that as we mentioned in our

```
 1    papers, although, it is our motion, it is their burden
 2    to establish their right to be here.  This is clearly
 3    not appropriately brought before the federal court.  The
 4    rights that are at issue here are rights that are
 5    uniquely available through contract rather than
 6    copyright.  We are seeking specific enforcement of a
 7    provision of the agreement.  There's no mechanism under
 8    the copyright law for such specific enforcement.  This
 9    is not like any of the cases that they've cited in their
10    favor, and there are a few things in several of the
11    cases that they've cited in their favor, which actually
12    show the error in their argument, particularly, in
13    Jacobsen II, they actually quote language in
14    Jacobsen II at page 17 of their opposition.  And they
15    point out that in Jacobsen II, the Court says that the
16    test for whether something is exclusively within the
17    ambit of copyright, that you have to demonstrate
18    that there -- that -- that there are not rights or
19    remedies available under the Copyright claims that are
20    not otherwise available under the copyright law.
21    Clearly, we have remedies that we're seeking through the
22    contract action.  And all of the remedies that we're
23    seeking through the contract action, in fact, are
24    remedies that really are not available to us under the
25    copyright law.
```

1          And further, at MDC, the Court --  I don't know

2     that it's in MDC or MDY.  I think I'm --

3          THE COURT:  It wasn't MDC, was it?  I think

4     there's another --

5          MR. SCHLAFF:  Forgive me -- I'm just --

6          THE COURT:  MDY I think.

7          MR. SCHLAFF:  MDY, yes.  For some reason, I

8     keep wanting to call it MDC --

9          THE COURT:  That's the Metropolitan Detention

10    Center.  I only hear about that in criminal cases.

11                    (Laughter.)

12         MR. SCHLAFF:  In any event, Your Honor, in MDY

13    there's a hypothetical that's lifted with approval from

14    another case called *Storage Tech, Corp. v. Custom*

15    *Hardware*.  That's at 421 F.3d 1307.  The jump cite is

16    1315 through 16.  And there, the Court says, "Consider a

17    license in which the copyright owner grants a person the

18    right to make a -- make one and only one copy of a book

19    with the caveat that the licensee may not read the last

20    ten pages.  Obviously, a licensee who made a hundred

21    copies of the book could be liable for copyright

22    infringement, because copyright -- copying would violate

23    the Copyright Act's prohibition on reproduction and

24    would exceed the scope of the license.  Alternatively,

25    if the licensee made a single copy of the book, but read

1    the last ten pages, the only cause of action would be

2    for breach of contract, because reading a book does not

3    violate any right protected by copyright law.  And

4    before that, the -- in -- in quoting that hypothetical,

5    the MDY court says to recover for copyright infringement

6    based on a breach for license agreement, the copying

7    must exceed the scope of the defendant's license, and

8    the copyright owner's complaint must be grounded in the

9    exclusive right of a copyright.  So if it goes to the

10   actual copying, then there -- there's some -- then that

11   is within the ambit of copyright, but if you're seeking

12   remedies afterwards that involve a state court remedy

13   like specific performance, copyright has no exclusive

14   hold.  This is an extra right, and this is a clear extra

15   right case.  The -- the --

16            THE COURT:  Your papers are very good.  And

17   I've read them.  And so I mean, if there's something

18   else you'd like to highlight, I'll let you do it,

19   otherwise, I will go ahead and turn to counsel for

20   defendant.

21            MR. SCHLAFF:  Well, I'd like to reserve a few

22   minutes to whatever they say, but beyond that....

23            THE COURT:  Yes, you may do that.

24            MR. SCHLAFF:  But I'm here for your questions,

25   Your Honor.

1          THE COURT:  All right.  So, Mr. Williams, how

2     is this not a -- the sort of extra element?  How does

3     this not go beyond copyright law?

4          MR. WILLIAMS:  Sure.  Thank you, Your Honor.

5          This is, in fact, a textbook case of artful

6     pleading where the plaintiffs are trying to avoid

7     federal jurisdiction under the Copyright Act.  The --

8     the fact is and the MDY case, I believe, is very

9     significant to this case.  It makes clear that if the

10    condition -- if it's a condition that's violated and

11    that condition relates to an exclusive right under the

12    Copyright Act, then there's a claim for copyright

13    infringement.  If it's only a covenant which is just a

14    promise, then the claim is for breach of contract.

15    Here, the Court issue is the language in the general

16    public license that talks about the source code

17    provision.  That is contained within a section of the

18    license that makes clear that it is a condition.  The

19    condition clearly states that if you want to copy,

20    distribute or modify the software, all of which are

21    exclusive rights under the Copyright Act, you must do

22    these things, and namely, provide a copy of the source

23    code.  The license goes on to say that if you don't

24    comply, your license is terminated, your rights are

25    gone, and -- and you have no right to copy, distribute

1    or otherwise modify the software.  That is a -- a

2    typical claim tore copyright infringement.  And how do

3    we know this?  Well, the creator of the GPLs -- the free

4    software foundation -- makes clear in its frequently

5    asked questions, who has the power to enforce the GPL.

6            THE COURT:  Well, isn't -- I mean, but

7    that's -- they're frequently asked questions.  The

8    answer isn't really binding on the court.  Isn't it

9    their just informal way of saying, we hold the

10   copyright, and we enforce under the copyright law?

11           MR. WILLIAMS:  Well, it I think is instructive.

12   It's also -- it makes the license itself, which the

13   Court -- obviously, is a critical piece here -- the

14   license itself makes clear that it only covers

15   activities involving copying, distribution and

16   modification.  Each of those activities are exclusive

17   rights under the -- under the Copyright Act.  So the

18   question is --

19           THE COURT:  So let me -- let me just ask this

20   question very directly:  If there is a third party

21   beneficiary under the contract, how would that third

22   party beneficiary ever enforce the right to receive the

23   source code, if that's provided for in the agreement?

24           MR. WILLIAMS:  Well, I don't believe there is a

25   third-party beneficiary under the --

1          THE COURT:  Well, that would be for the state

2     court really to decide, right?

3          MR. WILLIAMS:  Well, it would, however --

4          THE COURT:  I'm asking more abstractly.

5          MR. WILLIAMS:  Sure.

6          THE COURT:  If there's a -- if there is a right

7     under the contract that the third-party beneficiary can

8     enforce the right to receive code, if it's framed that

9     way, how could they enforce it under the copyright law?

10          MR. WILLIAMS:  They can't.  And that assumes

11     that they have a right to receive the code, and that

12     sort of puts the cart before the horse, because what

13     we're talking about here is, this is a license that has

14     a clear condition.  If you want a copy -- if you want

15     the right to copy, distribute and modify the software,

16     you have to do these things.  If you don't do that, you

17     have stepped outside of the license.  License

18     terminates, and you're liable for copyrighting.  That's

19     distinct --

20          THE COURT:  But I think you're getting that --

21     the idea that this condition means that it's only

22     enforceable via copyright by an overly broad reading of

23     MDY.  I -- I tend to agree with the plaintiff that *MDY*

24     wasn't saying that you may not sue for breach of

25     contract in those circumstances where you may be able to

1    sue for copyright infringement.

2            MR. WILLIAMS:  But the problem with that

3    argument, Your Honor, and I believe their reply brief

4    essentially says that a party could elect between

5    copyright infringement or a breach of contract.  That is

6    entirely inconsistent with the very concept of

7    preemption, because if a party can elect a -- either

8    based upon the same conduct -- here it's the failure to

9    comply, alleged failure to comply with the source code

10   bridge.  If they can either elect a copyright claim or a

11   breach of contract claim, those rights are equivalent.

12   You can't have the breach of contract claim based upon

13   the same underlying misconduct.

14           THE COURT:  So let me -- let me ask about the

15   hypothetical that was raised in the case that

16   Mr. Schlaff just identified -- the one about reading the

17   last ten pages.  So let's say that -- that the copyright

18   holder says, you may make one copy, but you may not read

19   the last ton pages.  If you do, your -- your

20   copyright -- your rights terminate.  Are you saying that

21   because -- because they say that's a condition --

22   whatever condition they put, that becomes exclusive then

23   at that point?

24           MR. WILLIAMS:  No, Your Honor.  And MDY makes

25   that point very clear.  MDY says that one, it has to be

1    breached of a condition of the license, and that

2    condition must relate to an exclusive right under the

3    Copyright Act.  Here, the condition that is being

4    violated, the source code provision, relates

5    specifically to the copying distribution and

6    modification of the software.  So it meets the MDY

7    standard that says there has to be a nexus.  You

8    can't -- and MDY is a --

9            THE COURT:  Well, but the hypothetical he gave,

10   it created a nexus.  In other words, any condition that

11   the copyright holder places can be tied to, and if you

12   don't do -- if you do X or don't do X, this agreement

13   terminates.  Well, that's a condition then.  You

14   can't -- you -- you no longer have the right to

15   distribute or copy if you don't do X.

16           MR. WILLIAMS:  So, Your Honor, MDY specifically

17   addresses this issue, and it's at 629 F.3d -- let's see,

18   the pin cite appears to be 940, 941.  It says, "Here the

19   terms of use, Section 4, contains certain restrictions

20   that are grounded in Blizzard's exclusive rights of

21   copyright and other restrictions that are not.  For

22   instance, term of use Section 4(d) forbids creation of

23   derivative works based on *World of Warcraft* without

24   Blizzard's consent.  A player who violates this

25   prohibition would exceed the scope of their license and

```
 1    violate one of Blizzard's exclusive rights under the
 2    copyright.  In contrast, term of use force 4(C)(ii)
 3    prohibits a player's disruption of another player's game
 4    experience.  A player might violate this prohibition
 5    while playing the game by harassing another player with
 6    unsolicited instant messages.  Although, this conduct
 7    may violate the contractual covenant with Blizzard, it
 8    would not violate any of Blizzard's exclusive rights of
 9    copyright."  And it goes on to say, "Were we to hold
10    otherwise, Blizzard -- or any other software copyright
11    holder -- could designate any disfavored conduct during
12    software use as copyright infringement, by purporting to
13    condition the license on the player's abstention from
14    the disfavored conduct.  The rationale would be that
15    because the conduct occurs while the player's computer
16    is copying the software code into RAM in order for it to
17    run, the violation is copyright infringement.  This
18    would allow software copyright owners far greater rates
19    than Congress has generally confirmed under the
20    Copyright Act claim."  So, again, it addressed that.
21    It's that the condition has to be tied to the exclusive
22    right.  If it is, that's copyright infringement.  And
23    here, the condition that if you want you to copy, modify
24    or distribute the software, you must comply with it.
25    You must make the source code available upon request.
```

1    That's tied to the exclusive rights of the copyright

2    owner to copy, distribute or modify the software.

3          THE COURT:  All right.

4          MR. WILLIAMS:  If -- if there was some other --

5    and that's the -- the concern here is that there are no

6    cases -- and I would have gone through them -- and I can

7    distinguish them that -- that say -- that address the

8    issue that say a copyright holder could simply choose,

9    based upon the same conduct, whether to pursue copyright

10   infringement or breach of contract.  There are cases

11   that say you have a copyright infringement claim for

12   exceeding the scope of the license, and you have a

13   breach of contract claim for violation of some other

14   covenant, and there are cases that plaintiff cites

15   that -- that deal with that.  The *Effects* case from the

16   Ninth Circuit -- the case that Judge Kozinski offered,

17   that didn't hold that the parties can simply elect.  It

18   said there was -- in that case there was no written

19   license agreement.  So the question was, is there an

20   implied license.  If there's no implied license to use,

21   the -- the copyrighted material, then there's copyright

22   infringement.  If there is an implied license, then your

23   remedy is left to breach of contract.  So all of the

24   cases fall under the same rubric of whether the issue

25   involved is a condition that's tied to an exclusive

 1    right under the contract -- under the license.  And if

 2    so, your remedy is copyright.  Otherwise, to allow them

 3    to convert to a breach of contract claim would violate

 4    the very purpose behind preemption, is to not allow

 5    state law claims to interfere with what Congress has

 6    decided to be the exclusive rights.  And, again, because

 7    this is a case of artful pleading, the court can

 8    properly look at extrinsic evidence.  And in their --

 9    you know, I do want to address, they claim that -- you

10    know, our reference to the correspondence with them is

11    somehow inadmissible settlement discussions, but they

12    referenced their demand letter to us in their complaint,

13    none of which says it's for settlement purposes.

14         THE COURT:  Regardless of inadmissibility, I'm

15    not sure of relevance though.  I mean, I don't decide

16    what the Copyright Act means and whether it falls within

17    an exclusive copyright provision based on pre-litigation

18    arguments of one side or the other.

19         MR. WILLIAMS:  Understood, Your Honor, but it

20    demonstrates, we believe, the disingenuous nature of

21    their position, and so they -- leading up to this,

22    they -- they've agreed with all of our positions.  I

23    mean, Exhibit 2, the Williams' declaration -- which is

24    their demand letter -- is entirely consistent with the

25    arguments we've laid out as to why these claims are in

```
 1    effect.  It's -- Vizio has failed to comply with this
 2    particular source code provision; they instantly
 3    terminated all our rights, which then leads to give rise
 4    to a claim for copyright infringement.  That is their
 5    position.  That shows that what they've now put in to
 6    state court is an artful pleading way to try to avoid
 7    federal preemption, because they recognize they don't
 8    have the ability to bring a copyright claim, because
 9    they're not the copyright holders.  They're trying to
10    greatly expand the law here and -- and basically do away
11    with the preemption argument, because they're staying
12    the same conduct.  It's not just an essential element.
13    It has to be an essential element that transforms the
14    nature of the claim, but the conduct here is identical.
15    They're saying we failed to comply with the source code
16    provision, and, therefore, we're liable for breach of
17    contract, but if that's the condition to the license
18    that relates to the copying and modification of
19    distribution of the software --
20            THE COURT:  But -- but what is your limitation
21    on what relates to the copying right or distribution of
22    the software?  In other words, what you're saying is a
23    copyright holder could enter into a licensing agreement
24    that conditions anything on, if you violate -- if you
25    violate this term of the contract, you -- you are going
```

1    outside the scope of the -- of your license.  They could

2    say that about anything, correct?  You -- you are not

3    entitled to modify or distribute, unless you comply with

4    all of these different terms, and they could be along

5    the lines of the ones identified in MDY.  What -- how is

6    it that other than by -- by proclamation, you know,

7    the -- this is tied to distribution?  I mean, the -- as

8    the plaintiffs -- as the plaintiff points out, the right

9    they are seeking is greater -- it's greater

10   distribution.  In other words, it's essentially the

11   opposite of what is typically protected under copyright

12   law.  And it's -- in their view, whether correctly or

13   incorrectly -- to benefit them as third parties to a

14   contract.  And so they can't bring it as a copyright

15   claim.  The nature of the claim is one that is contrary

16   to exclusive rights under the copyright.  So you're

17   saying simply by the fact that the copyright holder has

18   linked it to distribution, means that -- that that's it;

19   that you can't meet the standard of an extra element

20   that changes the nature of the action.

21            MR. WILLIAMS:  Your Honor, it's no different

22   than the example you just gave, which is, if the

23   copyright holder said, you could make one copy of this,

24   and no more.  That's tied -- that condition is tied to

25   copying which is the copyright holder's exclusive right

```
 1    to control.  If -- this is not about the terms of use.
 2    The GPLs do not say you can -- you can't use this
 3    software to do A, B, C and D and that's a condition of
 4    the -- of the license.  Here, it's saying, if you want
 5    to make a copy or you want to distribute it, you have to
 6    do this.  They're intertwined with the exclusive rights
 7    under the Copyright Act.  So if, for example, you know,
 8    there's some other provision in the contract that says,
 9    you know, you agree -- and that's why the cases they
10    cite, the Altera case from the Ninth Circuit is readily
11    distinguishable, because there it dealt with the right
12    to use the software which is not an exclusive right
13    under the Copyright Act.  And it distinguished that from
14    the right to reproduce.
15         THE COURT:  What if the copyright holder were
16    to tie use of the software to distribution?  In other
17    words, if you use it in the following prohibited ways,
18    your distribution rights end.  You can't distribute it
19    to the extent you have distribution rights.  You can't
20    copy it.  What if they tie it to use?  If you use it in
21    the way that we don't authorize, you can't distribute.
22         MR. WILLIAMS:  Your Honor, I would have to know
23    what the actual language, because it comes down to the
24    contract interpretation, but if -- again, as the
25    Ninth Circuit has said, if it is -- if there's a nexus
```

1    between the -- an exclusive right and a condition, then

2    it's copyright infringement.  So if -- you know, I'd

3    have to see -- I mean, because again, *Altera* and *MDY*

4    dealt with terms of use that were violations of the --

5    of the agreement, but because they were used and not the

6    right to copy or distribute -- which are exclusive

7    rights -- the court found that they were only covenants.

8    So, again, I mean, it comes down to a question of how is

9    this -- I mean, it would -- it would essentially undo

10   any, you know, the *MDY* decision to say, that, well, I

11   mean, if you put any limitation on the ability to copy

12   or distribute or modify, then that is -- that meets the

13   standard then.  And that's exactly what the court in

14   Jacobsen II -- I mean, again, think about it in a sense

15   that there is no -- that what -- there is no extra

16   element.  I mean, here, the elements are identical.

17   They haven't identified what the -- how this element

18   transforms the nature of the claim.  I mean, that's a

19   significant issue here, because --

20          THE COURT:  I'll give you one more minute, and

21   then I'll give plaintiff a couple of minutes in

22   response, and then we need to move on to the next one.

23          MR. WILLIAMS:  Okay.  So, Your Honor, I think

24   that -- again, looking at the cases that they have cited

25   in their reply -- we have, for example, the *Crispin* case

 1    that talks about, you know, there, the breach of

 2    contract claim was based on a different term than the

 3    copyright infringement claim.  Vizio's position is not

 4    that you can never have a case which a breach of

 5    contract claim and a copyright claim coexist, but you

 6    can't have a case where the breach of contract claim and

 7    the copyright infringement claim are based on the

 8    identical conduct, because at that point, they're

 9    equivalent and under Section 301, the state law claim is

10    preempted.  And we -- and, again, I believe that the --

11    the language of this license agreement makes it clear

12    that you terminate, you go outside, you exceed the

13    scope, that gives rise to the claim for copyright

14    infringement.  That's how you determine if this is a

15    copyright case or a contract case.  We believe it

16    clearly is a -- a copyright case, and they have artfully

17    pled around it.  And their positions in prior

18    litigation -- and even with us previously is -- is

19    indicative of the fact that this is an artful pled

20    complaint.

21          THE COURT:  All right.  Thank you.

22    Mr. Schlaff, I'll just give you another minute or so.

23          MR. SCHLAFF:  Your Honor, first of all, this

24    whole condition covenant thing that they're putting

25    before Your Honor, they're importing from a series of

1    cases that are about a litigant trying to open the door

2    to copyright, to enforce a right through copyright as

3    opposed to breach of contract.  In the *Sun Microsystems*

4    case, for example, there's an attempt to go through

5    copyright, because there's a -- at that time, there was

6    presumption of irreparable harm, and they wanted that

7    presumption.  The cases that we've cited are under the

8    Ninth Circuit about copyright and contract cases being

9    able to coexist, are myriad.  The *MDY* case talks --

10   specifically says, contractual rights are much broader

11   than the right under a copyright.  Copyrights now --

12   contract rights are broader.  Their whole analysis

13   ignores the extra element test, and it ignores the

14   language that they, themselves quote that say an extra

15   element is not only an extra element giving rise to

16   the -- the cause of action, but an extra remedy.

17   There's a remedy that you can't get through copyright.

18   You can get it through state law cases.  And

19   there's simply nothing that supports their position.

20   They've taken --

21        THE COURT:  So are you -- so is the plaintiff

22   conceding that this is a -- that there is a covenant

23   condition distinction and that this is a condition?

24        MR. SCHLAFF:  I don't think that there is a

25   covenant condition distinction for whether or not you

1   can assert a contract cause of action.  They're taking a

2   distinction that that was -- that was written out in a

3   series of cases that were about whether the plaintiff

4   got to use the presumption of irreparable harm under --

5   under copyright.  And it might be -- that analysis might

6   be pertinent to that kind of case, but it's irrelevant

7   to this case.

8         THE COURT:  All right.  All right.  I think I

9   have enough information.  And I appreciate the

10   arguments, both in the papers and here today.  I think

11   that your papers were very good.  So I appreciate that.

12   And the matter will be taken under submission, and the

13   Court's ruling will be posted on the docket.

14         MR. WILLIAMS:  Your Honor, just as a

15   housekeeping matter, you had mentioned the motion to

16   dismiss.  If the Court may recall, the parties that

17   originally agreed to have the motion to dismiss and the

18   remand motion set for, I believe it was June 3rd, and

19   then the Court advanced the remand motion hearing to

20   today.  So our -- we have a reply brief that is due on

21   the motion to dismiss next Friday, the 20th which is two

22   weeks before that scheduled hearing.  So I just wanted

23   to clarify that that was on a separate track, based upon

24   the stipulated court order?

25         THE COURT:  Oh, I wasn't sure that we had done

1    it that way.  So that was my fault, I suppose in

2    introducing the case, because I thought that both were

3    in front of me, but I focused on remand first for

4    obvious reasons.  One does not decide a motion to

5    dismiss until one has decided remand.  So when is your

6    reply brief due?

7              MR. WILLIAMS:  A week from today, the 20th.

8              THE COURT:  All right.  If I think that I need

9    more time, I will -- I will let you know, and we'll move

10   that; but for right now, I don't think anything else

11   needs to take place on that.

12             MR. WILLIAMS:  Okay.  Thank you, Your Honor.

13             THE COURT:  I mean, I don't have to change

14   anything just yet.  All right.  Okay.  Thank you, both.

15             MR. SCHLAFF:  Thank you, Your Honor.

16             MR. WILLIAMS:  Thank you, Your Honor.

17                (Whereupon, proceeding adjourned.)

18                         - - -

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3

4

5     SOFTWARE FREEDOM CONSERVANCY,      :

6     INC.                                :    No. SACV 21-01943-JLS

7                     vs.                 :

8     VIZIO, INC., et al.

9

10

11   I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

12   UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

13   CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

14   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

15   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

16   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

17   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

18   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

19   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

20   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

21   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

22

23   /S/_____          __07/02/2022__

24   MARIA R. BUSTILLOS                    DATE
     OFFICIAL REPORTER
25

25

## /

/S [1] - 24:23

## 0

07/02/2022 [1] - 24:23

## 1

10:35 [1] - 4:3
10TH [1] - 2:11
1135 [1] - 2:6
12254 [1] - 1:23
13 [2] - 1:19, 4:1
1307 [1] - 6:15
1315 [1] - 6:16
14 [2] - 1:17, 3:3
16 [1] - 6:16
17 [1] - 5:14
1ST [1] - 1:24

## 2

2 [1] - 15:23
2022 [2] - 1:19, 4:1
20th [2] - 22:21, 23:7
21-01943-JLS [3] - 1:10, 4:5, 24:6
213 [2] - 1:25, 2:12
213)380-6010 [1] - 2:7
28 [1] - 24:14

## 3

301 [1] - 20:9
350 [1] - 1:24
3701 [1] - 2:5
3rd [1] - 22:18

## 4

4 [2] - 3:3, 12:19
4(C)(ii [1] - 13:2
4(d [1] - 12:22
421 [1] - 6:15
443-3000 [1] - 2:12
4455 [1] - 1:24

## 6

629 [1] - 12:17

## 7

753 [1] - 24:13

## 8

865 [1] - 2:11
894-2739 [1] - 1:25

## 9

90010 [1] - 2:6
90012 [1] - 1:25
90017 [1] - 2:12
940 [1] - 12:18
941 [1] - 12:18

## A

A.M [1] - 4:3
ability [2] - 16:8, 9:11
able [2] - 10:25, 21:9
ABOVE [1] - 24:16
ABOVE-ENTITLED [1] - 24:16
abstention [1] - 13:13
abstractly [1] - 10:4
Act [9] - 8:7, 8:12, 8:21, 9:17, 12:3, 13:20, 15:16, 18:7, 18:13
Act's [1] - 6:23
action [6] - 5:22, 5:23, 7:1, 17:20, 21:16, 22:1
activities [2] - 9:15, 9:16
actual [2] - 7:10, 18:23
address [2] - 14:7, 15:9
addressed [1] - 13:20
addresses [1] - 12:17
adjourned [1] - 23:17
advanced [1] - 22:19
afterwards [1] - 7:12
agree [2] - 10:23, 18:9
agreed [1] - 15:22, 22:17
agreement [8] - 5:7, 7:6, 9:23, 12:12, 14:19, 16:23, 19:5, 20:11
ahead [1] - 7:19
al [3] - 1:12, 4:6, 24:8
alleged [1] - 11:9
allow [3] - 13:18, 15:2, 15:4
Altera [2] - 18:10, 19:3
alternatively [1] - 6:24
ambit [2] - 5:17, 7:11
analysis [2] - 21:12, 22:5
AND [3] - 24:11, 24:14, 24:16
AND/OR [1] - 24:20
ANGELES [5] - 1:18, 1:25, 2:6, 2:12, 4:1

answer [1] - 9:8
ANY [1] - 24:19
appearances [1] - 4:7
appearing [1] - 4:9
appreciate [2] - 22:9, 22:11
appropriately [1] - 5:3
approval [1] - 6:13
ARE [1] - 24:20
argument [4] - 4:17, 5:12, 11:3, 16:11
arguments [3] - 15:18, 15:25, 22:10
artful [4] - 8:5, 15:7, 16:6, 20:19
artfully [1] - 20:16
assert [1] - 22:1
assumes [1] - 10:10
AT [1] - 4:3
attempt [1] - 21:4
authorize [1] - 18:21
available [5] - 5:5, 5:19, 5:20, 5:24, 13:25
avoid [2] - 8:6, 16:6

## B

based [9] - 7:6, 11:8, 11:12, 12:23, 14:9, 15:17, 20:2, 20:7, 22:23
becomes [1] - 11:22
begin [1] - 4:19
BEHALF [3] - 2:4, 2:8
behalf [3] - 4:9, 4:12
behind [1] - 15:4
beneficiary [4] - 9:21, 9:22, 9:25, 10:7
benefit [1] - 17:13
between [2] - 11:4, 19:1
beyond [2] - 7:22, 8:3
binding [1] - 9:8
bit [1] - 4:21
Blizzard [1] - 13:7, 13:10
Blizzard's [4] - 12:20, 12:24, 13:1, 13:8
book [4] - 6:18, 6:21, 6:25, 7:2
BOULEVARD [1] - 2:5
breach [16] - 7:2, 7:6, 8:14, 10:24, 11:5, 11:11, 11:12, 14:10, 14:13, 14:23, 15:3, 16:16, 20:1, 20:4, 20:6, 21:3
breached [1] - 12:1
bridge [1] - 11:10
brief [1] - 11:3, 22:20, 23:6
bring [2] - 16:8, 17:14
broad [1] - 10:22
broader [2] - 21:10,

21:12
brought [1] - 5:3
burden [1] - 5:1
BUSTILLOS [3] - 1:22, 24:11, 24:24
BY [2] - 2:5, 2:10

## C

C.S.R [1] - 1:23
CALIFORNIA [7] - 1:2, 1:18, 1:25, 2:6, 2:12, 4:1, 24:13
cart [1] - 10:12
case [22] - 6:14, 7:15, 8:5, 8:8, 8:9, 11:15, 14:15, 14:16, 14:18, 15:7, 18:10, 19:25, 20:4, 20:6, 20:15, 20:16, 21:4, 21:9, 22:6, 22:7, 23:2
cases [14] - 5:9, 5:11, 6:10, 14:6, 14:10, 14:14, 14:24, 18:9, 19:24, 21:1, 21:7, 21:8, 21:18, 22:3
caveat [1] - 6:19
Center [1] - 6:10
CENTRAL [2] - 1:2, 24:12
certain [1] - 12:19
CERTIFY [1] - 24:13
change [1] - 23:13
changes [1] - 17:20
CHARGED [1] - 24:19
choose [1] - 14:8
CIRCUIT [1] - 24:19
Circuit [4] - 14:16, 18:10, 18:25, 21:8
circumstances [1] - 10:25
cite [3] - 6:15, 12:18, 18:10
cited [4] - 5:9, 5:11, 19:24, 21:7
cites [1] - 14:14
claim [25] - 8:12, 8:14, 9:2, 11:10, 11:11, 11:12, 13:20, 14:11, 14:13, 15:3, 15:9, 16:4, 16:8, 16:14, 17:15, 19:18, 20:2, 20:3, 20:5, 20:6, 20:7, 20:9, 20:13
claims [3] - 5:19, 15:5, 15:25
clarify [1] - 22:23
clear [8] - 7:14, 8:9, 8:18, 9:4, 9:14, 10:14, 11:25, 20:11
clearly [4] - 5:2, 5:21, 8:19, 20:16
code [11] - 8:16, 8:23, 9:23, 10:8, 10:11, 11:9, 12:4, 13:16,

13:25, 16:2, 16:15
CODE [1] - 24:14
coexist [2] - 20:5, 21:9
complaint [3] - 7:8, 15:12, 20:20
comply [7] - 8:24, 11:9, 13:24, 16:1, 16:15, 17:3
computer [1] - 13:15
conceding [1] - 21:22
concept [1] - 11:6
concern [1] - 14:5
condition [26] - 8:10, 8:11, 8:18, 8:19, 10:14, 10:21, 11:21, 11:22, 12:1, 12:2, 12:3, 12:10, 12:13, 13:13, 13:21, 13:23, 14:25, 16:17, 17:24, 18:3, 19:1, 20:24, 21:23, 21:25
conditions [1] - 16:24
conduct [9] - 11:8, 13:6, 13:11, 13:14, 13:15, 14:9, 16:12, 16:14, 20:8
CONFERENCE [2] - 24:18, 24:21
confirmed [1] - 13:19
CONFORMANCE [1] - 24:17, 24:20
Congress [2] - 13:19, 15:5
consent [1] - 12:24
CONSERVANCY [3] - 1:7, 2:5, 24:5
Conservancy [2] - 4:5, 4:10
Consider [1] - 6:16
consistent [1] - 15:24
contained [1] - 8:17
contains [1] - 12:19
contract [29] - 5:5, 5:22, 5:23, 7:2, 8:14, 9:21, 10:7, 10:25, 11:5, 11:11, 11:12, 14:10, 14:13, 14:23, 15:1, 15:3, 16:17, 16:25, 17:14, 18:8, 18:24, 20:2, 20:5, 20:6, 20:15, 21:3, 21:8, 21:12, 22:1
contractual [2] - 13:7, 21:10
contrary [1] - 17:15
contrast [1] - 13:2
control [1] - 18:1
convert [1] - 15:3
copies [1] - 6:21
copy [16] - 6:18, 6:25, 8:19, 8:22, 8:25, 10:14, 10:15, 11:18, 12:15, 13:23, 14:2, 17:23, 18:5, 18:20, 19:6, 19:11
copying [9] - 6:22,

7:6, 7:10, 9:15, 12:5,
13:16, 16:18, 16:21,
17:25
**copyright** [67] - 5:6,
5:8, 5:17, 5:20, 5:25,
6:17, 6:21, 6:22, 7:3,
7:5, 7:8, 7:9, 7:11,
7:13, 8:3, 8:12, 9:2,
9:10, 10:9, 10:22,
11:1, 11:5, 11:10,
11:17, 11:20, 12:11,
12:21, 13:2, 13:9,
13:10, 13:12, 13:17,
13:18, 13:22, 14:1,
14:8, 14:9, 14:11,
14:21, 15:2, 15:17,
16:4, 16:8, 16:9,
16:23, 17:11, 17:14,
17:16, 17:17, 17:23,
17:25, 18:15, 19:2,
20:3, 20:5, 20:7,
20:13, 20:15, 20:16,
21:2, 21:5, 21:8,
21:11, 21:17, 22:5
**Copyright** [11] - 5:19,
6:23, 8:7, 8:12, 8:21,
9:17, 12:3, 13:20,
15:16, 18:7, 18:13
**copyrighted** [1] -
14:21
**copyrighting** [1] -
10:18
**copyrights** [1] - 21:11
**Corp** [1] - 6:14
**CORRECT** [1] - 24:15
**correct** [1] - 17:2
**correctly** [1] - 17:12
**correspondence** [1] -
15:10
**counsel** [3] - 4:7,
4:20, 7:19
**COUNTY** [2] - 1:17,
3:2
**couple** [1] - 19:21
**court** [10] - 5:3, 7:5,
7:12, 9:8, 10:2, 15:7,
16:6, 19:7, 19:13,
22:24
**COURT** [33] - 1:1,
1:17, 1:22, 3:2, 4:3,
4:14, 6:3, 6:6, 6:9,
7:16, 7:23, 8:1, 9:6,
9:19, 10:1, 10:4,
10:6, 10:20, 11:14,
12:9, 14:3, 15:14,
16:20, 18:15, 19:20,
20:21, 21:21, 22:8,
22:25, 23:8, 23:13,
24:11, 24:12
**Court** [7] - 5:15, 6:1,
6:16, 8:15, 9:13,
22:16, 22:19
**Court's** [1] - 22:13
**COURTHOUSE** [1] -
1:23
**COURTROOM** [1] -

4:4
**covenant** [6] - 8:13,
13:7, 14:14, 20:24,
21:22, 21:25
**covenants** [1] - 19:7
**covers** [1] - 9:14
**created** [1] - 12:10
**creation** [1] - 12:22
**creator** [1] - 9:3
**criminal** [1] - 6:10
**Crispin** [1] - 19:25
**critical** [1] - 9:13
**custom** [1] - 6:14

## D

**DATE** [1] - 24:24
**deal** [1] - 14:15
**dealt** [2] - 18:11, 19:4
**DEAN** [1] - 1:5
**decide** [3] - 10:2,
15:15, 23:4
**decided** [2] - 15:6,
23:5
**decision** [1] - 19:10
**decisions** [2] - 4:22
**declaration** [1] - 15:23
**defendant** [2] - 4:13,
7:20
**defendant's** [2] - 4:15,
7:7
**Defendants** [1] - 1:13
**DEFENDANTS** [1] -
2:8
**demand** [2] - 15:12,
15:24
**demonstrate** [1] - 5:17
**demonstrates** [1] -
15:20
**DEPOSIT** [1] - 24:20
**DEPUTY** [1] - 4:4
**derivative** [1] - 12:23
**designate** [1] - 13:11
**Detention** [1] - 6:9
**determine** [1] - 20:14
**different** [3] - 17:4,
17:21, 20:2
**directly** [1] - 9:20
**discussions** [1] -
15:11
**disfavored** [2] - 13:11,
13:14
**disingenuous** [1] -
15:20
**dismiss** [5] - 4:16,
22:16, 22:17, 22:21,
23:5
**disruption** [1] - 13:3
**distinct** [1] - 10:19
**distinction** [3] - 21:23,
21:25, 22:2
**distinguish** [1] - 14:7
**distinguishable** [1] -
18:11
**distinguished** [1] -

18:13
**distribute** [12] - 8:20,
8:25, 10:15, 12:15,
13:24, 14:2, 17:3,
18:5, 18:18, 18:21,
19:6, 19:12
**distribution** [10] -
9:15, 12:5, 16:19,
16:21, 17:7, 17:10,
17:18, 18:16, 18:18,
18:19
**DISTRICT** [5] - 1:1,
1:2, 1:5, 24:12
**DIVISION** [1] - 1:3
**DO** [1] - 24:13
**docket** [1] - 22:13
**done** [1] - 22:25
**door** [1] - 21:1
**down** [2] - 18:23, 19:8
**due** [2] - 22:20, 23:6
**during** [1] - 13:11

## E

**effect** [1] - 16:1
**Effects** [1] - 14:15
**either** [2] - 11:7, 11:10
**elect** [4] - 11:4, 11:7,
11:10, 14:17
**element** [9] - 8:2,
16:12, 16:13, 17:19,
19:16, 19:17, 21:13,
21:15
**elements** [1] - 19:16
**EMANUEL** [1] - 2:9
**Emanuel** [1] - 4:12
**end** [1] - 18:18
**enforce** [6] - 9:5, 9:10,
9:22, 10:8, 10:9,
21:2
**enforceable** [1] -
10:22
**enforcement** [2] - 5:6,
5:8
**enter** [1] - 16:23
**entirely** [2] - 11:6,
15:24
**ENTITLED** [1] - 24:16
**entitled** [1] - 17:3
**equivalent** [2] - 11:11,
20:9
**error** [1] - 5:12
**ESQ** [2] - 2:5, 2:10
**essential** [2] - 16:12,
16:13
**essentially** [3] - 11:4,
17:10, 19:9
**establish** [1] - 5:2
**et** [3] - 1:12, 4:26, 24:8
**event** [1] - 6:12
**evidence** [1] - 15:23
**exactly** [1] - 19:13
**example** [4] - 17:22,
18:7, 19:25, 21:4
**exceed** [1] - 6:24, 7:7,

12:25, 20:12
**exceeding** [1] - 14:12
**exclusive** [21] - 7:9,
7:13, 8:11, 8:21,
9:16, 11:22, 12:2,
12:20, 13:1, 13:8,
13:21, 14:1, 14:25,
15:6, 15:17, 17:16,
17:25, 18:6, 18:12,
19:1, 19:6
**exclusively** [1] - 5:16
**Exhibit** [1] - 15:23
**expand** [1] - 16:10
**experience** [1] - 13:4
**extent** [1] - 18:19
**extra** [9] - 7:14, 8:2,
17:19, 19:15, 21:13,
21:14, 21:15, 21:16
**extrinsic** [1] - 15:8

## F

**F.3d** [2] - 6:15, 12:17
**fact** [5] - 5:23, 8:5, 8:8,
17:17, 20:19
**failed** [2] - 16:1, 16:15
**failure** [2] - 11:8, 11:9
**fall** [1] - 14:24
**falls** [1] - 15:16
**far** [1] - 13:18
**fault** [1] - 23:1
**favor** [2] - 5:10, 5:11
**federal** [3] - 5:3, 8:7,
16:7
**FEE** [1] - 24:19
**FEES** [1] - 24:19
**few** [4] - 4:20, 4:22,
5:10, 7:21
**FIGUEROA** [1] - 2:11
**first** [3] - 4:25, 20:23,
23:3
**FLOOR** [1] - 2:11
**focus** [1] - 4:17
**focused** [1] - 23:3
**following** [1] - 18:17
**FOR** [3] - 24:11,
24:12, 24:19
**forbids** [1] - 12:22
**force** [1] - 13:2
**FOREGOING** [1] -
24:14
**forgive** [1] - 6:5
**FORMAT** [1] - 24:17
**foundation** [1] - 9:4
**framed** [1] - 10:8
**free** [1] - 9:3
**Freedom** [2] - 4:5,
4:10
**FREEDOM** [3] - 1:7,
2:4, 24:5
**frequently** [2] - 9:4,
9:7
**Friday** [1] - 22:21
**FRIDAY** [2] - 1:19, 4:1
**front** [1] - 23:3

## G

**game** [2] - 13:3, 13:5
**general** [1] - 8:15
**generally** [1] - 13:19
**GPL** [1] - 9:5
**GPLs** [2] - 9:3, 18:2
**grants** [1] - 6:17
**greater** [3] - 13:18,
17:9
**greatly** [1] - 16:10
**grounded** [2] - 7:8,
12:20

## H

**harassing** [1] - 13:5
**Hardware** [1] - 6:15
**harm** [2] - 21:6, 22:4
**hear** [2] - 4:22, 6:10
**hearing** [2] - 22:19,
22:22
**HELD** [1] - 24:16
**HEREBY** [1] - 24:13
**highlight** [1] - 7:18
**hold** [4] - 7:14, 9:9,
13:9, 14:17
**holder** [8] - 11:18,
12:11, 13:11, 14:8,
16:23, 17:17, 17:23,
18:15
**holder's** [1] - 17:25
**holders** [1] - 16:9
**Honor** [18] - 4:11,
4:24, 6:12, 7:25, 8:4,
11:3, 11:24, 12:16,
15:19, 17:21, 18:22,
19:23, 20:23, 20:25,
22:14, 23:12, 23:15,
23:16
**HONORABLE** [1] - 1:5
**horse** [1] - 10:12
**housekeeping** [1] -
22:15
**hundred** [1] - 6:20
**hypothetical** [4] -
6:13, 7:4, 11:15,
12:9

## I

**idea** [1] - 10:21
**identical** [3] - 16:14,
19:16, 20:8
**identified** [3] - 11:16,
17:5, 19:17
**ignores** [2] - 21:13
**II** [4] - 5:13, 5:14, 5:15,
19:14
**implied** [3] - 14:20,
14:22
**importing** [1] - 20:25
**IN** [5] - 4:3, 24:11,

24:16, 24:17, 24:20
**inadmissibility** [1] - 15:14
**inadmissible** [1] - 15:11
**INC** [6] - 1:7, 1:12, 2:5, 2:9, 24:6, 24:8
**Inc** [2] - 4:5, 4:6
**inconsistent** [1] - 11:6
**incorrectly** [1] - 17:13
**indicative** [1] - 20:19
**informal** [1] - 9:9
**information** [1] - 22:9
**infringement** [17] - 6:22, 7:5, 8:13, 9:2, 11:1, 11:5, 13:12, 13:17, 13:22, 14:10, 14:11, 14:22, 16:4, 19:2, 20:3, 20:7, 20:14
**instance** [1] - 12:22
**instant** [1] - 13:6
**instantly** [1] - 16:2
**instructive** [1] - 9:11
**interfere** [1] - 15:5
**interpretation** [1] - 18:24
**intertwined** [2] - 4:16, 18:6
**introducing** [1] - 23:2
**involve** [1] - 7:12
**involved** [1] - 14:25
**involving** [1] - 9:15
**irrelevant** [1] - 22:6
**irreparable** [2] - 21:6, 22:4
**IS** [2] - 24:14, 24:17
**issue** [6] - 5:4, 8:15, 12:17, 14:8, 14:24, 19:19
**item** [1] - 4:4
**itself** [2] - 9:12, 9:14

### J

**Jacobsen** [4] - 5:13, 5:14, 5:15, 19:14
**JOH** [1] - 2:5
**John** [2] - 4:8, 4:24
**JUDGE** [1] - 1:5
**Judge** [1] - 14:16
**JUDICIAL** [2] - 24:18, 24:21
**jump** [1] - 6:15
**June** [1] - 22:18
**jurisdiction** [1] - 8:7

### K

**keep** [1] - 6:8
**kind** [1] - 22:6
**Kozinski** [1] - 14:16

### L

**laid** [1] - 15:25
**language** [5] - 5:13, 8:15, 18:23, 20:11, 21:14
**last** [4] - 6:19, 7:1, 11:17, 11:19
**Laughter** [1] - 6:11
**Law** [1] - 4:9
**law** [12] - 5:8, 5:20, 5:25, 7:3, 8:3, 9:10, 10:9, 15:5, 16:10, 17:12, 20:9, 21:18
**leading** [1] - 15:21
**leads** [1] - 16:3
**left** [1] - 14:23
**LESS** [1] - 24:19
**letter** [2] - 15:12, 15:24
**LEUS** [1] - 2:4
**Leus** [1] - 4:9
**liable** [6] - 6:21, 10:18, 16:16
**license** [26] - 6:17, 6:24, 7:6, 7:7, 8:16, 8:18, 8:23, 8:24, 9:12, 9:14, 10:13, 10:17, 12:1, 12:25, 13:13, 14:12, 14:19, 14:20, 14:22, 15:1, 16:17, 17:1, 18:4, 20:11
**licensee** [3] - 6:19, 6:20, 6:25
**licensing** [1] - 16:23
**lifted** [1] - 6:13
**limitation** [2] - 16:20, 19:11
**lines** [1] - 17:5
**linked** [1] - 17:18
**litigant** [1] - 21:1
**litigation** [2] - 15:17, 20:18
**LLP** [2] - 2:4, 2:9
**look** [1] - 15:8
**looking** [1] - 19:24
**LOS** [5] - 1:18, 1:25, 2:6, 2:12, 4:1

### M

**MARIA** [3] - 1:22, 24:11, 24:24
**material** [1] - 14:21
**matter** [2] - 22:12, 22:15
**MATTER** [1] - 24:16
**MAY** [2] - 1:19, 4:1
**MDC** [4] - 6:1, 6:2, 6:3, 6:8
**MDY** [17] - 6:2, 6:6, 6:7, 6:12, 7:5, 8:8, 10:23, 11:24, 11:25,

12:6, 12:8, 12:16, 17:5, 19:3, 19:10, 17:6, 18:25
**mean** [13] - 7:17, 9:6, 15:15, 15:23, 17:7, 19:3, 19:8, 19:9, 19:11, 19:14, 19:16, 19:18, 23:13
**means** [3] - 10:21, 15:16, 17:18
**mechanism** [1] - 5:7
**meet** [1] - 17:19
**meets** [2] - 12:6, 19:12
**mentioned** [4] - 4:25, 22:15
**messages** [1] - 13:6
**Metropolitan** [1] - 6:9
**MICHAEL** [1] - 2:10
**Michael** [1] - 4:12
**Microsystems** [1] - 21:3
**might** [3] - 13:4, 22:5
**minute** [2] - 19:20, 20:22
**minutes** [2] - 7:22, 19:21
**misconduct** [1] - 11:13
**modification** [3] - 9:16, 12:6, 16:18
**modify** [7] - 8:20, 9:1, 10:15, 13:23, 14:2, 17:3, 19:12
**morning** [2] - 4:11, 4:14
**MOTION** [2] - 1:17, 3:2
**motion** [11] - 4:15, 4:16, 4:18, 4:19, 5:1, 22:15, 22:17, 22:18, 22:19, 22:21, 23:4
**move** [2] - 19:22, 23:9
**MR** [29] - 4:8, 4:11, 4:24, 6:5, 6:7, 6:12, 7:21, 7:24, 8:4, 9:11, 9:24, 10:3, 10:5, 10:10, 11:2, 11:24, 12:16, 14:4, 15:19, 17:21, 18:22, 19:23, 20:23, 21:24, 22:14, 23:7, 23:12, 23:15, 23:16
**must** [6] - 7:7, 7:8, 8:21, 12:2, 13:24, 13:25
**myriad** [1] - 21:9

### N

**namely** [1] - 8:22
**nature** [5] - 15:20, 16:14, 17:15, 17:20, 19:18
**need** [2] - 19:22, 23:8
**needs** [1] - 23:11
**never** [1] - 20:4

**next** [2] - 19:22, 22:21
**nexus** [3] - 12:7, 12:10, 18:25
**Ninth** [4] - 14:16, 18:10, 18:25, 21:8
**none** [1] - 15:13
**nothing** [1] - 21:19
**number** [1] - 4:4

### O

**obvious** [1] - 23:4
**obviously** [3] - 4:16, 6:20, 9:13
**occurs** [1] - 13:15
**OF** [10] - 1:2, 1:16, 2:4, 2:8, 24:12, 24:15, 24:18, 24:21
**offered** [1] - 14:16
**Offices** [1] - 4:9
**OFFICIAL** [3] - 1:22, 24:11, 24:24
**OLIVER** [1] - 2:9
**ON** [2] - 2:4, 2:8
**one** [13] - 6:18, 11:16, 11:18, 11:25, 13:1, 15:18, 17:15, 17:23, 19:20, 19:22, 23:4, 23:5
**ones** [1] - 17:5
**open** [1] - 21:1
**opposed** [1] - 21:3
**opposite** [1] - 17:11
**opposition** [1] - 5:14
**oral** [1] - 4:17
**ORANGE** [2] - 1:17, 3:2
**order** [2] - 13:16, 22:24
**originally** [1] - 22:17
**otherwise** [5] - 5:20, 7:19, 9:1, 13:10, 15:2
**outside** [3] - 10:17, 17:1, 20:12
**overly** [1] - 10:22
**owner** [2] - 6:17, 14:2
**owner's** [1] - 7:8
**owners** [1] - 13:18

### P

**PAGE** [2] - 3:2, 24:17
**page** [1] - 5:14
**pages** [4] - 6:20, 7:1, 11:17, 11:19
**papers** [4] - 5:1, 7:16, 22:10, 22:11
**particular** [1] - 16:2
**particularly** [1] - 5:12
**parties** [3] - 14:17, 17:13, 22:16
**party** [6] - 9:20, 9:22, 9:25, 10:7, 11:4,

11:7
**performance** [1] - 7:13
**person** [1] - 6:17
**pertinent** [1] - 22:6
**piece** [1] - 9:13
**pin** [1] - 12:18
**place** [1] - 23:11
**places** [1] - 12:11
**plaintiff** [6] - 10:23, 14:14, 17:8, 19:21, 21:21, 22:3
**PLAINTIFF'S** [2] - 1:17, 3:2
**plaintiff's** [3] - 4:15, 4:19, 4:20
**plaintiffs** [2] - 8:6, 17:8
**Plaintiffs** [1] - 1:8
**PLAINTIFFS** [1] - 2:4
**player** [3] - 12:24, 13:4, 13:5
**player's** [4] - 13:3, 13:13, 13:15
**playing** [1] - 13:5
**pleading** [3] - 8:6, 15:7, 16:6
**pled** [2] - 20:17, 20:19
**point** [5] - 4:25, 5:15, 11:23, 11:25, 20:8
**points** [1] - 17:8
**position** [4] - 15:21, 16:5, 20:3, 21:19
**positions** [2] - 15:22, 20:17
**posted** [1] - 22:13
**power** [1] - 9:5
**pre** [1] - 15:17
**pre-litigation** [1] - 15:17
**preempted** [1] - 20:10
**preemption** [4] - 11:7, 15:4, 16:7, 16:11
**PREGERSON** [1] - 1:5
**PRESIDING** [1] - 1:5
**presumption** [3] - 21:6, 21:7, 22:4
**previously** [1] - 20:18
**problem** [1] - 11:2
**proceeding** [1] - 23:17
**PROCEEDINGS** [2] - 1:16, 24:16
**proclamation** [1] - 17:6
**prohibited** [1] - 18:17
**prohibition** [3] - 6:23, 12:25, 13:4
**prohibits** [1] - 13:3
**promise** [1] - 8:14
**properly** [1] - 15:8
**protected** [2] - 7:3, 17:11
**provide** [1] - 8:22
**provided** [1] - 9:23
**provision** [7] - 5:7,

27

8:17, 12:4, 15:17,
16:2, 16:16, 18:8
**public** [1] - 8:16
**purporting** [1] - 13:12
**purpose** [1] - 15:4
**purposes** [2] - 4:17,
15:13
**PURSUANT** [1] -
24:13
**pursue** [1] - 14:9
**put** [3] - 11:22, 16:5,
19:11
**puts** [1] - 10:12
**putting** [1] - 20:24

## Q

**questions** [5] - 4:18,
4:21, 7:24, 9:5, 9:7
**QUINN** [1] - 2:9
**Quinn** [1] - 4:12
**quote** [2] - 5:13, 21:14
**quoting** [1] - 7:4

## R

**raised** [1] - 11:15
**RAM** [1] - 13:16
**rates** [1] - 13:18
**rather** [1] - 5:5
**rationale** [1] - 13:14
**read** [4] - 6:19, 6:25,
7:17, 11:18
**readily** [1] - 18:10
**reading** [3] - 7:2,
10:22, 11:16
**really** [5] - 5:24, 9:8,
10:2
**reason** [1] - 6:7
**reasons** [1] - 23:4
**receive** [3] - 9:22,
10:8, 10:11
**recognize** [1] - 16:7
**recover** [1] - 7:5
**REDUCTION** [1] -
24:20
**reference** [1] - 15:10
**referenced** [1] - 15:12
**regardless** [1] - 15:14
**REGULATIONS** [2] -
24:17, 24:21
**relate** [1] - 12:2
**related** [1] - 4:22
**relates** [4] - 8:11,
12:4, 16:18, 16:21
**relevance** [1] - 15:15
**REMAND** [2] - 1:17,
3:2
**remand** [6] - 4:15,
4:18, 22:10, 22:19,
23:3, 23:5
**remedies** [5] - 5:19,
5:21, 5:22, 5:24,
7:12

19:19
**simply** [4] - 14:8,
14:17, 17:17, 21:19
**single** [1] - 6:25
**SOFTWARE** [3] - 1:7,
2:4, 24:5
**software** [16] - 8:20,
9:1, 9:4, 10:15, 12:6,
13:10, 13:12, 13:16,
13:18, 13:24, 14:2,
16:19, 16:22, 18:3,
18:12, 18:16
**Software** [2] - 4:5,
4:10
**sort** [2] - 8:2, 10:12
**source** [8] - 8:16,
8:22, 9:23, 11:9,
12:4, 13:25, 16:2,
16:15
**specific** [3] - 5:6, 5:8,
7:13
**specifically** [3] - 12:5,
12:16, 21:10
**standard** [3] - 12:7,
17:19, 19:13
**state** [7] - 4:7, 7:12,
10:1, 15:5, 16:6,
20:9, 21:18
**states** [1] - 8:19
**STATES** [6] - 1:1,
1:23, 24:12, 24:14,
24:18, 24:21
**staying** [1] - 16:11
**STENOGRAPHICAL
LY** [1] - 24:15
**stepped** [1] - 10:17
**stipulated** [1] - 22:24
**Storage** [1] - 6:14
**STREET** [2] - 1:24,
2:11
**submission** [1] -
22:12
**sue** [2] - 10:24, 11:1
**SUITE** [2] - 1:24, 2:6
**SULLIVAN** [1] - 2:9
**Sun** [1] - 21:3
**SUPERIOR** [2] - 1:17,
3:2
**supports** [1] - 21:19
**suppose** [1] - 23:1

## T

**talks** [3] - 8:16, 20:1,
21:9
**Tech** [1] - 6:14
**ten** [3] - 6:20, 7:1,
11:17
**tend** [1] - 10:23
**term** [4] - 12:22, 13:2,
16:25, 20:2
**terminate** [1] - 11:20,
20:12
**terminated** [2] - 8:24,
16:3

**terminates** [2] - 10:18,
12:13
**terms** [4] - 12:19,
17:4, 18:1, 19:4
**test** [2] - 5:16, 21:13
**textbook** [1] - 8:5
**THAT** [2] - 24:13,
24:16
**that...** [1] - 7:22
**THE** [41] - 2:4, 2:8,
4:4, 4:14, 6:3, 6:6,
6:9, 7:16, 7:23, 8:1,
9:6, 9:19, 10:1, 10:4,
10:6, 10:20, 11:14,
12:9, 14:3, 15:14,
16:20, 18:15, 19:20,
20:21, 21:21, 22:8,
22:25, 23:8, 23:13,
24:11, 24:12, 24:14,
24:15, 24:16, 24:17,
24:18, 24:20, 24:21
**themselves** [1] - 21:14
**therefore** [1] - 16:16
**they've** [5] - 5:9, 5:11,
15:22, 16:5, 21:20
**third** [5] - 9:20, 9:21,
9:25, 10:7, 17:13
**third-party** [2] - 9:25,
10:7
**THIS** [1] - 24:19
**tie** [2] - 18:16, 18:20
**tied** [7] - 12:11, 13:21,
14:1, 14:25, 17:7,
17:24
**TITLE** [1] - 24:14
**TO** [5] - 1:17, 3:2,
24:13
**today** [4] - 4:18, 22:10,
22:20, 23:7
**ton** [1] - 11:19
**tore** [1] - 9:2
**track** [1] - 22:23
**TRANSCRIPT** [4] -
1:16, 24:15, 24:17,
24:19
**transforms** [2] -
16:13, 19:18
**TRUE** [1] - 24:14
**try** [1] - 16:6
**trying** [3] - 8:6, 16:9,
21:1
**turn** [1] - 7:19
**two** [2] - 4:4, 22:21
**typical** [1] - 9:2
**typically** [1] - 17:11

## U

**under** [30] - 5:7, 5:19,
5:20, 5:24, 8:7, 8:11,
8:21, 9:10, 9:17,
9:21, 9:25, 10:7,
10:9, 12:2, 13:1,
13:19, 14:24, 15:1,
17:11, 17:16, 18:7,

18:13, 20:9, 21:7,
21:11, 22:4, 22:5,
22:12
**underlying** [1] - 11:13
**understood** [1] -
15:19
**undo** [1] - 19:9
**uniquely** [1] - 5:5
**UNITED** [6] - 1:1, 1:23,
24:12, 24:14, 24:18,
24:21
**unless** [1] - 17:3
**unsolicited** [1] - 13:6
**unusual** [1] - 4:21
**up** [1] - 15:21
**URQUHART** [1] - 2:9

## V

**VAKILI** [1] - 2:4
**Vakili** [1] - 4:9
**via** [1] - 10:22
**view** [1] - 17:12
**violate** [9] - 6:22, 7:3,
13:1, 13:4, 13:7,
13:8, 15:3, 16:24,
16:25
**violated** [2] - 8:10,
12:4
**violates** [1] - 12:24
**violation** [2] - 13:17,
14:13
**violations** [1] - 19:4
**VIZIO** [3] - 1:12, 2:9,
24:8
**Vizio** [3] - 4:6, 4:13,
16:1
**Vizio's** [1] - 20:3
**vs** [2] - 1:10, 24:7

## W

**Warcraft** [1] - 12:23
**ways** [1] - 18:17
**week** [1] - 23:7
**weeks** [1] - 22:22
**WEST** [1] - 1:24
**WESTERN** [1] - 1:3
**whole** [2] - 20:24,
21:12
**WILLIAMS** [20] - 2:10,
4:11, 8:4, 9:11, 9:24,
10:3, 10:5, 10:10,
11:2, 11:24, 12:16,
14:4, 15:19, 17:21,
18:22, 19:23, 22:14,
23:7, 23:12, 23:16
**Williams** [2] - 4:12,
8:1
**Williams'** [1] - 15:23
**WILSHIRE** [1] - 2:5
**WITH** [2] - 24:17,
24:20
**words** [4] - 12:10,

**remedy** [5] - 7:12,
14:23, 15:2, 21:16,
21:17
**reply** [4] - 11:3, 19:25,
22:20, 23:6
**REPORTED** [1] -
24:15
**REPORTER** [3] - 1:22,
24:11, 24:24
**REPORTER'S** [1] -
1:16
**reproduce** [1] - 18:14
**reproduction** [1] -
6:23
**request** [1] - 13:25
**reserve** [1] - 7:21
**response** [1] - 19:22
**restrictions** [2] -
12:19, 12:21
**rights** [21] - 5:4, 5:18,
8:21, 8:24, 9:17,
11:11, 11:20, 12:20,
13:1, 13:8, 14:1,
15:6, 16:3, 17:16,
18:18, 18:18, 18:19,
19:7, 21:10, 21:12
**rise** [3] - 16:3, 20:13,
21:15
**rubric** [1] - 14:24
**ruling** [2] - 22:13
**run** [1] - 13:17

## S

**SACV** [3] - 1:10, 4:5,
24:6
**scheduled** [1] - 22:22
**SCHLAFF** [11] - 2:5,
4:8, 4:24, 6:5, 6:7,
6:12, 7:21, 7:24,
20:23, 21:24, 23:15
**Schlaff** [4] - 4:8, 4:24,
11:16, 20:22
**scope** [6] - 6:24, 7:7,
12:25, 14:12, 17:1,
20:13
**section** [1] - 8:17
**SECTION** [1] - 24:13
**Section** [3] - 12:19,
12:22, 20:9
**see** [2] - 12:17, 19:3
**seeking** [5] - 5:6, 5:21,
5:23, 7:11, 17:9
**sense** [1] - 19:14
**separate** [1] - 22:23
**series** [3] - 20:25, 22:3
**SESSION** [1] - 4:3
**set** [1] - 22:18
**settlement** [2] - 15:11,
15:13
**several** [1] - 5:10
**show** [1] - 5:12
**shows** [1] - 16:5
**side** [1] - 15:18
**significant** [2] - 8:9,

16:22, 17:10, 18:17
**works** [1] - 12:23
**World** [1] - 12:23
**written** [2] - 14:18,
22:2